IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KAYLAN MORRIS, on behalf of herself and all others similarly situated )<br><br>    Plaintiff, )<br><br>vs. )<br><br>WALMART INC. f/k/a )<br>WAL-MART STORES, INC., )<br><br>    Defendants. ) | Civil Action No. 02:19-cv-00650-TMP |

**WALMART'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

Defendant, Walmart, Inc. ("Walmart"), respectfully requests that the Court dismiss the Class Action Complaint ("Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In particular, all of Plaintiff's claims fail because they ignore controlling administrative regulations, Alabama law, and basic pleading standards.

**INTRODUCTION**

Plaintiff's Complaint alleges that Walmart falsely labeled, falsely advertised, and used deceptive trade practices in relation to its "Parent's Choice Pediatric Shake" ("Shake"). (Doc. 1, ¶ 2). Based on these allegations, Plaintiff makes claims for (1) unjust enrichment, (2) violation of the Magnuson-Moss Warranty Act, (3) Breach of Express Warranty, (4) Breach of Implied Warranty, and (5) violation of the Alabama Deceptive Trade Practices Act. Each of these counts is based on the allegation that the Shake's packaging falsely and/or deceptively claims the Shakes are or contain: (1) "Naturally

{B3179971}

Flavored," (2) "Balanced Nutrition to Help Kids Thrive," (3) "No Synthetic Color, Flavor or Sweeteners," and (4) "Nutrition to help kids grow." (Doc. 1, ¶ 16). The Complaint alleges these claims are untrue "because the Shakes contain unnatural and synthetic ingredients such as maltodextrin." (Doc. 1, ¶ 17). Maltodextrin is the only ingredient the Complaint alleges is synthetic and/or unnatural. The Complaint's primary allegation is that maltodextrin is a synthetic "sweetener because it contains sugars, similar to corn syrup." (Doc. 1, ¶ 30). The Food and Drug Administration ("FDA"), however, has determined that "Maltodextrin . . . is a **nonsweet** nutritive saccharide polymer . . . ." 21 C.F.R. § 184.1444(a) (emphasis added).

It is also important to point out what the packaging does not say, as many of the terms used on the packaging have very specific definitions set forth in the FDA's regulations. For instance, as the Complaint recognizes, the packaging states that the Shake is "Naturally Flavored." It does not claim that the Shake is "natural." Likewise, the packaging only claims that the Shake contains "No Synthetic Color, Flavor, or Sweeteners." It does not claim that the Shake contains no synthetic ingredients. These distinctions are important as the FDA has specific regulations relating to claims that a product is "naturally flavored," which are substantially different than a claim that a product is "natural." *See* 21 C.F.R. § 101.22.

As will be demonstrated below, the face of the Complaint demonstrates that the Plaintiff's claims against Walmart fail for the following reasons:

*First*, Plaintiff's claims under the Magnuson-Moss Warranty Act fail because the statements made on the Shake's packaging do not constitute a "written warranty" under 15

{B3179971}                                                2

U.S.C. § 2301(6), as there is no "specified time period to which the [statements] relate[]." 16 C.F.R. § 700.3(a).

*Second*, Plaintiff's claims based on the allegedly false statements that the Shakes are "Naturally Flavored" and contain "No Synthetic Sweetener" are preempted by the Federal Food, Drug, and Cosmetic Act, as the allegedly misleading statements are "expressly . . . permitted by FDA regulations."

*Third*, the Complaint does not plausibly allege that statements that the Shakes contain "Balanced Nutrition to Help Kids Thrive," and "Nutrition to help kids grow," are false or otherwise misleading, as the sole allegation regarding these claims is that "The opposite is true."

*Fourth*, Plaintiff has procedurally waived her claims under the Alabama Deceptive Trade Practices Act ("ADPTA") by asserting her other claims for fraud, misrepresentation, and deceit.

## ARGUMENT

I. **THE STATEMENTS ON THE SHAKE'S PACKAGING DO NOT CONSTITUTE A "WRITTEN WARRANTY," UNDER THE MAGNUSON-MOSS WARRANTY ACT.**

If Plaintiff "cannot state a claim under a written warranty as defined by the [Magnuson-Moss Warranty] Act, dismissal of the complaint is appropriate." *Ogner v. Sea Ray Boats, Inc.*, No. 12-CV-14324-KMM, 2013 WL 12153502, at *3 (S.D. Fla. Feb. 12, 2013). According to the Federal Trade Commission's regulations interpreting the Act, "Certain representations, such as energy efficiency ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express

{B3179971}  3

warranties under the Uniform Commercial Code. However, these disclosures alone are not written warranties under this Act." 16 C.F.R. § 700.3(a). Moreover, according to the FTC, "15 U.S.C. § 2301(6), provides that a written affirmation of fact or a written promise of a specified level of performance must relate to a specified period of time in order to be considered a 'written warranty.' A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty." *Id.*

Here, the Complaint alleges that the following claims constitute a "written warranty" under the Act: (1) "Naturally Flavored," (2) "Balanced Nutrition to Help Kids Thrive," (3) "No Synthetic Color, Flavor or Sweeteners," and (4) "Nutrition to help kids grow." (Doc. 1, ¶ 84). The Shake's packaging, however, does not have (and the Complaint does not allege that these "product information disclosures" have) a specified time period to which they relate. As a result, the statements made on the Shake's packaging do not constitute a "written warranty" under the Magnuson-Moss Warranty Act. Courts across of the country have routinely dismissed similar claims when the product descriptions do not contain a temporal element. *Skelton v. General Motors Corp.*, 660 F.2d 311, 316 n.7 (1981) (dismissing claim that GM warranted that the automobiles "contained THM 350 (M38) transmissions" because the alleged warranty did not set forth a specific time period); *Hairston v. S. Beach Beverage Co., Inc.*, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (finding claims that beverage was "all natural with vitamins" and had a particular flavor were not a "written warranty" because "they do not specify a level of performance over a specified period of time."); *Kelly v. Microsoft Corp.*, 2007 WL 2600841, at *3 (W.D.

Wash. Sept. 10, 2007) (finding representation that computer was "Windows Vista Capable" was not a written warranty because the promise contained no temporal element).

Given that the Complaint fails to state a claim under a "written warranty," as a defined by the Magnuson-Moss Warranty Act, "dismissal of the complaint is appropriate." *Ogner*, 2013 WL 12153502, at *3.

II. **PLAINTIFF'S CLAIMS RELATING TO THE ALLEGED MISREPRESENTATIONS THAT THE SHAKES ARE "NATURALLY FLAVORED" AND HAVE NO SYNTHETIC SWEETENERS ARE PREEMPTED BY THE FDCA.**

The Food, Drug, and Cosmetics Act ("FDCA") "expressly preempt[s] state requirements within certain categories that are not identical to federal requirements." *Stansfield v. Minute Maid Co.*, 124 F. Supp. 3d 1226, 1232 (N.D. Fla. 2015). Specifically, "no State or political subdivision of a State may directly or indirectly establish under any authority . . . **any requirement for the labeling of food** of the type required by section 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k) of this title that is not identical to the requirement of such section . . . ." 21 U.S.C. § 343-1(3) (emphasis added).

The FDA has determined that "Not identical to," means the requirements "concerning the . . . labeling of food . . . (i) are not imposed by or contained in the applicable provision [or regulation]; or (ii) Differ from those specifically imposed by or contained in the applicable provision [or regulation]." *Stansfield*, 124 F. Supp. 3d at 1232 (quoting C.F.R. § 100.1(c)(4)). "In circumstances where challenged conduct is expressly required or permitted by FDA regulations, the claims fall within the core of the preemption provision because they would 'impose different requirements on precisely those aspects . . . . that the FDA had approved.'" *Reynolds v. Wal-Mart Stores, Inc.*, No. 4:14CV381-

{B3179971}  5

MW/CAS, 2015 WL 1879615, at *12 (N.D. Fla. Apr. 23, 2015) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 86 (2008)).

    **A.    Plaintiff's Claims Relating to the Alleged Misrepresentation that the Shakes are "Naturally Flavored" are Preempted by the FDCA.**

Plaintiff alleges that claims that the Shake is "Naturally Flavored," violate Alabama law because "the Shakes contain unnatural and synthetic ingredients such as maltodextrin." (Doc. 1, ¶ 17). According to 21 C.F.R. § 101.22(i), however, "a product may be labeled as . . . 'naturally flavored,' even if it does not contain fruit or natural ingredients. So long as that product 'contains natural flavor,' which is 'derived from' the characterizing food ingredients,' it will not run afoul of the regulation." *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1102-03 (N.D. Cal. 2012). According to the FDA, "The term artificial flavoring means any substance, the function of which is to impart flavor, which is not derived from a [natural product] . . . . Artificial flavor includes the substances listed in §§ 172.515(b) and 182.60 of this chapter except where these are derived from natural sources." 21 C.F.R. 101.22(a)(1).

Here, maltodextrin is not listed in §§ 172.515(b) or 182.60 as an "artificial flavor" and, in fact, the Complaint does not allege that maltodextrin (or any other ingredient) is an artificial flavor, as defined by the FDA. The only allegation is that the "Shakes contain unnatural and synthetic ingredients . . . ." The Shake's packaging, however, does not claim to be "natural." It only claims to be "Naturally Flavored," a claim that is specifically governed by the FDA's regulations. *See* 21 C.F.R. § 101.22(i). In a virtually identical scenario, the court in *Lam v. General Mills, Inc.*, found the plaintiff's state law claims were

preempted by the FDCA where the plaintiff alleged the products claim to be "naturally flavored" was "deceptive because the products' ingredients, not their flavors, are unnatural." 859 F. Supp. 2d at 1102-03. Given, that the FDA regulations specifically allow a product to be labeled as "naturally flavored," even though it does not contain natural ingredients, the Plaintiff's attempts to place a heavier burden on the Shake's labeling, through state law claims, are preempted by the FDCA, as in *Lam*.

**B.     Plaintiff's Claims Relating to the Alleged Misrepresentation that the Shakes Have no Synthetic Sweeteners is Preempted by the FDCA.**

The Complaint also alleges that the Shake's claim that it contains "No Synthetic Color, Flavor, or Sweeteners," violates Alabama law. This allegation is based solely on the assertion that "Maltodextrin is also a sweetener because it contains sugars, similar to corn syrup." (Doc. 1, ¶ 30). The FDA, however, has determined that "Maltodextrin . . . is a **nonsweet** nutritive saccharide polymer . . . ." 21 C.F.R. § 184.1444(a) (emphasis added). As such, Plaintiff is attempting to enforce, through state law, labeling requirements that are different—and more stringent—than those mandated by the FDA. Accordingly, Plaintiff's causes of action based on the claim that maltodextrin is a sweetener are also preempted.[1]

---

[1] The Complaint contains no allegation that any of the ingredients in the Shakes is a synthetic color or flavor. The Complaint's only allegation in relation to the claim that the Shakes contain "No Synthetic Color, Flavor or Sweeteners," is that maltodextrin is a synthetic sweetener. Given that the FDA has determined maltodextrin is not a sweetener, the Complaint's allegations regarding the claim that the Shakes contain "No Synthetic Color, Flavor or Sweeteners," all fail as a matter of law.

**III.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT STATEMENTS THAT THE SHAKES CONTAIN "BALANCED NUTRITION TO HELP KIDS THRIVE," AND "NUTRITION TO HELP KIDS GROW," ARE FALSE OR OTHERWISE MISLEADING.**

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"550 U.S. 544, 555 (2007). The Supreme Court further explained, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* In *Ashcroft v. Iqbal*, the Supreme Court, went further holding that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not show[n]—that the pleader is entitled to relief." 556 U.S. 662, 679 (2009) (internal citations omitted). The Supreme Court instructed that the task "requires the reviewing court to draw on its judicial experience and common sense." In applying *Iqbal* and *Twombly*, the Eleventh Circuit has stated that a court is to begin its analysis "by disregarding . . . wholly conclusory . . . allegations." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

In the present case, the Complaint alleges that the Shake's claims that it provides "Balanced Nutrition to Help Kids Thrive," and "Nutrition to help kids grow," are false and/or deceptive. The Complaint, however, provides no basis for its allegations. It merely states "The opposite is true." (Doc. 1, ¶ 36). The Complaint spends a great deal of time claiming that maltodextrin is a synthetic sweetener, but provides no basis for why the inclusion of a synthetic sweetener would preclude the Shakes from providing the

appropriate nutrition for kids. In fact, the FDA has confirmed that maltodextrin is "generally recognized as safe (GRAS)" for use in food. 21 C.F.R. § 184.1, 184.1444(a). Accordingly, the Complaint has not plausibly alleged that these nutrition related claims are false and/or deceptive, and, as in *Iqbal* and *Twombly*, such conclusory allegations are due to be disregarded.

### IV. PLAINTIFF HAS PROCEDURALLY WAIVED HER CLAIMS UNDER THE ALABAMA DECEPTIVE TRADE PRACTICES ACT BY ASSERTING HER OTHER CLAIMS FOR FRAUD, MISREPRESENTATION AND DECEIT.

Under the Alabama Deceptive Trade Practices Act ("ADTPA") "an election to pursue any civil remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under this chapter shall exclude and be a surrender of all rights and remedies available under this chapter." ALA. CODE § 8-19-15(b). The Alabama Supreme Court has determined that the remedies under the ADPTA and those "otherwise available are mutually exclusive." *Ford Motor Co. v. Sperau*, 708 So. 2d 111, 122 (Ala. 1997). The court in *Holmes v. Behr Process Corp.*, found that it was appropriate, at the motion to dismiss stage, to dismiss plaintiff's ADTPA claims where it also pleaded claims based on fraud, misrepresentation, and/or deceit. No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *2-3 (N.D. Ala. Nov. 17, 2015). The court determined that, under the ADTPA, the claims are mutually exclusive, and "Allowing [plaintiff] alternatively to plead her ADTPA and other fraud claims against Behr would enlarge the substantive right and remedy of the ADTPA, supplanting the prerogative of state law." *Id.*

{B3179971}  9

While other courts have determined that the ADTPA's Savings Clause does not require an election at the motion to dismiss stage, those cases have ignored the plain language of the ADTPA. *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 405 (S.D.N.Y. 2017), *modified on reconsideration,* No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017). The ADPTA specifically states the "election **to pursue** any civil remedies . . . shall exclude and be a surrender of all rights and remedies available under this chapter." ALA. CODE § 8-19-15(b). According to Black's Law Dictionary, to "pursue" means "[t]o prosecute or sue." PURSUE, Black's Law Dictionary (11th ed. 2019). Thus, by filing a complaint, a plaintiff is certainly pursuing the legal remedies requested in their complaint.

Here, in addition to the ADTPA claim, Plaintiff is pursuing claims for (1) unjust enrichment, (2) violation of the Magnuson-Moss Warranty Act, (3) Breach of Express Warranty, and (4) Breach of Implied Warranty. Each of these claims is based on some form of fraud, misrepresentation, and/or deceit. *See* Doc. 1, ¶¶ 67 (unjust enrichment), 86 (Magnuson-Moss Warranty Act), 103 (Breach of Express Warranty), and 112-13 (Breach of Implied Warranty). The court in *Jones v. Coty, Inc.*, determined that the dismissal of identical causes of action was likely "dictated by the terms of the Alabama Deceptive Trade Practices Act[']s" Savings Clause. 362 F. Supp. 3d 1211-12, 1212 n.26 (S.D. Ala. 2018). Therefore, Plaintiff's election to pursue civil remedies for fraud, misrepresentation, and deceit, act as a waiver of her ADTPA claims. *Holmes*, 2015 WL 7252662, at *2 (finding plaintiff "procedurally waived her right to pursue a claim under the ADTPA by pursuing her other fraud claims . . . .").

## **CONCLUSION**

As discussed at length above, all of Plaintiff's causes of action are based solely on the allegedly false or deceitful claims that the Shakes are or contain: (1) "Naturally Flavored," (2) "Balanced Nutrition to Help Kids Thrive," (3) "No Synthetic Color, Flavor or Sweeteners," and (4) "Nutrition to help kids grow." (Doc. 1, ¶ 16). Each of these allegations, however, fail as a matter of law because they ignore controlling administrative regulations, Alabama law, and basic pleading standards. As such, each of Plaintiff's five counts are due to be dismissed for failure to state a claim.

Respectfully Submitted,

*s/ Cole R. Gresham*
Cole R. Gresham (ASB-8993-L47G)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama 35209
(205) 868-6000 Phone
(205) 868-6099 Facsimile
*cgresham@starneslaw.com*

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 14, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

W. Lewis Garrison, Jr.
Taylor C. Bartlett
Heninger Garrison Davis, LLC
2224 First Ave North
Birmingham, AL 35203
lewis@hgdlawfirm.com
taylor@hgdlawfirm.com

J. Stuart McAtee
Alexander Shunnarah
Personal Injury Attorneys
3626 Clairmont Ave South
Birmingham, AL 35222
smcatee@asilpc.com

Taylor A. Pruett
Schreiber Law Firm, P.C.
2129 First Ave North
Birmingham, AL 35203
taylor@schreiber.law

                                              *s/ Cole R. Gresham*
                                              Cole R. Gresham