FILED
2020 Jan-29 AM 11:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KAYLAN MORRIS, on behalf of herself and all others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2:19-cv-650-GMB |
| WALMART INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant's Motion to Dismiss the Class Action Complaint. Doc. 11. Plaintiff Kaylan Morris filed suit against Walmart Inc. ("Walmart") asserting a claim under the Magnuson-Moss Warranty Act and state-law claims of unjust enrichment, breach of express warranty, breach of implied warranty, and a violation of the Alabama Deceptive Trade Practices Act. Doc. 1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. After careful consideration of the parties' filings and the relevant law, and for the reasons stated below, the court concludes that the motion to dismiss is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court has subject matter jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or that

venue is proper in the Northern District of Alabama. The court finds adequate allegations to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts that follow are those alleged in the complaint. Walmart sells a product described as the "Parent's Choice Pediatric Shake," which it markets to mothers or expectant mothers. Doc. 1 at 3−4. Walmart advertises that the range of Parent's Choice products are a "complete baby collection specially selected with love and attention to this special time in your family's life." Doc. 1 at 4. The labeling on the shakes indicates that they are "Naturally Flavored," contain a "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow," and have "No Synthetic Color, Flavor or Sweeteners." Doc. 1 at 4. The listed ingredients are

> Water, Maltodextrin, Sugar, Milk Protein Concentrate, High Oleic Safflower Oil, Canola Oil, Cellulose Gel, Soy Protein Isolate, Short-Chain Fructooligosaccharides (FOS), Natural Flavors, Soy Lecithin, Fish Oil (DHA), Carrageenan, Salt, Potassium Hydroxide, Monk Fruit, Stevia.

Doc. 1 at 4. The listed vitamins and minerals are

> Choline Bitartrate, Dimagnesium Phosphate, Tricalcium Phosphate, Potassium Chloride, Magnesium Chloride, Ferrous Sulfate, Zinc Sulfate, dl-Alpha-Tocopheryl Acetate (Vitamin E), D-Calcium Pantothenate (Vitamin B5), Niacinamide (Vitamin B3), Thiamine Hydrochloride (Vitamin B1), Manganese Sulfate, Pyridoxine Hydrochloride (Vitamin B6), Riboflavin (Vitamin B2), Copper Sulfate, Vitamin A Palmitate, Folic Acid, Chromium Chloride, Biotin, Potassium Iodide, Phytonadione (Vitamin K1), Sodium Molybdenum, Cholecalciferol (Vitamin D3), Cyanocobalamin (Vitamin B12),

> Dicalcium Phosphate, Potassium Phosphate, Potassium Citrate, Potassium Chloride, Sodium Ascorbate.

Doc. 1 at 5. Maltodextrin, one of the ingredients, is a synthetic compound made through a complex chemical, thermodynamic, and mechanical manufacturing process. Doc. 1 at 8. Maltodextrin is a sweetener, and though it contains less than 20 percent sugar, it is closely related to corn syrup solids. Doc. 1 at 8.

Concerned about the diet and nutrition of her son, who is a picky eater, Morris purchased the shakes for her child in Walmart retail stores located in Jefferson County, Alabama. Doc. 1 at 10−11. She purchased the vanilla and chocolate flavored shakes. Doc. 1 at 11. Morris would not have purchased the shakes had she known that they contained synthetic and artificial ingredients. Doc. 1 at 11. The shakes did not provide the nutrients her son needed and instead incorporated significant sweeteners and sugars. Doc. 1 at 11. As a result of Walmart's material misrepresentations, Morris brings this class action lawsuit on behalf of customers who purchased the shakes during the statute of limitations period. Doc. 1 at 11−12.

## III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

**IV. DISCUSSION**

Morris alleges that the labels "Naturally Flavored," "Balanced Nutrition to Help Kids Thrive," "No Synthetic Color, Flavor, or Sweeteners," and "Nutrition to Help Kids Grow" are untrue, misleading, and likely to deceive reasonable customers because the shakes contain unnatural and synthetic ingredients. Doc. 1 at 4–6. Based on these allegations, Morris states claims for breach of express warranty, breach of implied warranty, unjust enrichment, violation of the Magnuson-Moss Warranty Act, and violation of the Alabama Deceptive Trade Practices Act. Walmart moves to dismiss these claims, arguing that Morris' state-law claims are either preempted by federal regulations or not sufficiently pled, that the labels do not constitute a written warranty under the Magnuson-Moss Warranty Act, and that the claims under

the Alabama Deceptive Trade Practices Act have been waived. Doc. 11. The court addresses each argument in turn.

**A. Preemption**

Walmart asserts that all claims based on the labels "Naturally Flavored" and "No Synthetic Color, Flavor, or Sweeteners" are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"). Doc. 11 at 5. Walmart is half-right.

***1. Naturally Flavored***

The FDCA vests the United States Food and Drug Administration ("FDA") with "the authority to protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled." *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1101 (N.D. Cal. 2012) (internal citation and quotation marks omitted). The FDCA "forbids the misbranding of food, including by means of false or misleading labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106 (2014). "To implement these provisions, the [FDA] promulgated regulations regarding food and beverage labeling." *Id.* at 108. In 1990, Congress amended the FDCA by enacting the Nutrition Labeling and Education Act ("NLEA"), which "was intended to establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels." *Lam*, 859 F. Supp. 2d at 1102. "The NLEA also amended the FDCA by adding a preemption provision, codified at 21 U.S.C. § 343-1." *Id.* This preemption provision vests the United States with nearly

exclusive enforcement authority and prevents private parties from bringing most enforcement suits. *POM Wonderful LLC*, 573 U.S. at 109.

Additionally, pursuant to this preemption provision, a state may not establish requirements that are of the same type but not identical to the labeling requirements set forth in the NLEA. *See id.* at 109; *Lam*, 859 F. Supp. 2d at 1102. "Under the FDA regulations, the term not identical to . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition of labeling that are not imposed or contained in the applicable provisions." *Lam*, 859 F. Supp. 2d at 1102 (internal citation quotation marks omitted). But "the NLEA does not preempt state requirements that are *identical* to federal requirements in . . . the FDCA and its implementing regulations." *Reynolds v. Wal-Mart Stores, Inc.*, 2015 WL 1879615, at *9 (N.D. Fla. Apr. 23, 2015).

In *Lam v. General Mills, Incorporated*, 859 F. Supp. 2d 1097, the court considered NLEA preemption for a product that had been labeled "Naturally Flavored." The *Lam* court determined that it was not false or misleading to label fruit snacks like Fruit Rollups and Fruit by the Foot as "naturally flavored" even though they contained unnatural ingredients. *Id.* at 1102. The plaintiff in *Lam* argued that the defendant, General Mills, breached its express and implied warranties by misleading consumers to believe that its fruit snacks were healthy because they were "made with real fruit" and "naturally flavored," when instead they were made with

artificial ingredients and large quantities of sugar. *Id.* at 1100. General Mills argued that the plaintiff's claims were preempted because FDA regulations expressly permitted it to use the label "naturally flavored" in advertising these products. *Id.* at 1102. The plaintiff maintained that she was merely "seeking to enforce federal regulations prohibiting false and misleading statements." *Id.* at 1101.

The *Lam* court explained that the label "naturally flavored" was permitted by FDA regulation 21 C.F.R. § 101.22(i), which provides:

> If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:
> . . . .
> (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake," and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."

"So long as that product contains natural flavor which is derived from the characterizing food ingredient, it will not run afoul of the regulation." *Id.* at 1103 (internal citation and quotation marks omitted). Because the regulation permitted General Mills' label, the court determined that the plaintiff's claims "[were]

preempted to the extent they are predicated on the "naturally flavored" and "fruit flavored" labels. *Id.*

Morris' complaint attacks the label "Naturally Flavored" for the same reason the *Lam* plaintiff attacked the label—not because it violates NLEA regulations but because it misleads consumers since the shakes contain unnatural and synthetic ingredients. Doc. 22 at 15. But FDA regulations expressly permit Walmart to label its pediatric shakes as "Naturally Flavored," and Morris cannot use this lawsuit to impose a requirement on Walmart that is inconsistent with the NLEA provisions. Like the plaintiff's claims in *Lam*, Morris' claims based on the "Naturally Flavored" label are preempted by 21 C.F.R. § 101.22(i).

In her response to the motion to dismiss, Morris argues that the court "cannot determine on the pleadings whether the Shakes contain 'natural flavor' which is 'derived from the characterizing food ingredient.'" Doc. 22 at 16. This is beside the point. Morris' complaint does not allege that Walmart used the "Naturally Flavored" label in a way that is inconsistent with 21 C.F.R. § 101.22(i). Morris may seek leave to amend her complaint if she wishes to allege that the shakes violate § 101.22(i) because they do not contain natural flavor derived from the characterizing ingredients of chocolate or vanilla, but she cannot defeat a motion to dismiss by constructively amending her allegations. *See Shockley v. ECM Mortg. Corp.*, 2011 WL 13176586, at *4 (N.D. Ga. Sept. 28, 2011) ("Plaintiff cannot supplement the

allegations of her Complaint through a brief in response to a motion to dismiss."). Accordingly, Morris' claims predicated on the "Naturally Flavored" label are due to be dismissed. *See Reynolds*, 2015 WL 1879615, at *3 (affirming that dismissal due to preemption under Rule 12(b)(6) is proper where the affirmative defense clearly appears on the face of the complaint).

***2. No Synthetic Color, Flavor, or Sweeteners***

Morris' claims based on the "No Synthetic Color, Flavor, or Sweeteners" label survive the motion to dismiss. The district court's analysis in *Ivie v. Kraft Foods Global, Incorporated*, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013), is instructive. The plaintiff in *Ivie* alleged that a "no artificial sweeteners or flavors" label on Country Time Pink Lemonade Drink Mix violated a California law that mirrors § 343 and prohibits false and misleading labels. *Id.* at *10. Specifically, the plaintiff argued that the label was false because the drink mix used the synthetic ingredient maltodextrin as a sweetener. *Id.* The *Ivie* court rejected the defendant's preemption argument for this claim even though FDA regulations identify maltodextrin as a "nonsweet" substance. *See* 21 C.F.R. § 184.1444. The court reasoned that the FDA's inclusion of maltodextrin in the list of Generally Recognized as Safe ("GRAS") substances "do[es] not exclude the possibility that these ingredients could be used in the drink mix at issue as [a] sweeting or flavoring agent[], which would require disclosure." *Ivie*, 2013 WL 685372, at *10. This claim did not impose requirements

in excess of § 343(k), and therefore it was not preempted. The court further found a question of fact as to whether maltodextrin was used as a sweetener in this product and whether a reasonable consumer would find the "no artificial sweeteners or flavors" label misleading. *Id.* Accordingly, the court denied the motion to dismiss the plaintiff's claims grounded on that label.

The scenario presented here is on all fours. Morris alleges that the "No Synthetic Color, Flavor, or Sweeteners" label on the shakes was misleading because the shakes contain maltodextrin, a synthetic sweetener. Doc. 1 at 8. Walmart contends that these claims are preempted by FDA regulation 21 C.F.R. § 184.1444. This is the same list of GRAS substances at issue in *Ivie*, which defines maltodextrin as a "nonsweet nutritive saccharide polymer." Doc. 11 at 7. The court joins in the *Ivie* court's conclusion that this definition does not preclude the possibility that Walmart used maltodextrin as a synthetic sweetener in its pediatric shakes, warranting disclosure. *See Ivie*, 2013 WL 685372, at *10. There is nothing on the face of the complaint to suggest that Morris is attempting to impose more stringent requirements on Walmart than the FDA already requires. Accordingly, Morris' claims based on the "No Synthetic Color, Flavor, or Sweeteners" label should not be dismissed at this stage of the litigation.

**B. The Magnuson-Moss Warranty Act**

In her complaint, Morris brings a claim under the Magnuson-Moss Warranty

Act ("MMWA") for breach of an express written warranty. Doc. 1 at 19–22. Specifically, Morris alleges that Walmart breached its express warranty because the shakes are not naturally flavored; do not have balanced nutrition to help kids thrive; do contain synthetic color, flavor, or sweeteners; and do not provide nutrition to help kids grow. Doc. 1 at 20. Walmart argues that the labels on the shakes do not constitute a written warranty under the Magnuson-Moss Warranty Act because the representations are not related a specified time period. Doc. 11 at 4. In response, Morris asserts that the labeling also establishes an implied warranty; that Walmart additionally issued a guarantee by informing customers they could receive a refund or replacement if they were unhappy with the shakes; and that the warranty is limited to a specific time period. Doc. 22 at 4.

***1. Additional Claims***

Morris' complaint does not allege a MMWA claim for breach of an implied warranty or for breach of a guarantee. "A court's review on a motion to dismiss is limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (internal quotation marks and citation omitted). A plaintiff "cannot supplement the allegations of her [complaint] through a brief in response to a motion to dismiss." *Sims v. Chase Home Fin., LLC,* 2011 WL 13176725, at *5 (N.D. Ga. Aug. 30, 2011) (citing *Wilchombe*, 555 F.3d at 959). The Eleventh Circuit "repeatedly [has] held that plaintiffs cannot amend their complaint

through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015). Nowhere in her complaint does Morris allege that Walmart violated the MMWA by breaching an implied warranty. Nowhere in her complaint does Morris allege that Walmart breached its promise to refund her money or replace the shakes if she was unhappy with the product. Because the court's review of a motion to dismiss is limited to the allegations and claims stated in the complaint, Morris cannot defeat Walmart's motion to dismiss by relying on these claims in her response.

***2. Specified Time Period***

A claim under the MMWA may only proceed if a plaintiff has a companion state-law claim. *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1364 (N.D. GA. 2013) ("The Act does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law.") (internal citation omitted). Because the court concludes, for the reasons stated above and below, that Morris' only remaining breach of express warranty claim relates to the presence of artificial sweeteners, the court will limit its MMWA analysis to the "No Synthetic Color, Flavor, or Sweeteners" label.

The parties disagree as to whether the representations on the shakes' labeling constitute a written warranty. The MMWA defines a written warranty as

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which

> relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6). Walmart asserts that the product information disclosures on the shakes' labeling do not relate to a specified period of time. Doc. 11 at 4. Morris offers that the specified time period runs either through the product's expiration date or through the end of the user's childhood. Doc. 22 at 8. To support its argument, Walmart cites to *Hairston v. South Beach Beverage Company*, 2012 WL 1893818 (C.D. Cal. May 18, 2012). The *Hairston* court found that the "all natural" label on a beverage did not relate to a specified time period, and it dismissed the plaintiff's MMWA claim. *Id.* at *5.

*Hairston*'s logic, however, has been rejected by most of the courts who have taken up this issue. Instead, these courts have found that an MMWA claim may proceed wherever a breach of express warranty claim survives a motion to dismiss. *See Dye v. Bodacious Food Co.*, 2014 WL 12469954, at *6 (S.D. Fla. Sept. 9, 2014) ("The Court finds that the allegations are sufficient to state a claim under the MMWA. An MMWA claim depends on a state law claim for breach of warranty. Because Plaintiff's claim for breach of express warranty may proceed, the MMWA claim, at this juncture, may proceed as well."); *Bohlke v. Shearer's Foods, LLC*, 2015 WL 249418, at *12 (S.D. Fla. Jan 20, 2015) (rejecting temporal defense because the plaintiff had an actionable state-law claim); *Seidman v. Snack Factory*,

*LLC*, 2015 WL 1411878, at *6 (S.D. Fla. Mar. 26, 2015) (rejecting *Hairston* and temporal defense because plaintiff sufficiently pled a state-law breach of express warranty claim). Morris has sufficiently pled a state law claim for breach of express warranty regarding the "No Synthetic Color, Flavor, or Sweeteners" label. Accordingly, this court finds that her Complaint also states a claim under the MMWA.

**C. Violation of the Alabama Deceptive Trade Practices Act**

Morris' claim under the Alabama Deceptive Trade Practices Act ("ADTPA") also survives the motion to dismiss. The ADTPA includes a savings clause:

> The civil remedies provided herein and the civil remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment are mutually exclusive. An election to pursue the civil remedies prescribed in this chapter shall exclude and be a surrender of all other rights and remedies available at common law, by statue or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under this chapter.

Ala. Code § 8-19-15(a). Because Morris has elected to pursue related common law claims, Walmart contends that her ADTPA claims are "procedurally waived." Doc. 11 at 9. However, "the right to *plead* alternative, or even inconsistent, claims is not a matter of substance; it is a quintessential matter of procedure." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 405–06 (S.D.N.Y 2017). Federal courts apply federal rules when addressing questions of procedure. *see, e.g.*, *Hanna*

*v. Plumer*, 380 U.S. 460, 465 (1965), and Federal Rule of Civil Procedure 8(d) allows a plaintiff to plead inconsistent theories. "It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability." *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014).

Nevertheless, there is a split among the district courts sitting within the Eleventh Circuit—and even within the Northern District of Alabama—over whether a plaintiff may simultaneously maintain common law fraud claims and claims under ADTPA. For example, the court in *Holmes v. Behr Process Corporation*, 2015 WL 7252662, at *3 (N.D. Ala. Nov. 17, 2015), determined that a plaintiff's ADTPA claims were procedurally waived because the plaintiff also pled fraud claims under state law. Finding that allowing the plaintiff to plead both claims "would enlarge the substantive right and remedy of the ADTPA," the court granted the defendants' motion to dismiss. *Id.* On the other hand, the court in *Barcal v. EMD Serono, Incorporated*, 2016 WL 1086028, at *5 (N.D. Ala. Mar. 21, 2016), concluded that a plaintiff could proceed with alternatively pled common law claims and ADTPA claims in accordance with Rule 8. And the court in *Collins v. Davol, Incorporated*, 56 F. Supp. 3d 1222, 1227 (N.D. Ala. 2014), noted that a plaintiff could plead fraud claims under common law and fraud claims under the ADTPA because "there is no prohibition against a plaintiff pleading two alternative, inconsistent mutually exclusive claims." The court finds that the decisions "permitting both claims at the

pleading stage have the better argument," because "although the plain language of the savings clause requires a plaintiff to elect one or the other remedy, it does not specify *when* in the proceedings the plaintiff must do so." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 405. In light of this omission from the savings clause and the lack of ambiguity inherent in Rule 8(d), this court will permit Morris to proceed alternatively with her ADTPA claims and her common law claims. Walmart supplies no other basis for dismissing Morris' ADTPA claim. Accordingly, the motion to dismiss is due to be denied as to this claim.

**D. Pleading Deficiencies**

Walmart contends that Morris does not plausibly allege that the labels "Balanced Nutrition to Help Kids Thrive" and "Nutrition to Help Kids Grow" are false and misleading. Doc. 11 at 8. While the Complaint characterizes these two labels as untrue and misleading, Morris does not explain why this is the case except to offer that the shakes "failed to contain the nutrients her son needed and instead relied on significant sweeteners and sugars, some of which are not natural and are synthetic." Doc. 1 at 11. Morris does not allege how the nutritional content is deficient or how the use of unnatural or synthetic ingredients prevents the shakes from providing the promised nutritional value. A complaint's factual allegations need not be detailed, but they must be more than conclusory statements. *Twombly*, 550 U.S. at 555. For these claims to be viable, Morris must connect the dots.

Without more, the allegations do not plausibly demonstrate that Walmart misled its customers. *Iqbal*, 556 U.S. at 678 (concluding that a claim is "plausible on its face" only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). All claims based on the labels "Balanced Nutrition to Help Kids Thrive" and "Nutrition to Help Kids Grow" are due to be dismissed without prejudice.

## V. CONCLUSION

For these reasons, it is ORDERED that the Motion to Dismiss (Doc. 11) is GRANTED in part and DENIED in part, as follows:

1. Morris' claims predicated on the label "Naturally Flavored" are DISMISSED with prejudice;

2. Morris' claims predicated on the labels "Balanced Nutrition to Help Kids Thrive" and "Nutrition to help kids grow" are DISMISSED without prejudice;

3. The motion is DENIED in all other respects.

It is further ORDERED that if Morris seeks to amend her Complaint[1] she shall

[1] In her response to the Motion to Dismiss, Morris includes a section entitled "Leave to Amend." Doc. 22 at 26. In this section, she requests that the court grant her leave to amend her complaint should it determine that additional pleadings are required. Doc. 22 at 26. "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (internal citation omitted). "A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (denying request to amend complaint where the "request for leave to amend was included in the memorandum [the plaintiff] filed in opposition to the motion to

file a motion for leave to amend—attaching her proposed Amended Complaint, which shall omit any claims dismissed with prejudice—no later than **February 19, 2020.** If Morris files a motion for leave by this deadline, Walmart shall show cause as to why it should not be granted no later than **February 29, 2020.**

DONE and ORDERED on January 29, 2020.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

dismiss"). Because Morris did not set forth the substance of the proposed amendment, or state with particularly the grounds for amendment in accordance with Federal Rule of Civil Procedure 7(b)(1), her request for leave to amend is denied at this time.