FILED

2020 Feb-19  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KAYLAN MORRIS, on behalf of herself and all others similarly situated,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:19-cv-650-GMB** |
| | ) | |
| **WALMART INC. f/k/a WAL-MART STORES, INC.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION AMENDED COMPLAINT

Plaintiff, Kaylan Morris, on behalf of herself and all others similarly situated, brings this amended class action against Defendant Walmart Inc., f/k/a Wal-Mart Stores, Inc. ("Walmart"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of herself and all other similar situated persons and against Walmart seeking damages and equitable relief for herself and the putative Classes.

2. This action stems from Walmart's false labelling, false advertising, and deceptive practices concerning its "Parent's Choice Pediatric Shake" which purports

to be "Naturally Flavored[1] **Balanced Nutrition to Help Kids Thrive**." (emphasis in original). It further purports to have "No Synthetic Color, Flavor or Sweeteners." This advertising is false and misleading.

3. The Plaintiff's claims are for Unjust Enrichment (Count I), VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (Count II), Breach of Express Warranty (Count III), Breach of Implied Warranty (Count IV), violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT (Count V).

## PARTIES

4.    Plaintiff Kaylan Morris is a resident citizen of Bessemer, Alabama.

5.    Defendant Walmart Inc. is a citizen of Delaware and Arkansas as it is incorporated in the State of Delaware with its principal place of business at 702 S.W. 8th St., Bentonville, AR 72716.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member, Plaintiff, is a citizen of a state different from Defendant.

---

[1] Plaintiff acknowledges that this Court dismissed with prejudice the original complaint's claims related to "Naturally Flavored" but provided Plaintiff opportunity to seek leave to amend "if she wishes to allege that the shakes violate § 101.22(i) because they do not contain natural flavor derived from the characterizing ingredients of chocolate or vanilla." Plaintiff hereby seeks the leave mentioned.

7.     This Court has personal jurisdiction over Defendant as many of the acts and omissions giving rise to this action occurred in the State of Alabama, including purchases of the Shakes by the Plaintiff and other putative Class Members. Defendant has sufficient minimum contacts with the State of Alabama and intentionally availed itself, and continues to avail itself of the jurisdiction of this Court through its business ventures; specifically, the promotion, sale, marketing, and distribution of their products, including the Shakes, in this State through its 100 plus stores and multiple distribution warehouses located in this State.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District as Defendant does business throughout this District, including promoting, selling, marketing and distributing the Shakes at issue, and the named Plaintiff purchased the Shakes in this District.

## GENERAL FACTUAL ALLEGATIONS
## COMMON TO ALL CLASS MEMBERS

### A. Walmart's Advertising of the Shakes

9.     Walmart develops, designs, formulates, manufactures, packages, labels, advertises, markets, distributes and sells its "Parent's Choice Pediatric Shake" ("Shake") in its Alabama stores, in its national stores, and through its online stores to both Alabama and nationally.

3

10.     Walmart's advertising is targeted towards mothers or expectant mothers who wish to provide their babies high quality nutrition, advertising that the Shakes are "easy, ready-to-drink, gluten-free shakes that are easy to slip into your diaper bag."

11.     As to the "Parent's Choice" brand, Walmart states that it is a "special range of products for baby … complete baby collection specially selected with love and attention to this special time in your family's life. With a trust and safety guarantee … Parent's Choice takes care of everything little ones need at an every day low price." https://www.walmart.com/cp/parents-choice-baby-products/4549164.

12.     The Shake's packaging and label contains the following:

    a.  "Naturally Flavored"

    b.  "Balanced Nutrition to Help Kids Thrive"

    c.  "No Synthetic Color, Flavor or Sweeteners"

    d.  "Nutrition to help kids grow"

13.     The Shakes come in a variety of flavors including, but not limited to, Vanilla and Chocolate.

14.     In fine print on the rear of the bottle, the "Ingredients" listed for the Vanilla Shake are as follows:

> Water, Maltodextrin, Sugar, Milk Protein Concentrate, High Oleic Safflower Oil, Canola Oil, Cellulose Gel, Soy Protein Isolate, Short-

Chain Fructooligosaccharides (FOS), Natural Flavors, Soy Lecithin, Fish Oil (DHA), Carrageenan, Salt, Potassium Hydroxide, Monk Fruit, Stevia.

15.     In fine print on the rear of the bottle, the "Vitamins and Minerals" listed

for the Vanilla Shake are as follows:

Choline Bitartrate, Dimagnesium Phosphate, Tricalcium Phosphate, Potassium Chloride, Magnesium Chloride, Ferrous Sulfate, Zinc Sulfate, dl-Alpha-Tocopheryl Acetate (Vitamin E), D-Calcium Pantothenate (Vitamin B5), Niacinamide (Vitamin B3), Thiamine Hydrochloride (Vitamin B1), Manganese Sulfate, Pyridoxine Hydrochloride (Vitamin B6), Riboflavin (Vitamin B2), Copper Sulfate, Vitamin A Palmitate, Folic Acid, Chromium Chloride, Biotin, Potassium Iodide, Phytonadione (Vitamin K1), Sodium Molybdenum, Cholecalciferol (Vitamin D3), Cyanocobalamin (Vitamin B12), Dicalcium Phosphate, Potassium Phosphate, Potassium Citrate, Potassium Chloride, Sodium Ascorbate.

16.     In fine print on the rear of the bottle, the "Ingredients" listed for the

Chocolate Shakes are as follows:

Water, Maltodextrin, Sugar, Milk Protein Concentrate, High Oleic Safflower Oil, Canola Oil, Cocoa (processed with Alkali), Soy Protein Isolate, Short-Chain Fructooligosaccharides (FOS), Cellulose Gel, Natural Flavors, Soy Lecithin, Carrageenan, Fish Oil (DHA), Salt, Potassium Hydroxide, Monk Fruit, Stevia.

17.     In fine print on the rear of the bottle, the "Vitamins and Minerals" listed

for the Chocolate Shakes are as follows:

Choline Bitartrate, Dimagnesium Phosphate, Tricalcium Phosphate, Potassium Chloride, Magnesium Chloride, Ferrous Sulfate, Zinc Sulfate, DL-Alpha-Tocopherol Acetate (Vitamin E), D-Calcium Pantothenate (Vitamin B5), Niacinamide (Vitamin B3), Thiamine Hydrochloride (Vitamin B1), Manganese Sulfate, Pyridoxine Hydrochloride (Vitamin B6), Riboflavin (Vitamin B2), Copper Sulfate,

Vitamin A Palmitate, Folic Acid, Chromium Chloride, Biotin, Potassium Iodine, Phytonadione (Vitamin K1), Sodium Molybdenum, Cholecalciferol (Vitamin D3), Cyanocobalamin (Vitamin B12), Dicalcium Phosphate, Potassium Phosphate, Potassium Citrate, Potassium Chloride, Sodium Ascorbate.

18.    Similarly,    Walmart's    website,    located    at

https://www.walmart.com/ip/Parent-s-Choice-Pediatric-Shake-Vanilla-8-oz-6-

Count/38763845, contains the following advertisements:

    a.  "Parent's Choice Vanilla Pediatric Shake is designed to nourish and support baby's development and growth."

    b.  "Our shakes also contain additional nutritional benefits like antioxidants, probiotics, and no synthetic color, flavor, or sweeteners."

    c.  "Balanced nutrition to help kids thrive."

    d.  "No synthetic color, flavor, or sweeteners."

19.    Walmart's "Naturally Flavored," "Balanced Nutrition" and "No Synthetic Color, Flavor, or Sweeteners" statements prominently displayed on the front of the box and on the front of the individual packaging are untrue, misleading and likely to deceive reasonable consumers such as Plaintiff, because (1) the Vanilla Shakes' characterizing flavor of vanilla is not derived from the characterizing ingredients of vanilla; (2) the Shakes are not "Balanced Nutrition" and do not "Help Kids Thrive" based on their empty calories and high sugar content; (3) the Shakes contain "Synthetic Color, Flavor or Sweeteners." This is, in part, because the Shakes contain unnatural and synthetic ingredients such as maltodextrin and others.

20.    Walmart's advertising and labelling of the Shakes is uniform through all media throughout the United States.

21.    The Shakes are typically sold in six-count cardboard packages which contain the same advertisements and labelling as the individual Shake bottles.

22.    Walmart's misrepresentations and omissions are misleading, likely to deceive, and do deceive reasonable consumers because the Shakes contain unnatural and synthetic ingredients.

**B. Maltodextrin is a Sweetener that is Not Natural but rather is Synthetic**

23.    Merriam-Webster's Dictionary defines "natural" as "existing or produced by nature: not artificial."

24.    The United States Department of Agriculture ("USDA"), finds that an ingredient is synthetic if it is:

> A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

21 C.F.R. § 501.22

25.    "The FDA has considered the term 'natural' to mean that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in                              that                              food."

7

www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/l

abelingnutrition/ucm456090.htm+&cd=3&hl=en&ct=clnk&gl=us.

26.     Similarly, the United States Department of Agriculture's Food Safety

and Inspection Service ("FSIS") defines a "natural" product as one that does not

contain any artificial or synthetic ingredient, and does not contain any ingredient that

is more than "minimally processed," i.e., one that only undergone "traditional

processes used to make food edible or to preserve it or to make it safe for human

consumption, e.g., smoking, roasting, freezing, drying, and fermenting" and has not

been "fundamentally alter[ed]."

27.     Maltodextrin is a texturizer used in processed foods and is created from

starch. Because producing it requires multiple processing steps in an industrial

environment, which transform starches into substances that are not found in nature,

they cannot be described as natural.

28.     Maltodextrin is a saccharide polymer that is added to food as either a

white powder or a concentrated solution to act as a thickening agent. 21 C.F.R. §

184.1444(a). It is commercially manufactured through the partial hydrolysis of corn

starch, potato starch, or rice starch with certain acids and enzymes. *Id*.

29.     To make maltodextrin, a chemical process is used whereby the starches

are cooked and then acids or enzymes such as heat-stable bacterial alpha-amylase

are added to break the starches down further.

30.     Maltodextrin is closely related to corn syrup solids, which are synthetic. The one difference being maltodextrin's sugar content. Both undergo hydrolysis, a chemical process involving the addition of water to further assist breakdown. However, after hydrolysis, corn syrup solids are at least 20 percent sugar, while maltodextrin is less than 20 percent sugar.

31.     Maltodextrin is synthetic because it is not natural but rather uses the above described complex manufacturing chemical, thermodynamic, and mechanical process to make it.

32.     Maltodextrin is also a sweetener because it contains sugars, similar to corn syrup.

33.     Thus, maltodextrin is an unnatural synthetic sweetener contained in the Shakes which is directly contrary to the Shakes' labelling.

34.     The term "natural" does not apply to products that contain artificial or synthetic ingredients, which are not natural by their very definitions.

**C. Walmart's Vanilla Shakes Are Not Derived From Actual Vanilla.**

35.     Walmart characterizes the flavor of its Vanilla Parent's Choice Nutritional Shakes and Chocolate Parent's Choice Nutritional Shakes, as "Vanilla" or "Chocolate," respectively.

36.     Vanilla is a flavoring naturally derived from the cured pods of orchids of the genus Vanilla.

37.     Because growing the vanilla seed pods is labor-intensive, vanilla is very expensive.

38.     Currently, less than 1% of the globally produced vanilla flavoring is derived from vanilla pods, while the greater part is produced synthetically. Gallage N.J., Møller B.L. (2018) Vanilla: The Most Popular Flavour. In: Schwab W., Lange B., Wüst M. (eds) Biotechnology of Natural Products. Springer, Cham. Available at https://link.springer.com/chapter/10.1007%2F978-3-319-67903-7_1

39.     The bulk of vanilla substitutes are actually synthesized on multi-ton scale from guaiacol or lignin extracts, which can be isolated from wood pulp. Available at http://sitn.hms.harvard.edu/flash/2015/the-flavor-rundown-natural-vs-artificial-flavors/

40.     Besides wood pulp, manufacturers produce synthetic vanilla flavoring using a by-product of rice bran oil refining, sugar, yeast fermentation, petrochemicals, and/or clove oil. Available at https://cen.acs.org/articles/92/i6/Following-Routes-Naturally-Derived-Vanillin.html.

41.     Advertising the presence of real vanilla beans is valuable to companies, including Walmart, because products labeled "vanilla flavored" or "artificial vanilla" on the packaging are not as desirable to consumers.

42.    The Vanilla Shakes' front label statement of "Vanilla" being "Naturally Flavored" is understood by Plaintiff and consumers to mean that the Shakes contain natural flavor derived from Vanilla.

43.    Unlike the Chocolate Shakes, which list "cocoa" on its list of ingredients, the Vanilla Shakes do not list vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from Vanilla on its list of ingredients. *See* 21 C.F.R. §§ 169.175 to 169.178.  Upon information and belief, this is because Walmart chose not to pay for the expensive Vanilla for its Vanilla Shakes.

44.    Having not included any ingredient derived from Vanilla in Walmart's Vanilla Shakes, consumers are misled because the only ingredient that could impart the vanilla flavor in the list of ingredients for the Vanilla Shakes is "Natural Flavors."

45.    Upon information and belief, Walmart's use of "Natural Flavors" is an admission that the characterizing flavor in the Vanilla Shakes, Vanilla, is not derived from real Vanilla.  *See* 21 C.F.R. §101.22 (natural flavor) and C.F.R. §§ 169.175 to 169.178.

46.    Logically, Walmart would not use the more expensive and higher quality ingredient (Vanilla bean or extract) and hide it under "Natural Flavors" in its list of ingredients.  Quite the opposite, like Walmart did for its Chocolate Shakes when its listed cocoa as an ingredient, had the Vanilla Shakes contained natural

flavor derived from Vanilla, Walmart would have listed it separately as an ingredient.

### D. The Shakes Lack Nutritional Content To Help Kids Grow and Thrive.

47.     Walmart represents that the Shakes have "Balanced Nutrition to Help Kids Thrive" and "Nutrition to Help Kids Grow."

48.     However, after water, Maltodextrin and sugar are the two most abundant ingredients on the Shakes' ingredients list.

49.     Maltodextrin and sugar do not provide any nutritional value to the Shakes, other than as a carbohydrate.

50.     Indeed, contrary to their advertised uses, the Shakes contain 11g of sugar, 10g of which are "added sugar."

51.     Both Maltodextrin and sugar have a caloric value of 4 calories per gram.

52.     Maltodextrin has a high glycemic index, causing a rapid spike in blood sugar, and Maltodextrin has been shown to raise blood sugar levels more rapidly than glucose (sugar).

53.     Blood sugar spikes occur when a person's blood sugar rises and then falls sharply after eating or drinking.  In the short term, blood sugar spikes can cause lethargy and hunger, leading to excessive caloric intake or decreased caloric expenditure.  Over time, this may lead to weight gain or type 2 diabetes, as the body may not be able to lower blood sugar effectively. This is bad for kids.

54.     Maltodextrins (21 CFR 184.1444) are ingredients with a Dextrose Equivalent (DE) less than 20, and corn syrup (21 CFR 168.120, 168.121, and 184.1865) are ingredients with a DE of 20 or higher.

55.     Depending on the manufacturing process, different maltodextrin will have different DE and different amounts of mono- and disaccharides.

56.     Maltodextrins can contain 8-9% mono and disaccharides and contribute to sweetness.

57.     Maltodextrin is not considered an added sugar for labelling purposes, unless it is purposely manufactured for a sweetening effect.

58.     Thus, if Maltodextrin is at a higher dextrose equivalent (DE) and adds a sweetness then its is considered an "added sugar" for labeling purposes.  If it is at a lower dextrose equivalent and added as a starch, then it does not contribute to the "total sugar" for labeling purposes.

59.     In December 2019, the FDA's Nonbinding Recommendations regarding Nutrition and Supplement Facts Labels does not require, but acknowledges that

> Maltodextrins, corn syrups, and other ingredients with mono-and disaccharides that are created through controlled hydrolysis are widely used by manufacturers and are present in many different types of food products (47 FR 36443 at 36444, September 20, 1982). ***The sugars contributed by these ingredients are consistent with the concept of empty calories as described in the 2015 DGAC Report because they supply sugars and calories to the diet when they are added as an ingredient to foods. We explained in the Nutrition Facts label final***

*rule that small amounts of added sugars that are contributed to the diet by a wide variety of foods can add up over the course of the day and can make it difficult for an individual to eat sufficient amounts of foods from the basic food groups to meet nutrient needs without exceeding the amount of calories they need in a day for weight maintenance (81 FR 33742 at 33759).* As such, when an ingredient containing mono- and disaccharides that are created through controlled hydrolysis (e.g. maltodextrin or corn syrup) is added to a food during processing, those mono- and disaccharides contributed by the ingredient need to be declared as added sugars on the label (21 CFR 101.9(c)(9)(iii).

(emphasis added).

60.     Based on the Nutritional Facts section, one bottle has 240 calories with nearly half the caloric value consisting Maltodextrin and sugar, as empty calories.

61.     This much sugar, as empty calories, are not "Balanced Nutrition to Help Kids Thrive" nor "Nutrition to help kids grow."  It takes much more than mere empty calories, primarily from sugar, to accomplish these goals.

## E. Walmart Deceptively Markets the Shakes to Induce Consumers to Purchase the Shakes

62.     Representations that a product is "Naturally Flavored" "Vanilla," has a "Balanced Nutrition to Help Kids Thrive," and contains "No Synthetic Color, Flavor or Sweeteners" is material to a reasonable consumer.

63.     Walmart advertises its Shakes with these promises to increase the sales of its products. Walmart is aware that the claims are material to consumers.

14

64.     Despite knowing that the Shakes contain unnatural and synthetic ingredients, including sweeteners, Walmart has engaged in a widespread marketing and advertising campaign to portray the Shakes as a great nutritional supplement for kids. The opposite is true.

65.     Likewise, the Vanilla Shakes are misleading labelled as "Naturally Flavored" "Vanilla" because it implies that the flavor is derived from Vanilla; when in fact the Vanilla Shakes do not contain any ingredients that are Vanilla flavored and derived from Vanilla.

66.     Because it is not feasible for a reasonable consumer to physically examine or test the contents of a food product prior to sale, consumers must and do rely on representations and product appearance to determine which food product to buy among comparable alternatives.

67.     Products that are entirely enclosed in packaging, such as Walmart's Shakes, require the consumer to rely entirely on representations about the product.

68.     Here, Plaintiff and the other Class members reasonably relied to their detriment on Walmart's deceptive representations and omissions.

69.     Walmart made the deceptive representations and omissions on the Shakes with the intent to induce Plaintiff and the other Class members' purchase of the Shakes.

70.    Walmart's false, misleading and deceptive representations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and mislead the other Class members.

71.    Had Walmart not made false, misleading and deceptive misrepresentations and omissions, Plaintiff and the other Class members would not have been economically injured.

## PLAINTIFF'S SPECIFIC FACTUAL ALLEGATIONS

72.    Plaintiff Kaylan Morris purchased Walmart's Parent's Choice Pediatric Shakes during the Class Period (defined below), including but not limited to the Vanilla Parent's Choice Nutritional Shakes and Chocolate Parent's Choice Nutritional Shakes.

73.    Plaintiff purchased these Shakes from Walmart locations across Alabama and specifically in Jefferson County, Alabama.

74.    Plaintiff bought these Shakes for her young son, Jaxon Morris.

75.    Plaintiff's son is an extremely picky eater and Plaintiff bought Walmart's Shakes to help supplement his diet, help him grow, provide balanced nutrition, and based upon the promises Walmart made on the labelling.

76.    Plaintiff was concerned about her son's diet and nutrition. Plaintiff opted to supplement Jaxson's diet with Walmart's Shakes after reading that the

16

Shakes were "Naturally Flavored," provided "A Balanced Nutrition to Help Kids Thrive," and contained "No Synthetic Colors, Flavors or Sweeteners."

77.    Plaintiff was extremely upset to discover that Walmart's Shakes were not as advertised and contained synthetic and unnatural ingredients.  Further, they failed to contain the nutrients her son needed and instead relied on significant sweeteners and sugars, some of which are not natural and are synthetic.

78.    Plaintiff would not have purchased the Shakes had she known that they contained synthetic and artificial ingredients, that they were not balanced nutrition which would help kids grow, nor if she knew that the Vanilla flavoring was not derived from actual Vanilla. In fact, as soon as Plaintiff found out about Walmart's misrepresentations, she stopped purchasing the Shakes.

79.    Walmart's misrepresentations were material to Plaintiff's purchase decision because Plaintiff, acting as a reasonable consumer, cares about whether Walmart's Shakes contain synthetic or artificial ingredients, and thus attaches importance to the statements "Naturally Flavored" and containing "No Synthetic Color, Flavor or Sweeteners" when making a decision to purchase the Shakes.

80.    As a result of Walmart's misrepresentations, Plaintiff brings this class action to secure, among other things, equitable relief, declaratory relief, restitution and alternative damages, for a Class of similarly situated United States purchasers, against Walmart.

81.     Plaintiff seeks damages individually and on behalf of the Class.

## **CLASS ACTION ALLEGATIONS**

82.     Plaintiff brings this action on her own behalf, and on behalf of the following Class and Subclasses pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as:

> a. All persons in the United States who, within the relevant and applicable statute of limitations period, purchased a Parent's Choice Pediatric Shake.

Subclasses:

1. All persons in the United States who, within the relevant and applicable statute of limitations period, purchased a Vanilla Parent's Choice Pediatric Shake.

2. All persons in the United States who, within the relevant and applicable statute of limitations period, purchased a Chocolate Parent's Choice Pediatric Shake.

83.     Plaintiff also brings this action on her own behalf, and on behalf of the following Class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Subclass is defined as:

> a. All persons in Alabama who, within the relevant and applicable statute of limitations period, purchased a Parent's Choice Pediatric Shake.

Subclasses:

1. All persons in Alabama who, within the relevant and applicable statute of limitations period, purchased a Vanilla Parent's Choice Pediatric Shake.

2. All persons in Alabama who, within the relevant and applicable statute of limitations period, purchased a Chocolate Parent's Choice Pediatric Shake.

18

84.    Excluded from the Class are (a) any person who purchased the Shake for resale and not for personal or household use, (b) any officers, directors or employees, or immediate family members of the officers, directors or employees, of Walmart or any entity in which a Walmart has a controlling interest, (c) any legal counsel or employee of legal counsel for Walmart, and (d) the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

85.    **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are tens of thousands of putative Class Members. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

86.    **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.  Whether Walmart failed to comply with its warranties;

b.  Whether Walmart's conduct constitutes a breach of applicable warranties;

c.  Whether Walmart was unjustly enriched by selling the Shakes in light of its conduct as described herein;

d.  Whether advertising the Shakes as being "Naturally Flavored" is false and/or deceptive;

e.  Whether advertising the Shakes as being "Balanced Nutrition to Help Kids Thrive" is false and/or deceptive;

f.  Whether advertising the Shake as having "No Synthetic Color, Flavor or Sweeteners" is false and/or deceptive;

g.  Whether the Shakes are "Natural;"

h.  Whether Walmart has misrepresented facts about the Shakes;

i.  Whether Walmart's representation and omissions regarding the nature of the Shakes constitute false and/or deceptive trade practices;

j.  Whether Walmart's acts, omissions or misrepresentations of material facts violated state deceptive practice acts, including those of the State of Alabama;

k.  Whether the Plaintiff and putative Class Members have suffered an ascertainable loss as a result of Walmart's acts, omissions or misrepresentations of material facts;

l.  Whether the Plaintiff and putative Class Members are entitled to monetary damages and, if so, the amount of such relief; and

m. Whether the Plaintiff and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

87.     Pursuant to Rule 23(b)(2), Walmart has acted or refused to act on grounds generally applicable to the putative Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Class as a whole. In particular, Walmart has designed, manufactured, marketed, sold and/or distributed the Shake, which Defendant knows or should have known was advertised false and/or deceptively and provided an inadequate disclosure to consumers, including the Plaintiff and the putative Class Members.

88.     **Typicality.** Plaintiff's claims are typical of the claims of the Members of the putative Class, as each putative Class Member was subject to the same common false and/or misleading advertising. Plaintiff shares the aforementioned facts and legal claims or questions with putative Class and the Plaintiff and all putative Class Members have been similarly affected by Walmart's common course of conduct alleged herein. The Plaintiff and all putative Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss from their purchases of the Shakes.

89.     **Adequacy.** The Plaintiff will fairly and adequately represent and protect the interests of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action.

90.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

   a.   The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Walmart's conduct;

   b.   Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

   c.   The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

   d.   Individual joinder of all putative Class Members is impracticable;

   e.   Absent a Class, the Plaintiff and putative Class Members will continue to suffer harm as a result of Walmart's unlawful conduct; and

   f.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which the Plaintiff and putative Class Members can seek redress for the harm caused by Walmart.

91.    Alternatively, the Class may be certified for the following reasons:

   a.   The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Walmart;

   b.   Adjudications of individual Class Members' claims against Walmart would, as a practical matter, be dispositive of the interests of other putative Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

    c.  Walmart has acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
### (On behalf of the Nationwide Class and State Class)

92.     Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

93.     Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class as well as the Alabama subclass.

94.     A party is unjustly enriched when it retains a benefit to the detriment of another party against the fundamental principles of justice, equity, and good conscience.

95.     Walmart's transactions with Plaintiff and putative Class Members, as a result of Walmart's wrong acts and omissions set forth herein, were intended to result in, and did result in, sale of the Shakes.

96.     Walmart has been unjustly enriched after making false, deceptive and/or misleading representations in advertisements and on the labels and/or package inserts/instructions of the Shakes because Walmart knew, or should have known, that the representations made were unsubstantiated, false, deceptive and/or misleading.

97.    Walmart has reaped millions of dollars in revenue as a direct and proximate result of its scheme to mislead and deceive the Plaintiff and Class Members regarding its unsubstantiated, false, deceptive and/or misleading representations as set forth herein.

98.    Walmart has amassed such earnings by virtue of its deceptive and misleading behavior violates fundamental principles of justice, equity, and good conscience.

99.    The Plaintiff and putative Class Members have been damaged as a direct and proximate result of Walmart's unjust enrichment because they would not have purchased the Shakes on the same terms or for the same price had they known of the true ingredients and true nature of the Shakes.

100.   Walmart continues to be unjustly enriched by the deceptive and misleading labeling and advertising of the Shakes.

101.   When required, the Plaintiff and Class Members are in privity with Walmart because its sale of the Shakes was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Walmart's agents for the purpose of the sale of the Shakes and even sales through authorized agents contain Shakes which bear Walmart's proprietary "Parent's Choice" branding.

102.   As a direct and proximate result of Walmart's wrongful conduct and unjust enrichment, the Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Walmart for its inequitable and unlawful conduct.

**COUNT II**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq*.)**
**(On behalf of the Nationwide Class)**

103.   Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

104.   Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class.

105.   Walmart sold the Shakes as part of its regular course of business.

106.   The Plaintiff and putative Class Members purchased the Shakes either directly from Walmart or through authorized retailers.

107.   All Shakes contain the same labelling and advertisements and Walmart's exclusive branding of "Parent's Choice."

108.   The MAGNUSON–MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *et seq*., provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

109.   The Shakes is a "consumer product" as that term is defined by 15 U.S.C. § 2301(1), as it constitutes tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

110.   The Plaintiff and putative Class Members are "consumers" and "buyers" as defined by 15 U.S.C. § 2301(3), since they are buyers of the Shakes for purposes other than resale.

111.   Walmart is an entity engaged in the business of making and selling the Shakes, either directly or indirectly, to consumers such as the Plaintiff and the putative Class Members. As such, Walmart is a supplier as defined in 15 U.S.C. § 2301(4)

112.   Walmart "guarantee[d]" the Shakes by expressly stating so on their label.

113.   Walmart made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between the Plaintiff, the putative Class Members, and Walmart. Walmart expressly warranted that the Shakes were fit for its intended purpose by making the express warranties that the Shakes are or have:

> a.   "Naturally Flavored" "Vanilla" [for the Vanilla Shakes only]
>
> b.   "Balanced Nutrition to Help Kids Thrive"
>
> c.   "No Synthetic Color, Flavor or Sweetener"

      d.  "Nutrition to help kids grow"

114.   Walmart's labels represented to plaintiff the Vanilla Shakes contained only the characterizing ingredient to impart flavor to the Shakes, and that this flavor was derived actual vanilla and/or present in sufficient amounts to independently characterize the food.

115.   Walmart's aforementioned written affirmations of fact promises and/or descriptions, as alleged, are each a "written warranty." The affirmations of fact promises and/or descriptions constitute a "written warranty" within the meaning of the MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301(6).

116.   Walmart breached the applicable warranty because the promises made in the label are untrue and/or misleading, rendering the Shakes unfit for their intended use and purpose.

117.   These failures substantially impair the use and value of the Shakes.

118.   The failures at issue herein existed when the Shakes left Walmart's possession or control and were sold to the Plaintiff and putative Class Members. The true nature of the Shakes was not discoverable by the Plaintiff or putative Class Members at the time of their purchase.

119.   All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of the Plaintiff and putative Class Members.

120.   Although not required, Walmart was placed on reasonable notice of the defect in the Shakes and their breach of the warranty, and have failed to cure the defects for the Plaintiff and putative Class Members, despite having reasonable time to do so.

121.   Walmart breached its express warranties since the Shakes did not contain the properties Walmart represented them to possess.

122.   Walmart's breaches of warranties have caused the Plaintiff and putative Class Members to suffer injuries, pay for Shakes without the promised properties, and enter into transactions they would not have entered into for the consideration paid.

123.   As a direct and proximate result of Walmart's breaches of warranties, the Plaintiff and putative Class Members have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Shakes and the cost of efforts to mitigate the damages caused by using the Shakes.

124.   As a direct and proximate result of Walmart's breaches of these warranties, the Plaintiff and putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

125.   The Plaintiff and the putative Class therefore seek and are entitled to recover damages and other legal and equitable relief, injunctive relief and costs and expenses (*including attorneys' fees based upon actual time expended*), as provided by 15 U.S.C. § 2310(d).

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (On behalf of the Nationwide Class and State Class)

126.   Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

127.   Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class and State Subclass.

128.   Walmart manufactured, marketed, distributed and sold the Shakes as part of its regular course of business.

129.   The Plaintiff and the putative Class Members purchased the Shakes either directly from Walmart or through authorized retailers.

130.   Walmart made the foregoing express representations and warranties nationwide to all United States consumers, which became the basis of the bargain between the Plaintiff, the putative Class Members and Walmart, thereby creating express warranties that the Shakes would conform to Walmart's affirmations of fact, representations, promises, and descriptions; specifically, that:

a.   "Naturally Flavored" "Vanilla" [for the Vanilla Shakes only]

29

    b.  "Balanced Nutrition to Help Kids Thrive"

    c.  "No Synthetic Color, Flavor or Sweetener"

    d.  "Nutrition to help kids grow"

131.   Walmart's labels represented to plaintiff the Vanilla Shakes contained only the characterizing ingredient to impart flavor to the Shakes, and that this flavor was derived actual vanilla and/or present in sufficient amounts to independently characterize the food.

132.   Walmart breached its express warranties since the Shakes did not contain the properties Walmart represented them to possess.

133.   The failures at issue herein existed when the Shakes left Walmart's possession or control and were sold to the Plaintiff and putative Class Members. The true nature of the Shakes was not discoverable by the Plaintiff or putative Class Members at the time of their purchase.

134.   Walmart had actual knowledge of the breach, and given the nature of the breach, (*i.e. false representations regarding the Shakes*), Walmart necessarily had knowledge that the representations made were false, deceptive and/or misleading.

135.   Walmart's breaches of warranties have caused the Plaintiff and putative Class Members to suffer injuries, pay for Shakes without the promised

properties, and enter into transactions they would not have entered into for the consideration paid.

136.  As a direct and proximate result of Walmart's breaches of these warranties, the Plaintiff and putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT IV
## BREACH OF IMPLIEDWARRANTY
### (On behalf of the Nationwide Class and the State Class)

137.  Plaintiff, individually and for the Class, incorporates by reference all preceding paragraphs as though fully set forth herein.

138.  Plaintiff asserts this cause of action on behalf of herself and the Nationwide Class and the state Subclass.

139.  Section 2-314 of the UNIFORM COMMERCIAL CODE provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, inter alia, "pass without objection in the trade under the contract description", "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved", be "adequately contained, packaged, and labeled as the agreement may

require", and "conform to the promise or affirmations of fact made on the container or label."

140.   Walmart formulated, manufactured, tested, marketed, promoted, distributed, and sold the Shakes as having certain characteristics described above, including to the Plaintiff and putative Class Members who purchased the Shakes.

141.   Walmart knew the use for which the Shakes were intended (in fact expressly advertising them for baby and children's use) and impliedly warranted the product to be of merchantable quality, safe and fit for use.

142.   The Plaintiff and putative Class Members reasonably relied on the skill, express affirmations of fact, and judgment of Walmart, especially since Walmart's "Parent's Choice" brand is "special range of products for baby … complete baby collection specially selected with love and attention to this special time in your family's life. With a trust and safety guarantee … Parent's Choice takes care of everything little ones need at an every day low price," and as such their implied warranty, in using the Shakes.

143.   However, the Shakes were not and are not of merchantable quality or safe or fit for their intended use, because they are unreasonably dangerous and unfit for the ordinary purpose for which they were used. Specifically, the Shakes actual ingredients belie Walmart's advertisements.

144.   Walmart breached its implied warranties because the Shakes do not have the quality, quantity, characteristics, or benefits as promised, and because the Shakes do not conform to the promises made on their labels and/or on Walmart's website.

145.   As a direct and proximate result of one or more of these wrongful acts or omissions of Walmart, the Plaintiff and putative Class Members suffered injuries and damages.

146.   The Plaintiff and putative Class Members were injured as a direct and proximate result of Walmart's breach because they would not have purchased the Shakes if they had known the true facts - the Shakes did not and does not have the characteristics, quality, or value as impliedly warranted.

147.   As a direct and proximate result of Walmart's breaches of these warranties, the Plaintiff and the putative Class Members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT V
### Violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (CODE OF ALABAMA §§ 8-19-1, *et seq.*)
### (On behalf of the State Class)

148.   Plaintiff, individually and for the Alabama Subclass, incorporates by reference all preceding paragraphs as though fully set forth herein.

149.   Plaintiff asserts this cause of action on behalf of the Alabama Subclass.

150.   Walmart's marketing, sale and/or distribution of the Shakes and the Plaintiff and the putative Alabama Subclass Members' purchase of the Shakes was a sale or distribution of goods to a consumer within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT (CODE OF ALABAMA §§ 8-19-1, *et seq.*).

151.   Plaintiff and putative Alabama Subclass Members' purchased the Shakes for personal, family, or household use.

152.   Walmart's acts and practices as described herein have misled and deceived and/or likely to mislead and deceive members of the Alabama Subclass and the general public of the State of Alabama. Walmart has advertised, marketed, and sold the Shakes as having certain characteristics, as set forth herein. Thus, Walmart has wrongfully:

     a.    represented that its goods (*i.e., the Shakes*) have sponsorship, approval, characteristics, ingredients, uses benefits or qualities that they do not have;

     b.    represented that its goods (*i.e., the Shakes"*) are of a particular standard, quality, or grade, or that its goods (*i.e., the Shakes"*) are of a particular style or model, if they are of another;

     c.    failed to provide adequate warnings or instruction that a manufacturer exercising reasonable care would and should have provided concerning the risk of suffering Injuries from use and/or repeated use of the Shakes, particularly in light of the likelihood that the Shakes would Injuries;

d.  knowingly, intentionally, and/or recklessly omitted, suppressed, and/ or concealed the true, unreasonably dangerous nature of the Shakes;

e.  knowingly, intentionally, and/or recklessly omitted, suppressed, and/or concealed that the use of the Shakes posed a significant risk of chemical burns, allergic reactions, and other Injuries, particularly among African Americans;

f.  knowingly, intentionally, recklessly, or negligently omitted proper warnings from being placed on its packaging, or otherwise calling attention to this dangerous propensity—which caused serious personal injuries in many consumers including the Plaintiff and numerous putative Class Members; and,

g.  engaged in unconscionable, false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce – marketing, advertising, and selling the Shakes.

153.  By its actions, Walmart is disseminating uniform false advertising by its labeling, concerning the Shakes, which by its nature is unfair, deceptive, untrue, and/or misleading within the meaning of the ALABAMA DECEPTIVE TRADE PRACTICES ACT. Such actions are likely to deceive, do deceive, and continue to deceive the Alabama general public for all the reasons detailed herein above.

154.  Walmart intended for the Plaintiff and Alabama Subclass Members to rely on its representations and omissions and the Plaintiff and Alabama Subclass Members did rely on Walmart's misrepresentations and omissions of fact.

155.  The misrepresentations and omissions of fact constitute deceptive, false and misleading advertising in violation of the ALABAMA DECEPTIVE TRADE PRACTICES ACT.

156.   By performing the acts described herein Walmart caused monetary damage to the Plaintiff and Alabama Subclass Members of similarly situated individuals.

157.   Accordingly, Plaintiff requests the following relief both individually and on behalf of the Alabama Subclass Members:

    a.    actual damages sustained by the Plaintiff and Alabama Subclass Members or the sum of $100.00, whichever is greater;

    b.    three times actual damages;

    c.    appropriate injunctive relief in the form of enjoining Defendant from continuing to violate Alabama statutory law;

    d.    attorneys' fees and costs; and

    e.    such other and further relief as the Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    a.    For an order certifying the Class under FEDERAL RULE OF CIVIL PROCEDURE 23;

    b.    For an order and naming the Plaintiff as representatives of the Class and Subclass;

    c.    For an order naming Plaintiff's counsel as Class Counsel to represent the Class and Subclass;

    b.    For an order declaring that Defendant's conduct violates the statutes and/or laws referenced herein;

c.      For an order finding in favor of the Plaintiff, the Class and the Subclass on all counts asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined by a jury and/or the Court;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief, including disgorgement of all profits and ill-gotten monetary gains received by Walmart from sales of the Shakes;

g.      For an order enjoining Walmart from continuing the unlawful practices detailed herein; and

h.      For an order awarding the Plaintiff, the Class and the Subclass their reasonable attorneys' fees and expenses and costs of suit.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted, this the 19th day of February 2020.

/s/ Taylor C. Bartlett
W. Lewis Garrison, Jr.
wlgarrison@hgdlawfirm.com
Taylor C. Bartlett (ASB-2365-A51B)
taylor@hgdlawfirm.com
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, AL 35203
Telephone: 205.326.3336
Facsimile: 205-326-3332

J. Stuart McAtee  (ASB-0868-T52J)
ALEXANDER SHUNNARAH
PERSONAL INJURY ATTORNEYS
3626 Clairmont Avenue S

Birmingham, AL 35222
(205) 983-8116 Office
(205) 983-8416 Fax
smcatee@asilpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to all counsel of record.

*/s/ Taylor C. Bartlett*
Taylor C. Bartlett