FILED
2021 Nov-05  AM 11:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| KAYLAN MORRIS, on behalf of herself and all others similarly situated | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 02:19-cv-00650-TMP |
| | ) |
| WALMART INC. f/k/a WAL-MART STORES, INC., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## WALMART'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

{B4167004}

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................i

TABLE OF AUTHORITIES .......................................................... ii

INTRODUCTION..........................................................................1

FACTUAL BACKGROUND.........................................................3

ARGUMENT .................................................................................6

I.    PLAINTIFF LACKS STANDING AS SHE SUFFERED NO INJURY. .......................7

II.   PLAINTIFF'S PROPOSED CLASSES ARE NOT ASCERTAINABLE. ...................11

III.  PLAINTIFF IS NEITHER TYPICAL NOR ADEQUATE.........................................14

IV.   INDIVIDUAL ISSUES PREDOMINATE OVER ANY COMMON ISSUES THAT MAY EXIST................................................................................................18

V. PLAINTIFF LACKS STANDING TO PURSUE A 23(B)(2) INJUNCTIVE CLASS BECAUSE SHE IS ALREADY AWARE OF THE ALLEGEDLY FALSE STATEMENTS.......................23

CONCLUSION ...............................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020)...............................................24

*Blum v. Yaretsky,* 457 U.S. 991 (1982)..................................................................17

*Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225 (11th Cir. 2016) .................7

*Califano v. Yamasaki,* 442 U.S. 682 (1979) ............................................................6

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..............................................24

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .....................................................21

*Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393 (N.D. Ala. 1997) 15

*Doss v. Gen. Mills, Inc.*, 816 F. App'x 312 (11th Cir. 2020) .............................8, 10

*Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, No. 8:09CV607-T-27MAP, 2010 WL 1223126 (M.D. Fla. Mar. 25, 2010)...................................................16

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................17

*Griffin v. Dugger,* 823 F.2d 1476 (11th Cir. 1987) ..................................................8

*Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661 (M.D. Fla. 2000)........................14

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013)................23

*In re Acuity Brands, Inc. Sec. Litig.*, No. 1:18-CV-2140-MHC, 2020 WL 5088092 (N.D. Ga. Aug. 25, 2020)..................................................................21

*In re Photochromic Lens Antitrust Litig.*, No. 8:10-CV-00984-T-27EA, 2014 WL 1338605 (M.D. Fla. Apr. 3, 2014) ...................................................................18

*In re Rail Freight Fuel Surcharge Antitrust Litig.—MDL No. 1869,* 725 F.3d 244 (D.C. Cir. 2013)...................................................................................18, 19, 21

*Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945 (11th Cir. 2015) ...............11, 12, 13

*Luczak v. Nat'l Beverage Corp.*, No. 0:18-CV-61631-KMM, 2021 WL 3163544 (S.D. Fla. July 12, 2021) ...........................................................................14

*Meadows v. HSBC Mortgage Corp.*, 2011 WL 13134199 (N.D. Ala. Sept. 27, 2011)..........................................................................................................15

*Nelson v. Nationstar Mortg., LLC*, 504 F. Supp. 3d 1307 (S.D. Ala. 2020)...........15

*Perez v. Metabolife Int'l, Inc.*, 218 F.R.D 262 (S.D. Fla. 2003) .............................13

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000)........7, 14, 16

*Sheehan v. Bowden*, 572 So. 2d 1211 (Ala. 1990) ...................................................15

*Shepherd v. Vintage Pharms., LLC*, 310 F.R.D. 691 (N.D. Ga. 2015) ...................17

*Shumate & Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 509 F.2d 147 (5th Cir. 1975) .20

*Simmons v. Blodgett*, 110 F.3d 39 (9th Cir. 1997) ....................................................7

*Smith v. Apple, Inc.*, No. CIV.A.08-AR-1498-S, 2009 WL 3958096 (N.D. Ala. Nov. 4, 2009)..................................................................................................16

*Stephens v. Walmart Stores, Inc.*, No. 0:16-CV-62723-KMM, 2017 WL 7792569 (S.D. Fla. Oct. 23, 2017) ....................................................................11

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)........................................8, 10

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2021) ...........................................8

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009)..................................18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).....................................6, 7, 22

*Wasser v. All Mkt., Inc.*, 329 F.R.D. 464 (S.D. Fla. 2018) ................................23, 24

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262 (11th Cir. 2001)....23

## Statutes

15 U.S.C. § 2310(e) ..................................................................................................16

Ala. Code § 7-2-607(3)(a).........................................................................................16

Ala. Code § 8-19-10(a) .............................................................................................10

Ala. Code § 8-19-10(e) .............................................................................................15

## Other Authorities

Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009) .................................................................................................22

## Rules

Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment .........................7

## Treatises

*Predominance of common questions of law or fact*, 1 McLaughlin on Class Actions § 5:23 (18th ed.)................................................................................18

## Regulations

21 C.F.R. § 101.22(h)(1).............................................................................................1

21 C.F.R. § 184.1444(a)..............................................................................................1

Defendant, Walmart Inc. ("Walmart"), offers this Opposition to Plaintiff's Motion for Class Certification. As discussed further below, Plaintiff's Motion is due to be denied because Plaintiff lacks standing to pursue any of the proposed claims, Plaintiff's proposed class is not ascertainable, and numerous individual questions of proof will overwhelm any common questions that may exist.

## INTRODUCTION

Plaintiff continues to press claims regarding Walmart's Vanilla and Chocolate Parent's Choice Pediatric Shakes ("Shakes") that are at odds with the FDA's regulations. Plaintiff claims the Vanilla Shakes mislead consumers because they are labeled "Naturally Flavored." The basis for Plaintiff's claim is that "on the list of ingredients, the Vanilla Shakes do not list vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from Vanilla." (Doc. 53 at 8). The FDA regulations, however, do not require Walmart to list "vanilla"; Walmart is only required to (and does) list "natural flavors." 21 C.F.R. § 101.22(h)(1). Plaintiff also claims that the Vanilla and Chocolate Shakes' claim to contain "No Synthetic Color, Flavor or Sweeteners," is false because the Shakes contain maltodextrin. Plaintiffs continue to press this claim even though the FDA clearly defines maltodextrin as "nonsweet." 21 C.F.R. § 184.1444(a).

Undeterred, Plaintiff now seeks to certify two classes. The first proposed class being "All persons in Alabama who on or after February 1, 2018 purchased a Clean

Label Chocolate Parent's Choice Pediatric Shake." The second proposed class being "All persons in Alabama who on or after February 1, 2018 purchased a Clean Label Vanilla Parent's Choice Pediatric Shake." Plaintiff's justification for these classes, however, ignores and mischaracterizes the evidence, including Plaintiff's own testimony. Properly viewed, the evidence proves Plaintiff's Motion for Class Certification should be denied for the following reasons:

*First*, Plaintiff lacks standing to pursue any of the asserted claims as she suffered no injury. Plaintiff testified that she first purchased the prior version of the Shakes not containing the label claims at issue and then, following the release of the newly formulated Shakes containing the label claims at issue, continued purchasing the Shakes for the exact same price. Plaintiff therefore did not pay a premium for the Shakes as a result of the allegedly false statements.

*Second*, Plaintiff's proposed classes are not ascertainable as Plaintiff has provided no administratively feasible way to identify the class. ████████████ ████████████████████████████████████████████

*Third*, Plaintiff is neither typical nor adequate. In addition to lacking standing, Plaintiff failed to provide pre-suit notice on her breach of warranty and Alabama Deceptive Trade Practices Act claims. Failure to provide the required notice, mandates the dismissal of Plaintiff's claims making her an inadequate class representative.

*Fourth*, the individualized inquiries required to determine whether each of the class members was injured will overwhelm any common issues that may exist. The evidence demonstrates that about thirty percent of purchasers first bought the Shakes prior to the Shakes at issue being introduced, and that only about thirty percent of purchasers bought the Shakes because of the label claims at issue.

*Fifth*, Plaintiff lacks standing to pursue a 23(b)(2) injunctive class because she is already aware of the allegedly false statements and is therefore not at risk of suffering future injury.

## FACTUAL BACKGROUND

### The Shakes

In 2014, Walmart began selling original Parent's Choice Pediatric Shakes. (Ex. 1, Redford Depo., 13:22-14:6). The labels for these original Shakes did not contain the "Naturally Flavored" and "No Synthetic Color, Flavor or Sweeteners" claims. (*Id.* at 16:9-17:5). In fact, the labels made clear that the original Shakes contained artificial flavors and sucralose (an artificial sweetener). (*Id.* at 16:9-17:5, 158:18-159:9; Ex. 2, WM_MORRIS_0000480-483). In 2017, Walmart began reformulating the Shakes. (Ex. 1, Redford Depo., 17:6-20, 64:17-20, 69:3-6). This reformulation resulted in the "Clean Label" Shakes. (*Id.* at 17:6-20). The new Clean Label Shakes removed the artificial flavors and sweeteners, and, for the first time, included the label claims at issue here. (*Id.* at 16:9-17:5).

In late February 2018, the Clean Label Shakes were first shipped to the stores. (*Id.* at 146:15-147:1). The shipment of the Clean Label Shakes occurred prior to all of the original Shakes being sold. (*Id.* at 96:9-17). ████████████████████

████████████████████████████████████████████████████.

(*Id.* at 226:16-227:5).

### Kaylan Morris

Kaylan Morris is the only named plaintiff. (Doc. 42, p.1). Ms. Morris has been purchasing Walmart's Parent's Choice Pediatric Shakes since at least December 30, 2017. (Ex. 3, Plaintiff's Responses to Defendant's First Set of Interrogatories, No. 2). In total, Ms. Morris purchased the Shakes on at least six separate occasions prior to the Clean Label Shakes being shipped to the stores. (*Id.*). In other words, Ms. Morris began purchasing the Shakes before they made the claim to be "Naturally Flavored" or to contain "No Synthetic Color, Flavor or Sweetener." In fact, Ms. Morris first purchased Shakes that explicitly stated they were artificially flavored. (Ex. 1, Redford Depo., 16:9-17:5, 158:18-159:9; Ex. 2, WM_MORRIS_0000480-483). From late February 2018 through October 19, 2018, Ms. Morris continued purchasing the Shakes an additional twenty times. (Ex. 3, Plaintiff's Responses to Defendant's First Set of Interrogatories, No. 2). Ms. Morris paid the same amount for every Shake she purchased whether purchased before or after Walmart began selling the Clean Label Shakes. (Ex. 4, Morris Depo., 50:8-18). Ms. Morris admitted

that she would not be damaged if she paid the same price for the Clean Label Shakes as she did for the original Shakes. (*Id.* at 38:12-19; 54:8-18).

**Purchaser Survey**

Sarah Butler conducted a survey of 402 purchasers of the Chocolate and Vanilla-flavored Shakes to determine consumers' reasons for purchasing the Shakes. According to Ms. Butler's survey, "30.1 percent of consumers surveyed reported that they made their first purchase prior to 2018." (Ex. 5, Butler Report, p. 21[1]). In other words, like Ms. Morris, thirty percent of purchasers first bought the Shakes before the at-issue claims appeared on the Shakes' labels. Ms. Butler's survey also found that when purchasers were asked the open-ended question of why they purchased the Shakes, no respondent "indicated they first purchased the Shakes due to 'No Synthetic Color, Flavor, or Sweeteners,' and a total of five respondents (1.2 percent) indicated that they purchased the Chocolate Shakes[2] because they believed them to be 'Naturally Flavored.'" (*Id.* at ¶ 43). After being given a list of potential reasons for purchasing the Shakes, Ms. Butler's survey found, "about 70 percent of [Shake purchasers] did not first purchase the Shakes because they were labeled

---

[1] Ms. Butler signed her Report declaring "under penalty of perjury the foregoing is true and correct to the best of my knowledge and belief." (Ex. 5, Butler Report, p. 38).

[2] It should be noted, the Second Amended Complaint does not allege that the Chocolate Shakes' claim to be "Naturally Flavored" is false, only the Vanilla Shakes.

'Naturally Flavored,' or 'No Synthetic Color, Flavor, or Sweeteners.'" (*Id.* at ¶ 48. *See also id.* at ¶ 12).

When repeat purchasers were asked the open-ended question about why they continued purchasing the Shakes "no respondents indicat[ed] that they continued to purchase the Shakes due to 'No Synthetic Color, Flavor, or Sweeteners,' and only one respondent indicated that they continued to purchase the Vanilla Shakes because they believed them to be 'Naturally flavored.'" (*Id.* at ¶ 50). Again, when given a list of potential reasons for continuing to purchase the Shakes, about sixty-five percent of respondents selected something other than the at-issue statements as reasons for their continued purchase. (*Id.* at ¶ 56. *See also id.* at ¶ 12). Ms. Butler concluded her "survey provides empirical evidence demonstrating that consumers of both flavors of the Shakes – Vanilla and Chocolate – purchase the product(s) for a range of reasons, and that the majority do not purchase the Shakes because of the allegedly false and misleading statements." (*Id.* at ¶ 64). Plaintiff offers no expert of her own to rebut Ms. Butler's survey.

## ARGUMENT

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–701 (1979)). "Rule 23 does not set forth a mere pleading standard. A party seeking

class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350. "[T]hat certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350-51.

"The party seeking class certification has the burden of proof." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). "[T]he entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied 'the party with the burden of proof loses.'" *Id.* (quoting *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997)). If the "district court has doubts about whether 'the requirements of Rule 23 have been met [it] should refuse certification . . . .'" *Id.* at 1233-34 (quoting FED. R. CIV. P. 23 advisory committee's note to 2003 amendment). Here, Rule 23(a) requires Plaintiff to prove: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

## I.    PLAINTIFF LACKS STANDING AS SHE SUFFERED NO INJURY.

"'[A]ny analysis of class certification must begin with the issue of standing.'" *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (quoting

*Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir. 1987)). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). "Every class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *Id.* at 2208 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2021) (Roberts, C.J. concurring)).

Plaintiff argues she "was damaged because (1) she purchased these shakes; (2) she paid a premium for the Pediatric Shakes; and (3) her damages under the ADTPA are statutory." Doc. 49 at 33 n.17. Each of Plaintiff's purported injuries, however, is either legally or factually insufficient. First, simply purchasing a product containing an allegedly misleading label is insufficient, on its own, to create standing. *Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 313-14 (11th Cir. 2020) (affirming the district court's dismissal on standing grounds even though plaintiff purchased Cheerios with an allegedly misleading label because she failed to allege any actual injury).

Next, Plaintiff's claim that "she paid a premium for the Pediatric Shakes," ignores Plaintiff's own documents and testimony.[3] Ms. Morris first began purchasing the Shakes before the reformulation that led to the Clean Label Shakes. (Ex. 1, Redford Depo., 146:15-22; Ex. 3, Plaintiff's Responses to Defendant's First Set of Interrogatories, No. 2). She purchased this original formula on at least six occasions before the Clean Label Shakes were shipped to the stores. (*Id.*). The label for the original Shakes did not include the allegedly misleading statements. (Ex.1, Redford Depo., 16:9-17:5, 158:18-159:9; Ex. 2, WM_MORRIS_0000480-483). Following the reformulation, Ms. Morris continued to purchase the Clean Label Shakes, and each time she paid exactly the same amount as she paid for her prior purchases of the original Shakes. (Ex. 2, Plaintiff's Responses to Defendant's First Set of Interrogatories, No. 2; Ex. 4, Morris Depo., 50:4-18; Ex. 6, Exhibit 7 to Morris Deposition).

Faced with this evidence, Ms. Morris admitted that she would not have been damaged. (Ex. 4, Morris Depo., 37:12-19, 54:8-18). Ms. Morris's concession is consistent with Eleventh Circuit law. "To evaluate a benefit-of-the-bargain theory in this context, we must consider whether . . . the presence of [the alleged artificial flavor and sweetener] lowers the value of the [Shakes] she purchased." *Doss*, 816 F.

---

[3] Plaintiff's citations to her deposition are merely to her reaffirming the allegations in the Complaint. Plaintiff's later testimony demonstrates the Complaint's allegations are untrue.

App'x at 314. Here, the undisputed evidence is that Ms. Morris paid exactly the same amount for Shakes that admittedly contained artificial flavor and an artificial sweetener as she did for Shakes that claim to be naturally flavored and contain no synthetic sweeteners. Thus, it is clear that Ms. Morris did not pay a premium for the Clean Label Shakes.

Finally, Plaintiff's claim that her damages are statutory under the Alabama Deceptive Trade Practices Act ("ADTPA") misreads the ADTPA. Alabama Code § 8-19-10(a)(1) does provide a damages floor of $100. As a prerequisite to any private right of action, however, the ADTPA requires that the deceptive practice "causes monetary damage." ALA. CODE § 8-19-10(a). Again, Ms. Morris testified that the alleged misrepresentations did not cause her any monetary damage.

Even if Plaintiff's interpretation was correct (it is not), it would still not be sufficient to create Article III standing. The Supreme Court in *Transunion, LLC v. Ramirez*, made clear that a statutory violation (even if accompanied by statutory damages) does not create Article III standing unless the plaintiff has "been *concretely harmed* by a defendant's statutory violation." 141 S. Ct. at 2205-06 (emphasis in original). As Ms. Morris's own testimony proves, she suffered no harm (concrete or otherwise) as a result of her Shake purchases. Consequently, Ms. Morris lacks standing to pursue these claims against Walmart, and Ms. Morris's requested classes cannot be certified. *Stephens v. Walmart Stores, Inc.*, No. 0:16-CV-62723-

KMM, 2017 WL 7792569, at *4 (S.D. Fla. Oct. 23, 2017) ("For a district court to certify a class action, the named plaintiffs must have standing.").

## II.    PLAINTIFF'S PROPOSED CLASSES ARE NOT ASCERTAINABLE.

It is Plaintiff's burden to "propose an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015). "A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and the identification will be administratively feasible." *Id.* at 948.

In spite of the Eleventh Circuit's admonition, Plaintiff simply claims "Each class can be readily identified, and damages (the quantity of Pediatric Shakes and prices paid) can be determined, through Walmart's records and data." (Doc. 53 at 10). ███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████        (Ex.    7,    Ayers    Depo.,    31:20-34:8,    43:22-45:9;    Ex.    8, WM_MORRIS_0002104;    Ex.    9,    WM_MORRIS_0002106;    Exs.    10-13, WM_MORRIS_0002100-2103[4]). ██████████████████████████

████████████████████████████████████████████████████

---

[4] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████.

██████████████████████████████. (Ex. 7, Ayers Depo., 31:20-34:8, 38:6-43:21).

Plaintiff's only acknowledgement of this is in a one sentence footnote where she says that purchasers can be identified "based on self-identification such as submission of proof of purchase." (Doc. 53 at 10 n.6). Plaintiff, however, "cannot satisfy the ascertainability requirement by proposing that class members self-identify . . . without first establishing that self-identification is administratively feasible and not otherwise problematic." *Karhu*, 621 F. App'x at 948.

In *Karhu*, the Eleventh Circuit affirmed the district court's rejection of "the receipts-based method [for identification] on grounds that [the product's] low cost meant most class members would not retain their proof of purchase." *Id.* at 947. Similarly, here, it is a virtual certainty that Plaintiff's proposed class members have not retained receipts (or some other undefined proof-of-purchase) for Shakes costing less than ten dollars a pack that they purchased (and presumably consumed) nearly three-years ago.



██████████████████████. (Ex. 1, Redford Depo., 226:16-227:5). ███████████████████████████████████████████████████████. Purchasers who bought the

original version of the Shake are not a members of the class. Plaintiff provides no administratively feasible method for addressing this issue. "[A]scertainability [is] not established when 'the only evidence likely to be offered in many instances will be the putative class member's uncorroborated claim that he or she used the product.'" *Karhu*, 621 F. App'x at 948. (quoting *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D 262, 269 (S.D. Fla. 2003)). This is particularly true, here, where even Ms. Morris, in her deposition, misidentified the original Shakes' label as being the label for the Clean Label Shakes. (Ex. 4, Morris Depo., 53:1-54:7).

Finally, Plaintiff's definitions for the proposed classes are overbroad. Plaintiff proposes classes for "All persons in Alabama who on or after February 1, 2018 purchased" a Shake. The evidence, however, is clear that Walmart did not ship the Clean Label Shakes until, at the earliest, "late February" 2018. (Ex. 1, Redford Depo., 146:15-22). This means Plaintiff's proposed classes include a number of people who never purchased Shakes with the label claims at issue, and have no standing to pursue claims against Walmart.

In sum, Plaintiff has failed to carry even the most basic burden of providing a feasible method for identifying every person who purchased any version of the Shake, much less a method for identifying only those who purchased the Clean Label version. Therefore, Plaintiff's Motion is due to be denied.

### III.    PLAINTIFF IS NEITHER TYPICAL NOR ADEQUATE.

"Although the elements of typicality and adequacy trigger distinct inquiries, the typicality and adequacy analyses under Rule 23(a) tend to merge." *Luczak v. Nat'l Beverage Corp.*, No. 0:18-CV-61631-KMM, 2021 WL 3163544, at *9 (S.D. Fla. July 12, 2021). "It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class." *Prado-Steiman ex rel. Prado*, 221 F.3d at 1279; *see also Luczak*, 2021 WL 3163544, at *9 (plaintiff lacking standing is neither typical nor adequate). Typicality and adequacy are "not present if the class representatives are subject to unique defenses that could be central to the litigation." *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 668-69 (M.D. Fla. 2000).

As discussed at length above, Ms. Morris is neither typical nor adequate because she lacks standing to pursue any claims against Walmart. *See supra* § I. Further, Ms. Morris is not typical or adequate because she is subject to unique defenses that are fatal to her breach of warranty and ADTPA claims. Specifically, the ADTPA required "[a]t least 15 days prior to the filing of any action under this section, a written demand for relief, identifying [Ms. Morris] and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to [Walmart] by placing in the United States mail or

otherwise." ALA. CODE § 8-19-10(e).[5] Ms. Morris admitted that "to best of Plaintiff's

knowledge, no written demand for relief was provided to Defendant." (Ex. 14,

Plaintiff's Responses to 2nd Set of Interrogatories, No.1).[6] Plaintiff's failure to

comply with the demand requirement necessitates dismissal of her ADTPA claim.

*Meadows v. HSBC Mortgage Corp.*, 2011 WL 13134199, at *6 (N.D. Ala. Sept. 27,

2011) (dismissing ADTPA claim where plaintiffs did not "dispute that they failed to

make a written demand for relief under Alabama's DTPA before filing this action").

Likewise, in order to recover on a breach of warranty claim "The buyer must

within a reasonable time after he discovers or should have discovered any breach

**notify the seller of breach or be barred from any remedy**." *Smith v. Apple, Inc.*,

---

[5] According to the ADTPA "The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state." ALA. CODE § 8-19-10(e). Here, Plaintiff has admitted that Walmart maintained and continues to maintain a place of business and assets within Alabama. Doc. 1, ¶ 8, Doc. 33, ¶ 7 (admitting Walmart maintains "100 plus stores and multiple distribution warehouses located in this State."). The assets in the state need not be substantial (although in this case they are) to trigger the ADTPA's demand requirement. *Nelson v. Nationstar Mortg., LLC*, 504 F. Supp. 3d 1307, 1321–22 (S.D. Ala. 2020); *see also Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1400 n.9 (N.D. Ala. 1997), *aff'd sub nom. Deerman v. Fed. Home Loan Mortg.*, 140 F.3d 1043 (11th Cir. 1998) (finding "at least one mortgage" in the state sufficient assets). Moreover, "plaintiff [not defendant] has the burden of proving compliance," with the demand requirement. *Sheehan v. Bowden*, 572 So. 2d 1211, 1213 (Ala. 1990).

[6] The heading of these interrogatory responses incorrectly refers to these responses as "Responses to Defendant's First Set of Interrogatories." The body of the responses, however, correctly refers to them as responses to the "Second Set of Interrogatories."

No. CIV.A.08-AR-1498-S, 2009 WL 3958096, at *1 (N.D. Ala. Nov. 4, 2009) (emphasis in original) (quoting ALA. CODE § 7-2-607(3)(a)). "There is no distinction between implied warranties and express warranties insofar as this precondition is concerned . . . notice is critical to stating a claim for breach of warranty under Alabama law." *Id.* "[T]he filing of a lawsuit itself constitutes sufficient notice only if personal injuries are involved." *Id.* Additionally, "[p]rior to the filing of an action for breach of warranty under Magnuson Moss, a defendant must be given a reasonable opportunity to cure any failure to comply with its warranty obligations." *Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, No. 8:09CV607-T-27MAP, 2010 WL 1223126, at *5 (M.D. Fla. Mar. 25, 2010); *see also* 15 U.S.C. § 2310(e).

While Ms. Morris originally alleged she suffered "serious personal injuries" and that she provided notice, her subsequent deposition testimony proves those allegations were untrue. (Ex. 4, Morris Depo., 19:12-22). In fact, Ms. Morris never even drank the Shakes. (*Id.*) Ms. Morris further testified that she did not complain to Walmart or give anybody at Walmart written notice of the claims. (*Id.* at 43:7-13). Given Ms. Morris's failure to satisfy this "condition precedent" to her breach of warranty claims, her breach of express, implied, and Magnuson Moss warranty claims are due to be dismissed as well.

Finally, Ms. Morris is not typical or adequate because she did not "'suffer the same injury as the class members.'" *Prado-Steiman ex rel. Prado*, 221 F.3d at 1279

(quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). "Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Blum v. Yaretsky,* 457 U.S. 991, 999 (1982). The Second Amended Complaint alleges the Walmart "concealed that the use of the Shakes posed a significant risk of allergic reaction, and other Injuries," and the Shakes "caused serious personal injuries in many consumers including the Plaintiff and numerous putative Class Members[.]" (Doc. 42, ¶ 150 (e)-(f)). Ms. Morris, however, admitted in her deposition that, not only did she not suffer any injury, she never drank the Shakes. (Ex. 4, Morris Depo., 19:18-22). Given Ms. Morris's lack of physical injury she cannot represent those members of the class who may have suffered a physical injury. *Shepherd v. Vintage Pharms., LLC*, 310 F.R.D. 691, 698 (N.D. Ga. 2015) (finding class representatives who suffered one type of injury not typical of the putative class because they did not suffer the same type of injury as the proposed class).[7]

Ms. Morris's inability to overcome these unique defenses which could not be more central to the litigation mandates not only the dismissal of the sole claims for

---

[7] Even had Ms. Morris suffered any personal injury, her claims would not be suitable for class certification as individual issues regarding damages would predominate. *Shepherd v. Vintage Pharms., LLC*, 310 F.R.D. 691, 701 (N.D. Ga. 2015).

which she seeks certification, but also the conclusion that Ms. Morris is certainly not typical or adequate.

## IV.    INDIVIDUAL ISSUES PREDOMINATE OVER ANY COMMON ISSUES THAT MAY EXIST.

"If common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class should not have a substantial effect on the substance or quantity of evidence offered." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009). "The Supreme Court made clear in both *Comcast* and *Wal-Mart* that the linchpin to certification is assuring that determination of whether defendant's conduct caused injury to each class member can be made classwide and without resort to individualized assessments of each class member's circumstances." *Predominance of common questions of law or fact*, 1 MCLAUGHLIN ON CLASS ACTIONS § 5:23 (18th ed.). In order to satisfy the predominance requirement, "'plaintiffs must also show that they can prove, through common evidence, that all class members were in fact injured by the alleged [misconduct].'" *In re Photochromic Lens Antitrust Litig.*, No. 8:10-CV-00984-T-27EA, 2014 WL 1338605, at *19 (M.D. Fla. Apr. 3, 2014) (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.—MDL No. 1869,* 725 F.3d 244, 252 (D.C. Cir. 2013)). "Common questions of fact cannot predominate where there exists no reliable means of proving classwide injury in fact. When a case turns on

individualized proof of injury, separate trials are in order." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d at 252-53.

Here, both of Plaintiff's proposed classes will require an individual determination of injury. For example, just like Ms. Morris who first purchased the original version of the Shakes, the uncontroverted evidence demonstrates approximately thirty percent of the proposed class first purchased the Shakes prior to the reformulation that led to the Clean Label Shakes. (Ex. 5, Butler Report, p. 21). For those putative class members who first purchased the original Shakes, they only suffered injury if they subsequently purchased the Clean Label Shakes at a higher price. If, like Ms. Morris, an individual first purchased the Shakes prior to 2018, and continued purchasing the Clean Label Shakes for the same price, then that purchaser suffered no injury.

The uncontroverted evidence also indicates that about seventy percent of each of the proposed classes purchased the Shakes for reasons other than the allegedly false claim. (*Id.* at ¶¶ 48, 56). If an individual purchased the Clean Label Shakes for reasons other than the allegedly misleading claims on the label, they did not suffer an injury. If a purchaser (like Ms. Morris) would have purchased the Shakes for the same price regardless of the allegedly false statements, that individual was not injured. The uncontroverted evidence indicates the vast majority of purchasers did not buy the Shakes because of the allegedly false label claims. (Ex. 5, Butler Report,

¶¶ 48, 56). Ms. Butler concluded that consumers "purchase the product(s) for a range of reasons, and the majority do not purchase the Shakes because of the allegedly false and misleading statements." (*Id.* at ¶ 64). She further found, "these data demonstrate that whether the at-issue statement had an impact on a purchase varies not only across consumers, but also within a consumer's purchases." (*Id.*).  Thus, neither of these issues can be decided on a class-wide basis.

For each member of the class, the Court will be required to determine when that member first purchased the Shakes, why that member purchased the Shakes, and whether that member would have paid the same amount for the Shakes without the allegedly false claims. The answers to each of the questions is necessary before it can be determined whether a given purchaser of the Shakes was in fact injured, and Ms. Butler's survey demonstrates the answers will vary widely between members of Plaintiff's proposed classes. "This case is different from one where liability can be shown as to all class members, with only the amount of damage to be determined as to each." *Shumate & Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 509 F.2d 147, 155 (5th Cir. 1975).

Moreover, none of these questions can be answered simply by referring to purchase records. As discussed above, ███████████████████████ ██████████████████████████████. ████████████████████████ ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ As a result, for each member of the proposed

classes a mini-trial would be required allowing Walmart to probe when the members

first began purchasing the Shakes, which version of the Shakes they purchased, the

reasons they purchased the Shakes, and what they were willing to pay for the Shakes

without the allegedly misleading label claims. Even Ms. Morris agreed it would be

necessary to speak to each member of the putative class to determine why they

purchased the Shake, and whether they would have purchased the Shakes without

the label claims. (Ex. 4, Morris Depo., 38:7-39:10). "When [as here] a case turns on

individualized proof of injury, separate trials are in order." *In re Rail Freight Fuel

Surcharge Antitrust Litig.*, 725 F.3d at 253.

In addition to requiring individual proof of injury, Plaintiff has provided no

model for calculating class-wide damages. "'[I]n order to certify a class, the damages

methodology must be 'sound' and must 'produce commonality of damages'" *In re

Acuity Brands, Inc. Sec. Litig.*, No. 1:18-CV-2140-MHC, 2020 WL 5088092, at *6

(N.D. Ga. Aug. 25, 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 37

(2013)). Plaintiff, however, has provided no model at all, much less a sound one.

Thus, should the Court determine a given individual has suffered an injury-in-fact,

it will then need to resolve individual issues regarding the amount of damages that may have been suffered.

All of these individual issues will predominate over any common questions Plaintiff may be able to present. Plaintiff claims to present ten common questions. (Doc. 53 at 15-16). The first seven of Plaintiff's purported common questions, however, are just a rewording of the same question (*i.e.,* whether the label claims are true or false). The last three questions are:

> (h)    Whether the Plaintiff and putative Class Members have suffered an ascertainable loss as a result of Walmart's acts, omissions or misrepresentations of material facts;

> (i)    Whether the Plaintiff and putative Class Members are entitled to monetary damages and, if so, the amount of such relief; and

> (j)    Whether the Plaintiff and putative Class Members are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

These, however, are not common questions. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350 (emphasis in original) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). None of these questions generates "common answers." As discussed above, determining whether each individual class member suffered "an ascertainable loss" or is "entitled to monetary

damages" requires significant individual inquiries. Likewise, as discussed below, the questions on entitlement to "injunctive relief" are not common given Ms. Morris now knows the alleged falsity of the label claims and is not at risk of future harm.

In sum, Plaintiff only identifies a single common question—the truth or falsity of the label claims—but resolution of this single issue still requires significant factual findings for each individual class member before liability is established. The addition of each class member will have a "substantial effect on the substance or quantity of evidence offered." As a result, common issues will not predominate, and Plaintiff's attempt to certify the proposed class is due to be denied.

## V. PLAINTIFF LACKS STANDING TO PURSUE A 23(B)(2) INJUNCTIVE CLASS BECAUSE SHE IS ALREADY AWARE OF THE ALLEGEDLY FALSE STATEMENTS.

"To proceed on behalf of the Injunctive Classes named Plaintiffs must possess Article III standing." *Wasser v. All Mkt., Inc.*, 329 F.R.D. 464, 469 (S.D. Fla. 2018). "The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1284 (11th Cir. 2001)). A plaintiff "'cannot manufacture standing by choosing' not to purchase a product because of allegedly deceptive labeling, when the [plaintiff] actually know[s] the truth underlying that labeling and

thus cannot be deceived by it in the future." *Wasser*, 329 F.R.D. at 471 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013)).

Here, Ms. Morris specifically alleges "as soon as [Plaintiff] found out about Walmart's misrepresentations, she stopped purchasing the Shakes." (Doc. 42, ¶ 76). Notably, Ms. Morris does not allege she has an intention to buy the Shakes again in the future. But even if she did intend to buy the Shakes in the future, she is not at risk of future harm because she already knows of the alleged falsity of the label claims. Any possible "future injury" will therefore be "self-inflicted" and will not give rise to standing to pursue class-wide injunctive relief. *Wasser*, 329 F.R.D. 470-71. "[A] Rule 23(b)(2) class cannot be certified when injunctive relief is sought by past purchasers." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020). As a result, Ms. Morris, as a past purchaser of the Shakes, lacks standing to pursue a Rule 23(b)(2) class.

## CONCLUSION

Plaintiff's Motion is due to be denied because she lacks standing to pursue any of the alleged claims as her own testimony proves she suffered no injury-in-fact. Even assuming Plaintiff could prove standing, the classes still should not be certified as Plaintiff has failed to explain how the proposed classes can be ascertained. Plaintiff's Motion also fails as she is neither adequate nor typical since her breach of warranty and ADTPA claims are due to be dismissed because she failed to provide

Walmart the required pre-suit notice. Finally, Plaintiff's Motion fails because individual issues will predominate, as there is no common proof of injury. For each of these independent reasons, Plaintiff's Motion for Class Certification is due to be denied.

Respectfully Submitted,

*s/ Cole R. Gresham*
Cole R. Gresham (ASB-8993-L47G)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama  35209
(205) 868-6000 Phone
(205) 868-6099 Facsimile
*cgresham@starneslaw.com*

*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

W. Lewis Garrison, Jr.
Taylor C. Bartlett
Heninger Garrison Davis, LLC
2224 First Ave North
Birmingham, AL 35203
lewis@hgdlawfirm.com
taylor@hgdlawfirm.com

J. Stuart McAtee
Alexander Shunnarah
Personal Injury Attorneys
3626 Clairmont Ave South
Birmingham, AL 35222
smcatee@asilpc.com

Taylor A. Pruett
Schreiber Law Firm, P.C.
2129 First Ave North
Birmingham, AL 35203
taylor@schreiber.law

*s/ Cole R. Gresham*
Cole R. Gresham