## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KAYLAN MORRIS, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:19-cv-650-GMB |
| WALMART INC., | ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiff Kaylan Morris' Motion for Class Certification (Doc. 49), which she filed along with a brief and evidence in support. Doc. 53. Defendant Walmart, Inc. submitted a brief and evidence in opposition to the motion (Docs. 58 & 59), and Morris filed a reply and additional evidence supporting class certification. Doc. 61. The court held an evidentiary hearing on the motion (Doc. 76), and the parties have supplemented the evidentiary record at the court's direction. Docs. 80–87. After careful consideration of the parties' submissions and the applicable law, and for the reasons to follow, the court concludes that the motion for class certification is due to be denied.

## I. BACKGROUND

The court begins with a short recitation of the relevant facts. In assessing a class certification motion under Federal Rule of Civil Procedure 23, the court

resolves any factual disputes by a preponderance of the evidence standard of proof. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 50–51 (2011); *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 320 (3d Cir. 2008); *Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 41 (2d Cir. 2006).

## A.    The Pediatric Shakes

In 2014, Walmart began selling Parent's Choice Pediatric Shakes (the "original shakes") online and through its retail stores across the country. Doc. 59-2 at 5.  Walmart offered the original shakes in chocolate, vanilla, and other flavors, and their ingredients included artificial sweeteners and artificial coloring. Doc. 59-2 at 3, 5.  The labels for the original shakes did not display any of the contested language described below. Doc. 59-2 at 5; Doc. 59-3 at 1–2, 4.

Walmart began reformulating the shakes in 2017 with the goal of removing all artificial colors and sweeteners. Doc. 59-2 at 5.  The labels on the new chocolate and vanilla Pediatric Shakes (the "Clean Label Shakes") promised "No Synthetic Color, Flavor or Sweetener." Doc. 53-4 at 2.  The label on the new vanilla shakes also claimed they were "Naturally Flavored." Doc. 53-4 at 2.  Morris contends that the Clean Label Shakes are not sold as advertised and do not conform with their labelling because they contain Maltodextrin. Doc. 42 at 1–2, 4–9, 11–13.  Morris also alleges that the Clean Label Vanilla Shake is not "Naturally Flavored" because it does not include vanilla, vanilla beans, vanilla extract, or any other natural flavor

ingredient derived from vanilla. Doc. 42 at 1–2, 4–5, 9–11.  Walmart denies these allegations. *See generally* Doc. 43.

Walmart's supplier began shipping the Clean Label Shakes to Walmart stores during the week of February 26, 2018. Doc. 84 at 6; *see also* Doc. 59-2 at 38, 39. Walmart did not purge its existing shake inventory just because the new shakes began shipping, so for an unknown amount of time it sold both the original shakes and the Clean Label Shakes. Doc. 59-2 at 39.  Then, at some point—the evidence does not establish the exact date—the original shakes were no longer available to customers and Walmart sold only the Clean Label Shakes. *See* Doc. 76 at 142–43. Walmart continues to sell the Clean Label Shakes.

**B.    Morris**

Morris is the only named plaintiff and putative class representative. Doc. 42. She first purchased the original shakes on December 30, 2017, and made eight other purchases before the Clean Label Shakes began shipping to Walmart stores. Doc. 59-4 at 1–2; Doc. 59-5 at 14.  After the Clean Label Shakes shipped, Morris made 20 additional purchases of the vanilla and chocolate shakes beginning on March 4, 2018, and ending on October 19, 2018. Doc. 59-4 at 2.  Some of these were the Clean Label Shakes. *See* Doc. 59-5 at 8 ("Well, when I purchased these, my intentions of purchasing these was because [my child] was literally not eating anything at the time, so I purchased these thinking, 'Okay, well, he's going to get

everything he needs from these, and they're healthy; they say, you know, no artificial sweeteners and things like this, so this will be good for him.'"). Morris testified that she would not have purchased the Clean Label Shakes if she had known about the misrepresentations on their labels. Doc. 59-5 at 11.

The purchase price remained the same for all of the shakes Morris purchased. Doc. 59-7. Later, when Walmart's supplier increased the price of the Clean Label Shakes, Walmart upped the retail price. Doc. 87 at 36. The first retail price increase occurred on February 2, 2019, and there have been a number of price increases since then. Doc. 87 at 17, 32, 42.

## C.   The Claims and Proposed Class Definitions

The Second Amended Complaint asserts five causes of action against Walmart: (1) unjust enrichment; (2) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.; (3) breach of express warranty; (4) breach of implied warranty; and (5) violation of the Alabama Deceptive Trade Practices Act ("ADTPA"). Doc. 42 at 2, 22–35. Morris states the first, third, and fourth claims on behalf of both a nationwide and statewide class, the second claim on behalf of only a nationwide class, and the final claim on behalf of only a statewide class. Doc. 42 at 22–35.

Morris seeks certification of two Alabama classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3):

(1)  The Alabama Chocolate Parent's Choice Pediatric Shake Class—
All persons in Alabama who on or after February 1, 2018 purchased a
Clean Label Chocolate Parent's Choice Pediatric Shake.

(2)  The Alabama Vanilla Parent's Choice Pediatric Shake Class—
All persons in Alabama who on or after February 1, 2018 purchased a
Clean Label Vanilla Parent's Choice Pediatric Shake.[1]

Doc. 53-1 at 9.

Morris has not moved for class certification as to her unjust enrichment claims. Doc. 53-1 at 6 n.2.  And although she ostensibly moves for certification of the other four claims on behalf of Alabama classes (Doc. 53-1 at 6 n.2), Morris did not allege an Alabama class for her Magnuson-Moss claim. Doc. 42 at 24.  Instead, the Second Amended Complaint explicitly brings the Magnuson-Moss claim only "on behalf of the Nationwide Class." Doc. 42 at 24.   The claims for unjust enrichment, breach of express warranty, and breach of implied warranty, on the other hand, are "on behalf of the Nationwide Class and State Class." Doc. 42 at 22, 28, 30. Because Morris has not moved for certification of a nationwide class on any claim, the court does not consider her Magnuson-Moss claim in deciding the motion for

---

[1] Excluded from all putative classes are:
    (a) any person who purchased a Pediatric Shake for resale and not for personal or household use;
    (b) any officers, directors or employees, or immediate family members of the officers, directors or employees, of Walmart or any entity in which a Walmart has a controlling interest;
    (c) any legal counsel or employee of legal counsel for Walmart; and the presiding Judge in the Lawsuit, as well as the Judge's staff and their immediate family members.
Doc. 53-1 at 9.

certification of the statewide classes.

## II.  DISCUSSION

A district court has broad discretion in deciding whether to certify a class action under Rule 23. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).  "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation marks omitted). The class representative then must satisfy the four Rule 23(a) prerequisites by showing that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Sellers v. Rushmore Loan Mgmt. Servs*., LLC, 941 F.3d 1031, 1039 (11th Cir. 2019).  These requirements commonly are described as "'the prerequisites of numerosity, commonality, typicality, and adequacy of representation,' and they are designed to limit class claims to those 'fairly encompassed' by the named plaintiffs' individual claims." *Piazza v. Ebsco Indus., Inc*., 273 F.3d 1341, 1346 (11th Cir. 2001) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982)).

After satisfying the Rule 23(a) requirements, the party seeking certification must establish that the putative class fits within one of the Rule 23(b) categories. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Here, Morris invokes 23(b)(2) and 23(b)(3). Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(3), certification is appropriate if the "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Because Morris is the party seeking class certification, she bears the burden of showing by a preponderance of the evidence that the proposed class meets the Rule 23 standard. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). While the class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (internal quotation marks and citations omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites

for class certification are satisfied." *Id.* (citation omitted). Applying a preponderance of the evidence standard of proof, the court must resolve any factual disputes relevant to the Rule 23 requirements even if this bleeds over into overlapping merits questions. *See Dukes*, 564 U.S. at 350–51; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 320; *Miles*, 471 F.3d at 41.

Walmart makes five core arguments in opposition to the motion for class certification. First, Walmart argues that Morris lacks standing because she did not suffer an injury in fact. Doc. 59 at 12–16. Walmart next contends that the proposed classes are not ascertainable. Doc. 59 at 16–18. Third, Walmart argues that Morris' claims and defenses are not typical and she is not an adequate class representative. Doc. 59 at 19–23. Fourth, Walmart claims that individual issues predominate over common issues. Doc. 59 at 23–28. Finally, Walmart argues that Morris cannot represent a class for injunctive relief because she is aware of the allegedly false statements. Doc. 59 at 28–29. For the reasons to follow, the court finds that Morris has standing except as to her claim for injunctive relief and that the putative classes are ascertainable. The court does not reach the predominance analysis because Morris does not meet the Rule 23(a) standard for typicality and adequacy by virtue of her failure to provide pre-suit notice of her claims to Walmart.

## A.    Standing

The court first must determine whether Morris has Article III standing to raise

each class claim. *Wolf Prado–Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing."). Indeed, "[o]nly after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin*, 823 F.2d at 1482.

To have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury in fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (quotation omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id*. (quotation omitted). And for the injury to be "concrete," it must be "real" and not "abstract," but it need not be "tangible." *Id*. at 1548–49. "In many cases, the question of whether the plaintiff 'has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief.'" *Debernardis v. IQ Forms., LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)). "Yet we must 'not . . . conflate Article III's requirement of injury in fact with a plaintiff's

potential causes of action, for the concepts are not coextensive.'" *Id*.

Walmart claims that Morris does not have standing because she cannot establish an injury in fact. First, it contends that merely purchasing the Clean Label Shakes is insufficient, in and of itself, to create standing. Doc. 59 at 13 (citing *Doss v. Gen. Mills, Inc*., 816 F. App'x 312, 313–14 (11th Cir. 2020)). But Morris' allegation is not merely that she purchased the shakes. Instead, Morris alleges she purchased shakes that Walmart advertised as containing "No Synthetic Color, Flavor or Sweetener" or as "Naturally Flavored," but the shakes did not conform with their labelling. In other words, Morris alleges she bought products that promised to be one thing but ended up being something different. And she testified she would not have bought them if she had known what she was getting. This confers standing. *See Reynold v. Wal-Mart Stores, Inc.*, 2015 WL 1879615, at *2 (N.D. Fla. April 23, 2015) (finding that plaintiffs "can meet the injury-in-fact requirement with a showing that by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so").

Second, Walmart contends that Morris was not injured because she paid the same price for the original shakes and Clean Label Shakes. Doc. 59 at 14. The court disagrees. Morris experienced a concrete injury because she incurred an economic loss when she purchased the Clean Label Shakes. Economic loss is the epitome of

a concrete injury, *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019), and a plaintiff experiences an economic loss when the defendant's conduct deprives her of the benefit of her bargain. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986–87 (11th Cir. 2016). Under a benefit-of-the-bargain theory, a plaintiff's damages are the difference in value between the products in the condition in which they were delivered and their value if they had conformed to the parties' contract. *Debernardis*, 942 F.3d at 1084; *see also In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) (holding that the parents of children who did not swallow toys containing an adulterated adhesive had standing to sue because they paid more for the toys than they would have paid if they had known the latent risk of the toys).

Here, Morris alleges that the products she received were not what Walmart promised because all of the Clean Label Shakes contain synthetic color, flavor, or sweetener and the Clean Label Vanilla Shakes are not naturally flavored. Through this lens, Morris' standing does not depend on the pricing of the shakes. Morris contends she did not get the benefit of her bargain because she received a product that fell short of Walmart's promises. Morris' decision to buy the original shakes at the same price may affect her credibility, but the preponderance of the evidence establishes she suffered an economic loss because she received a different product than the one she thought she was buying. This reasoning applies equally to

Walmart's argument that Morris does not have standing under ADTPA because she did not suffer "monetary damage." Doc. 59 at 15 (citing Ala. Code § 8-19-10(a)).

Relying on *Transunion, LLC v. Ramirez*, 141 S. Ct. 2190, 2205–06 (2001), Walmart next contends that Morris does not have standing under ADTPA because she was not "concretely harmed by [Walmart's] statutory violation." Doc. 59 at 15. The court disagrees. Morris has been concretely harmed by Walmart's alleged violation of ADTPA, as explained above, and *Transunion* is distinguishable from the case at hand.

The plaintiffs in *Transunion* were a class of individuals whose credit reports contained a false notice that they were potential threats to national security. They sued Transunion, a credit reporting agency, under the Fair Credit Reporting Act. The Supreme Court divided the class members into two subgroups depending on whether Transunion disseminated the misleading alert about them to a third party or simply flagged their files in its internal system. *Id*. at 2208–13. The Court then examined whether each subgroup suffered an injury bearing a close relationship to a traditionally recognized harm. *Id*. The Court held that those whose credit reports had been published had standing to sue because the harm flowing from the publication of a credit report with misleading information is analogous to the reputational harm associated with common law defamation. *Id*. On the other hand, the Court rejected the analogy to defamation for those plaintiffs whose credit reports

12

had not been disseminated. *Id.* at 2209–13. Just as publication is essential to a defamation claim, the Court held that "the mere presence of an inaccuracy in an internal credit file, if not disclosed to a third party, causes no concrete harm." *Id.* at 2210. These plaintiffs therefore could not prove standing.

The Supreme Court emphasized that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.* at 2205. "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* In other words, "under Article III, an injury in law is not an injury in fact." *Id.* "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.*; *see also Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Unlike the group of *Transunion* plaintiffs who were merely flagged in an internal filing system, Morris is not complaining just that misleading labels exist; she is complaining that Walmart took her money but did not deliver the product it promised. She claims Walmart advertised shakes without synthetic color, flavor, or

sweetener and vanilla shakes that were naturally flavored, but she received a different product. These allegations historically were cognizable as a cause of action for breach of warranty. *See, e.g.*, *McCaa v. Elam Drug Co.*, 114 Ala. 74, 82–83 (1897) (recognizing warranty claims for purchasers of goods that "do not correspond with those agreed to be furnished"). *Transunion* does not hold otherwise. Morris has shown a concrete harm under ADTPA.

Injunctive relief is a different animal. A plaintiff "must demonstrate standing for each claim and for each form of relief that is sought." *JW ex rel. Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (quotation marks omitted) (quoting *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)). "A party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Id.* (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)). "Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (quotation marks and citation omitted).

Morris does not have standing to seek injunctive relief in this action because she has not shown that she will purchase the shakes in the future even if Walmart properly markets them. Morris thus has not established a real and immediate threat

of future injury so as to confer standing for injunctive relief in the Eleventh Circuit. *See, e.g.*, *Marty v. Anheuser-Busch Cos.*, LLC, 43 F. Supp. 3d 1333, 1336, 1353–54 (S.D. Fla. 2014) ("Because there are no allegations in the Amended Complaint that the plaintiffs would purchase [the allegedly mislabeled product] in the future . . . plaintiffs have failed to plead 'a real and immediate threat of future injury[ ]' . . . and thus have failed to plead standing to seek injunctive relief.") (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).  Morris relies on a Ninth Circuit opinion holding "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018).  But Morris does not offer any authority, and the court has not found any, suggesting Eleventh Circuit precedent supports this proposition. *See, e.g.*, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) ("[A] plaintiff seeking injunctive relief must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.") (quotation marks and citation omitted).  For these reasons, the court finds that Morris does not have standing to pursue injunctive relief in this action.

## B.    Class Certification

### 1.    *Ascertainability*

Ascertainability is an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021).  "Class representatives bear the burden of establishing that their proposed class is adequately defined and clearly ascertainable, and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Id.* The Eleventh Circuit traditionally collapses class definition and ascertainability into one inquiry: "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304.  And "membership can be capable of determination without being capable of convenient determination." *Id.* at 1303 (emphasis omitted).  On the other hand, a class is inadequately defined when its definition relies on vague or subjective criteria. *Id.* at 1301.  When a proposed class lacks an adequate definition, the district court cannot ascertain class membership. *Id.* at 1302.  Despite Walmart's argument to the contrary,[2] the Eleventh

---

[2] Walmart relies on the unpublished Eleventh Circuit opinion of *Karhu v. Vital Pharma., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015), for the proposition that Morris must establish that the identification of class members is administratively feasible. Doc. 59 at 17–18.  But the Eleventh Circuit recently rejected *Karhu*'s holding that a putative class representation must explain exactly how the class members can be identified in a convenient manner. *Cherry*, 986 F.3d at 1304–05. The court therefore will not address Walmart's administrative feasibility arguments in determining ascertainability.  Administrative feasibility would be relevant to the court's assessment of the manageability criterion of Rule 23(b)(3)(D) if Morris had met the requirements of Rule 23(a)(3) and (a)(4).

Circuit standard does not require "administrative feasibility." *Id*. at 1304.

Morris' proposed classes are adequately defined such that their membership is capable of determination. The proposed definitions cover all purchasers of the chocolate and vanilla Clean Label Shakes in Alabama since February 1, 2018. These definitions are not vague and they turn on objective, verifiable criteria. The allegation that there was an earlier version of the shakes that were not deceptively advertised does not change the ascertainability analysis. This fact may complicate the identification of class members and even necessitate some self-identification, but it does not make identification impossible. Thus, the classes are ascertainable under *Cherry*.

Although ascertainable, the proposed class definitions are overbroad. Morris proposes that both classes include purchases beginning on February 1, 2018. The evidence establishes, however, that Walmart's supplier did not begin to ship the Clean Label Shakes until the week of February 26, 2018.[3] Doc. 84 at 6; *see also* Doc. 59-2 at 38, 39. The court thus finds that the class definitions under consideration must be limited to those persons who purchased a Clean Label Shake

---

[3] Morris argues that her online receipts for purchases even before February 1 depict the Clean Label Shakes, and thus does not concede that the new formula began to ship after February 26. Doc. 61 at 10 n.4; *see also* Doc. 59-7. The court finds the supplier's contemporaneous communication about the shipping schedule to be more convincing than these images.

in Alabama on or after February 26, 2018.[4]

### 2.    *Rule 23(a) Requirements*

#### a.    **Numerosity and Commonality**

Under Rule 23(a)(1), Morris must show the putative class members are so numerous that joinder is impracticable. Walmart does not challenge numerosity (Doc. 76 at 144) and the class members are estimated to number in the thousands, so the proposed class meets the numerosity requirement. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (holding the numerosity requirement is "a generally low hurdle" and "more than forty [is] adequate").

Under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality means the plaintiff and the class members "'have suffered the same injury.'" *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). These claims must depend on a common contention, the "truth or falsity [of which] will

---

[4] Morris' class definition of "[a]ll persons in Alabama who . . . purchased" the Clean Label Shakes leaves open two reasonable interpretations; the class includes either all Alabama residents who purchased the shakes from any Walmart, or all purchasers from Alabama Walmart stores regardless of the purchaser's state of residence. The parties have not addressed this ambiguity in briefing, but the evidence before the court suggests they have been operating under the assumption that all purchases from Alabama Walmart stores are within the scope of the putative class claims. *See* Doc. 53-7 (depicting sales at Alabama stores). This interpretation better aligns with choice-of-law principles. *See, e.g.*, *Morris v. SSE, Inc.*, 912 F.2d 1392, 1396 (11th Cir. 1990) (noting Alabama law governs claims sounding in contract if the purchase was made in Alabama); *Hughes Assocs., Inc. v. Printed Cir. Corp.*, 631 F. Supp. 851, 854 (N.D. Ala. 1986) (same). For these reasons, the court interprets the putative classes to include all purchasers of the Clean Label Shakes from Walmart stores in Alabama during the class period.

resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. The Supreme Court has found that even a single common question of law or fact is sufficient. *Id*. at 359. Walmart does not challenge the commonality requirement and admits for purposes of Rule 23(a) that "there is a common question as to the truth or falsity" of the contested statements on the labels. *See* Doc. 76 at 144–45. The court agrees.

### b.   Typicality and Adequacy

The "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class" under Rule 23(a)(3). This "typicality requirement is permissive; representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citing *Brown v. SCI Funeral Servs. of Fla., Inc*., 212 F.R.D. 602, 605 (S.D. Fla. 2003)). While commonality looks at how the class members' claims overlap, typicality asks whether the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the class claims. *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984). "Like commonality, the test for typicality is not demanding." *In re Checking Account Overdraft Litig*., 286 F.R.D. at 653 (citation omitted).

Similarly, Rule 23(a)(4) asks whether "representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The adequacy requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1323 (11th Cir. 2008) (citation omitted). Although "the elements of typicality and adequacy trigger distinct inquiries, the typicality and adequacy analyses under Rule 23(a) tend to merge." *Luczak v. Nat'l Bev. Corp*., 548 F. Supp. 3d 1256 (S.D. Fla. 2021) (citation omitted).

Walmart contends that Morris fails the typicality and adequacy tests for two reasons.[5] First, Walmart argues Morris lacks standing to sue. This argument in unavailing for the reasons stated above. Second, Walmart argues Morris "is subject to unique defenses that are fatal to her breach of warranty and ADTPA claims." Doc. 59 at 19. Specifically, Walmart contends that Morris did not give pre-suit notice under ADTPA, *see* Ala. Code § 8-19-10(e), and Alabama law, *see* Ala. Code § 7-2-607(3)(a). Doc. 59 at 19–21.

---

[5] Walmart also argues "Morris is not typical or adequate because she did not suffer the same injury as the class members." Doc. 59 at 21–22 (citation and quotation marks omitted). This argument is off-base. As the court explained above, Morris has shown that all of the class members suffered the same alleged injury when they purchased the Clean Label Shakes.

On its face, ADTPA provides that, "[a]t least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the United States mail or otherwise." Ala. Code § 8-19-10(e).  Similarly, to recover on a breach of warranty claim under Alabama law, a buyer must provide notice to the seller before suit. Ala. Code § 7–2–607(3)(a).  Notice is a condition precedent to any claim for breach of warranty, *Consol. Pipe & Supply Co., Inc. v. Stockham Valves & Fittings, Inc.*, 365 So. 2d 968 (Ala. 1978), and there is "no distinction between implied warranties and express warranties insofar as this precondition is concerned." *Selby v. Goodman Mfg. Co., LP*, 2014 WL 2740317, at \*3 (N.D. Ala. June 17, 2014) (internal quotation marks and citation omitted).

Morris admits she did not furnish written pre-suit notice to Walmart and that this failure ordinarily would be fatal to her claims under ADTPA[6] or for breach of express and implied warranties.  But Morris maintains that (1) Walmart is precluded

---

[6] Courts applying § 8-19-10(e) routinely dismiss ADTPA claims when a plaintiff neglects to make a pre-suit demand. *See, e.g.*, *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1400 (N.D. Ala. 1997) ("The Deermans' failure to reasonably describe the unfair or deceptive practice in a timely letter is fatal to their claim under the Alabama law."); *Givens v. Rent-A-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988) (dismissing an ADTPA claim because a letter from the plaintiff's counsel did "not serve as a sufficient demand for relief as set out by § 8-19-10(e), in that it fail[ed] to reasonably describe the unfair or deceptive trade practice, or the injury suffered"); *Meadows v. HSBC Mortgage Corp.*, 2011 WL 13134199, \*6 (N.D. Ala. Sept. 27, 2011) (dismissing an ADTPA claim where the plaintiffs did not "dispute that they failed to make a written demand for relief under Alabama's DTPA before filing this action").

from asserting this defense at this stage in the litigation under Federal Rule of Civil Procedure 12(b); (2) she did not have to provide notice because Walmart does not maintain a place of business or keep assets in Alabama; and (3) "any issue with Morris' adequacy or typical[ity] with respect to the classes' breach of warranty claim could be resolved through substitution of class representatives." Doc. 61 at 11.

First, Walmart is not precluded from raising this defense under Rule 12(b). The Second Amended Complaint alleges that "Walmart was placed on reasonable notice of the defect in the Shakes and [its] breach of warranty, and [has] failed to cure the defects for the Plaintiff and putative Class Members, despite having reasonable time to do so." Doc. 42 at 27. Walmart denied this allegation and raised pre-suit notice as a defense in its Answer to the Second Amended Complaint. Doc. 43 at 35, 47. Because the complaint alleged notice, Walmart could not test that defense with a Rule 12(b) motion. To disprove the allegation in the complaint, Walmart needed Morris' interrogatory response admitting that "to the best of Plaintiff's knowledge, no written demand for relief was provided to Defendant." Doc. 58-5 at 3.

Second, the record evidence forecloses the statutory exception to ADTPA's notice requirement.[7] By the terms of the statute, "[t]he demand requirements of this

---

[7] Morris does not claim that there is a parallel exception to pre-suit notice for her express and implied warranty claims.

subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state." Ala. Code § 8-19-10(e). Morris contends that Walmart does not maintain a place of business or keep assets in Alabama, and in support she offers Walmart's response to her interrogatory asking it to "[s]tate all facts in support or refuting . . . that [Walmart] maintained a place of business or kept assets within the state of Alabama in April 2019." Doc. 61 at 12; Doc. 61-3 at 3. Walmart objected to this request as "irrelevant to the claims and/or defenses at issue in the litigation" and as "overly broad and unduly burdensome and the burden of the proposed discovery outweighs its likely benefit." Doc. 61-3 at 3.

Walmart's objection does not equate to an admission that it maintains no place of business or assets in Alabama. And while Walmart was wrong that the interrogatory sought information irrelevant to its defenses, Morris did not move for an order compelling Walmart to answer the interrogatory. More importantly, there is ample evidence in the record establishing Walmart operates stores and keeps assets in Alabama. For example, the parties filed a spreadsheet reflecting thousands of chocolate and vanilla shake sales at Alabama Walmart stores beginning in July 2017. *See* Doc. 53-7; Doc. 59-2 at 29. The court also takes judicial notice that Walmart currently operates more than one hundred stores within Alabama.[8] *See*

_____

[8] Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by competent evidence. Fed. R. Evid. 201(a) &

https://www.walmart.com/store/directory/al (reflecting 131 stores in Alabama) (last visited Mar. 23, 2022).  In the face of this evidence, Morris cannot avail herself of ADTPA's exception to pre-suit notice even if Walmart wrongfully refused to answer an interrogatory targeting this information.

Finally, Morris suggests as a fallback position that the court should allow for the substitution of a new class representative. Doc. 61 at 8–9.  But Morris has not moved for substitution.  The court has no information on any potential substitute plaintiffs, and it would be premature to speculate about their suitability as class representatives.

Morris therefore is subject to the unique defense of lack of pre-suit notice, preventing the court from finding under Rules 23(a)(3) and (a)(4) that her claims and defenses are typical of the class she seeks to represent or that she would adequately represent that class before this court.

---

(b); *see also* Fed. R. Evid. 201(a) advisory committee's note (explaining that it is proper to take judicial notice of facts with a "high degree of indisputability" that are "outside the area of reasonable controversy").  Adjudicative facts are facts relevant to a determination of the claims presented in a case. *Id.*  Judicial notice is appropriate when facts are "generally known within the territorial jurisdiction of the trial court," Fed. R. Evid. 201(b), and courts have taken judicial notice of a wide variety of facts. *See, e.g.*, *Friend v. Burnham & Morrill Co.*, 55 F.2d 150, 151–52 (1st Cir. 1932) (noting the method for canning baked beans in New England); *Seminole Tribe of Fla. v. Butterworth*, 491 F. Supp. 1015, 1019 (S.D. Fla. 1980) (noting that bingo is largely a senior citizen pastime); *First Nat'l Bank of S.C. v. United States*, 413 F. Supp. 1107, 1110 (D.S.C. 1976) (noting that credit cards play a vital role in modern American society); *Carling Brewing Co. v. Philip Morris, Inc.*, 277 F. Supp. 326, 330 (N.D. Ga. 1967) (noting that most establishments selling beer also sell tobacco products); *Colourpicture Pubs., Inc. v. Mike Roberts Color Prods., Inc.*, 272 F. Supp. 280, 281 (D. Mass. 1967), *vacated on other grounds*, 394 F.2d 431 (1st Cir. 1968) (noting that calendars have long been affixed to walls by a punched hole at the top of the calendar).

## III. CONCLUSION

For these reasons, it is ORDERED that the Motion for Class Certification

(Doc. 49) is DENIED.

DONE and ORDERED on March 23, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE