IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TAMMY DEVANE, on behalf of herself and all others similarly situated | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Civil Action No. 02:19-cv-00650-TMP<br>) |
| WALMART INC. f/k/a WAL-MART STORES, INC., | ) **OPPOSED**<br>)<br>) |
| Defendants. | ) |

## WALMART'S MOTION TO DISMISS THE CLASS ACTION THIRD AMENDED COMPLAINT

Defendant, Walmart Inc. ("Walmart"), respectfully requests that the Court dismiss the Class Action Amended Complaint ("Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, and pursuant to Rule 12(b)(6) for failure to state a claim.

## INTRODUCTION

The original complaint in this action was filed on April 30, 2019, alleging that Walmart falsely labeled, falsely advertised, and used deceptive trade practices in relation to its "Parent's Choice Pediatric Shakes" ("Shakes"). Doc. 1, ¶ 2. Plaintiff's counsel has now replaced the original named-plaintiff after it was revealed she failed to give the required notice prior to filing this action. Tammy DeVane—the latest

{B4399706}

named-plaintiff—purported to give the required notice on April 21, 2022—nearly three years after the action was filed. Ms. DeVane's Class Action Third Amended Complaint is virtually identical to Ms. Morris's Second Amended Complaint, except, that Ms. DeVane—unlike Ms. Morris—does not allege she purchased any Shakes in the Northern District. In fact, she only specifies having purchased the Shakes in the Middle District.

Since the filing of the Second Amended Complaint, courts across the country have dealt with numerous class actions regarding similar vanilla flavoring claims, and those court have overwhelming rejected even more detailed allegations than Ms. DeVane's. In light of these developments, Walmart seeks to dismiss Plaintiff's Third Amended Complaint for the following reasons:

*First*, venue is not proper in the Northern District of Alabama. Ms. DeVane does not allege that she purchased any of the Shakes in the Northern District. Plaintiff's only specifically alleged purchase occurred in the Middle District of Alabama.

*Second*, Plaintiff has not plausibly alleged the Shakes' "naturally flavored" label statement is false. The Complaint offers nothing more than speculative, conclusory allegations that the Shakes do not contain natural vanilla flavor. Courts across the country have rejected similar vanilla claims, even where plaintiffs' alleged laboratory tests revealed the presence of unnatural ingredients.

*Third*, Plaintiff's Alabama Deceptive Trade Practices Act ("ADTPA") claim is due to be dismissed because she did not provide notice prior to the filing of the action. In fact, Ms. DeVane did not provide notice until nearly three years after this action was filed.

*Fourth*, Plaintiff has not plausibly alleged that the maltodextrin used in the Shakes is of the type that can contribute to sweetness. Plaintiff has only alleged that maltodextrin "can" contribute to sweetness. The recent developments in the vanilla flavoring cases across the country also warrant revisiting these claims.

## **ARGUMENT**

### I.   VENUE IS NOT PROPER IN THE NORTHERN DISTRICT.

"When venue is challenged as improper, the plaintiff bears the burden of establishing that the selected venue is proper." *Vulcan Mktg., Inc. v. United Furniture Indus. Bolivia, S.A.*, No. 2:09-CV-00571-AKK, 2010 WL 11566476, at *2 (N.D. Ala. Feb. 1, 2010). The Complaint formulaically asserts that venue is proper in this District under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions that give rise to the Plaintiff's claims occurred in this District as Defendant does business throughout this District, including promoting, selling, marketing and distributing the Shakes at issue." Doc. 96-1, ¶ 8. "The Eleventh Circuit, interpreting § 1391(a)(2), has stated that, 'Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place,

only those locations hosting a 'substantial part' of the events are to be considered.'" *Vulcan Mktg., Inc.*, 2010 WL 11566476, at *5 (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).

The Complaint fails to plead any facts demonstrating any of the events giving rise to her claim occurred in the Northern District. Ms. DeVane did not suffer any alleged injury until she actually purchased the Shakes. As a result, her claims did not "arise" until she purchased the allegedly misleading Shakes. Thus, the fact that Walmart sells the Shakes in the Northern District does not "directly give rise" to Ms. DeVane's claims, unless she purchased the Shakes here.

Ms. DeVane, however, does not allege she purchased any of the Shakes at a Walmart in the Northern District. Doc. 105, ¶¶ 8, 70-78. In contrast, Ms. Morris, in the Second Amended Complaint, specifically alleged she "purchased Shakes in this District." Doc. 42, ¶ 8. Ms. Morris further alleged that she "purchased these Shakes from Walmart locations across Alabama and specifically in Jefferson County, Alabama." Doc. 42, ¶¶ 71. Conspicuously, Ms. DeVane's Third Amended Complaint omits these allegations. Ms. DeVane does not plead that she purchased Shakes in the Northern District because she did not. Rather, Ms. DeVane's purported notice letter makes clear that she "began purchasing [the Shakes] from the Eufala Walmart." Doc. 96-2. Eufala, however, is in Barbour County, which is located in the

Middle District.[1]

Ms. DeVane's allegations that Walmart, "does business throughout this District, including promoting, selling, marketing and distributing the Shakes at issue" is legally insufficient to maintain this matter in the Northern District. Unless *Ms. DeVane* actually purchased the Shakes in the Northern District, she does not have a viable claim. The fact that members of the putative class might have purchased Shakes in the Northern District is irrelevant to the venue analysis; venue is determined only as to the named plaintiff. *Johnson v. Law*, 19 F. Supp. 3d 1004, 1009 (S.D. Cal. 2014).

Finally, the fact that venue was proper prior to the filing of the Third Amended Complaint is irrelevant. Where an amendment renders venue "now improper . . . the district court 'shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Glob. Appraisal Sols., LLC v. Ashley*, No. 20-CV-60889-RAR, 2021 WL 1341522, at *3–4 (S.D. Fla. Apr. 9, 2021) (quoting 28 U.S.C. § 1406(a)). As a result, venue, under 28 U.S.C. § 1391(b)(2), is not proper in the Northern District. To the contrary, Plaintiff's own filings prove venue is proper in the Middle District.

---

[1] *See* https://www.almd.uscourts.gov/about/courthouse-information.

## II.  Ms. DeVane Has Not Plausibly Alleged that the Vanilla Shakes are not Naturally Flavored.

Walmart previously argued that Plaintiff's "naturally flavored" claims are preempted. Walmart does not ask the Court to revisit that ruling here. Instead, Walmart now argues that Plaintiff's "naturally flavored" claims are speculative at best. In the two plus years since the last motion to dismiss was filed, numerous courts across the country have dismissed far more detailed vanilla flavoring claims than Ms. DeVane's.

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"550 U.S. 544, 555 (2007). The Supreme Court further explained, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* In *Ashcroft v. Iqbal*, the Supreme Court went further, holding that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not show[n]—that the pleader is entitled to relief." 556 U.S. 662, 679 (2009) (internal citations omitted). In applying *Iqbal* and *Twombly*, the Eleventh Circuit has stated that a court is to begin its analysis "by disregarding . . . wholly conclusory . . . allegations." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

The sum of Plaintiff's "naturally flavored" allegations are as follows:

> 43. Unlike the Chocolate Shakes, which list "cocoa" on its list of ingredients, the Vanilla Shakes do not list vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from Vanilla on its list of ingredients. *See* 21 C.F.R. §§ 169.175 to 169.178. Upon information and belief, this is because Walmart chose not to pay for the expensive Vanilla for its Vanilla Shakes.
>
> 44. Having not included any ingredient derived from Vanilla in Walmart's Vanilla Shakes, consumers are misled because the only ingredient that could impart the vanilla flavor in the list of ingredients for the Vanilla Shakes is "Natural Flavors."
>
> 45. Upon information and belief, Walmart's use of "Natural Flavors" is an admission that the characterizing flavor in the Vanilla Shakes, Vanilla, is not derived from real Vanilla. *See* 21 C.F.R. §101.22 (natural flavor) and C.F.R. §§ 169.175 to 169.178.
>
> 46. Logically, Walmart would not use the more expensive and higher quality ingredient (Vanilla bean or extract) and hide it under "Natural Flavors" in its list of ingredients. Quite the opposite, like Walmart did for its Chocolate Shakes when its listed cocoa as an ingredient, had the Vanilla Shakes contained natural flavor derived from Vanilla, Walmart would have listed it separately as an ingredient.

These allegations should be rejected as they are at best "wholly conclusory." *Am. Dental Ass'n*, 605 F.3d at 1290. To start, the FDA has determined that natural

flavorings—like the vanilla found in the Shakes—"may be declared [on ingredient lists] as 'natural flavor.'" 21 C.F.R. § 101.22(h)(1). In other words, Walmart's listing "Natural Flavors," on the ingredient panel is not an admission of anything.

Since briefing closed on the last motion to dismiss, *Zaback v. Kellogg Sales Co.*, dismissed a complaint making the following allegations:

> Plaintiff's Complaint makes only two factual allegations that the Product is not "flavored with vanilla flavoring derived exclusively from vanilla beans." (Comp. ¶ 32). First, that "a close inspection of the ingredient list" reveals the Product is flavored with "natural flavors." (*Id.* ¶¶ 31-33).
>
> Second, Plaintiff alleges that if the Product was actually made with "vanilla flavoring derived exclusively from vanilla beans," Defendant would not have used the term "natural flavors" but would have instead listed a "more expensive and higher quality ingredient (vanilla extract or vanilla flavor)" on the ingredient list. (*Id.* ¶ 37). Plaintiff provides no other factual basis for the contention that the product is mislabeled.

No. 320CV00268BENMSB, 2020 WL 3414656, at *2 (S.D. Cal. June 22, 2020).

The *Zaback* court addressing the exact allegations at issue here, found the "Plaintiff [was] merely speculating . . . and [had] not alleged sufficient facts to 'nudge [his] claims . . . across the line from conceivable to plausible.'" *Id.* (quoting *Iqbal*, 556 U.S. at 680)). Four months later, the court rejected Zaback's allegations a second time. The court found he "still offer[ed] no factual allegations of what practice Kellogg uses to put vanilla or vanilla flavoring in the Product or what, other than vanilla beans, might be in the Product." *Zaback v. Kellogg Sales Co.*, No.

320CV00268BENMSB, 2020 WL 6381987, at *3–4 (S.D. Cal. Oct. 29, 2020).

Likewise, Ms. DeVane's pure speculation about how Walmart chooses to list ingredients on its Shakes does not "nudge [her] claims . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Moreover, if, as alleged, Walmart is willing to falsely claim, in bold print, the Shakes are "naturally flavored," Ms. DeVane offers no explanation as to why Walmart would draw the line at falsely listing vanilla beans or vanilla extract in small print on the back of the Shakes. The "obvious alternative explanation," is that Walmart—like Kellogg—merely chose to list the natural vanilla flavor as "Natural Flavors," as explicitly permitted by the FDA. *Twombly*, 550 U.S. at 567. At best, Plaintiff's allegations only allow the court to infer the possibility of misconduct. According to the Supreme Court, however, such an inference of possible misconduct does not satisfy Rule 8's requirement that the Plaintiff *show* she is entitled to relief. *Iqbal*, 556 U.S. at 679. These barebones allegations certainly are not sufficient to satisfy Rule 9's heightened pleading standard for Plaintiff's ADTPA claims. *See Kornegay v. Beretta USA Corp.*, No. 2:22-CV-124-RDP, 2022 WL 2705249, at *4 (N.D. Ala. July 12, 2022).

*Zaback* is not an outlier. In the last two years, several other courts have dismissed complaints containing even more detailed vanilla flavoring claims. For instance, the Northern District of Illinois dismissed the complaint before it even though the plaintiffs alleged their "lab testing detected an amount of vanillin in the

Product that was greater than it would be if it were only present due to extracts from the vanilla bean, and atypically elevated levels (0.0803 PPM) of guaiacol, a petrochemical precursor and the source of 85% of synthetic vanillin." *Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 WL 1591715, at *4 (N.D. Ill. May 19, 2022). In spite of these more detailed allegations, the court reasoned that "guaiacol can come from natural or artificial sources [and] plaintiffs must offer some factual basis to suggest that the guaiacol detected in the Product was artificially derived." *Id.* "Accordingly, their allegations concerning the presence of artificial ingredients are insufficient to 'nudge[] their claims across the line from conceivable to plausible.'" *Id.* at *5 (quoting *Twombly*, 550 U.S. at 570).

And, in *Fahey v. Whole Foods Market, Inc.*, the court found plaintiff's "allegations rely on the results of scientific testing that demonstrate the product has an excess of vanillin, but this testing – which lists vanillin among a list of other compounds found in the Product – does not adequately support Fahey's conclusory allegation that the vanillin in the 365 Vanilla Almondmilk is from non-vanilla sources." No. 20-CV-06737-JST, 2021 WL 2816919, at *6 (N.D. Cal. June 30, 2021).

In stark contrast, Ms. DeVane has not identified the presence of a single alleged unnatural flavor. Ms. DeVane has performed no laboratory test on the Shakes. Ms. DeVane merely makes the wholly unsupported assertion that Walmart

would not "hide [Vanilla bean or extract] under 'Natural Flavors' in its list of ingredients." Doc. 105, ¶ 46. It is telling that now, more than three years after the original complaint was filed, Plaintiff's "natural flavors" allegations are still being made "[u]pon information and belief." Doc. 105, ¶ 45. Plaintiff's counsel has taken discovery from the Shakes' manufacturer. Yet, Plaintiff's naturally flavored claims are nothing more than speculation about how Walmart would list the ingredients on its Shakes.

In sum, Plaintiff's "wholly conclusory" allegations do not "nudge [her] claims . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. As a result, Plaintiff's naturally flavored claims are due to be dismissed.[2]

### III. MS. DEVANE'S ALABAMA DECEPTIVE TRADE PRACTICES ACT CLAIMS ARE DUE TO BE DISMISSED FOR FAILURE TO PROVIDE THE REQUISITE NOTICE.

The Alabama Deceptive Trade Practices Act ("ADTPA") provides that "At least 15 days **prior to filing any action** under this section, a written demand for relief . . . shall be communicated to any prospective respondent . . . ." ALA. CODE § 8-19-10(e) (emphasis added). "'Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'" *Tucker v. Equifirst Corp.*, 57 F. Supp. 3d 1347, 1354 (S.D. Ala. 2014) (quoting *BP Am. Prod. Co. v. Burton,* 549 U.S. 84, 91 (2006)). Moreover, "'it is a cardinal rule of statutory

---

[2] Walmart continues to assert that Ms. DeVane's naturally flavored claims are preempted. For the sake of brevity, given the Court's prior ruling on the issue, Walmart hereby adopts and incorporates as if fully set forth herein the preemption arguments set forth in Docs. 35 and 37.

construction that, when [a legislature] employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it is taken.'" *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 248 (2014) (quoting *FAA v.* Cooper, 566 U.S. 284, 292 (2012))).

"A 'civil action' is simply 'a civil . . . judicial proceeding.'" *Id.* (quoting *Black's Law Dictionary* 32, 279 (9th ed. 2009)). "A 'proceeding' is '[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment.'" *Id.* (quoting *Black's* at 1324). "A civil action is commenced by filing a complaint with the court." FED. R. CIV. P. 3. Accordingly, "the ordinary meaning of 'civil action' is a single proceeding begun with a complaint and continuing all the way through entry of judgment." *Tucker*, 57 F. Supp. 3d at 1354. Moreover, "[b]ecause the filing of an amended complaint is an act or event occurring between commencement and judgment, it is part of a single, ongoing civil action and cannot commence a new 'civil action[.]'" *Tucker*, 57 F. Supp. 3d at 1354.

If the Alabama Legislature intended the notice only be required prior to the claims being brought, it certainly knew how to the do that. *See* ALA. CODE § 10A-2A-2.07 ("claims shall be brought exclusively in any specified court"). The Legislature, however, chose to require plaintiffs to give notice "prior to filing any action." The Legislature's choice of the term "action," demonstrates its intent that

the notice be given prior to the filing of the initial complaint. *See Doe v. Blue Cross Blue Shield of Ala.*, No. 2:10-CV-00630-AKK, 2010 WL 11562038, at *7–8 (N.D. Ala. Oct. 18, 2010). Otherwise, the Legislature would only have required that notice be given prior to any claim being "brought."

Here, there is no question that Ms. Morris did not provide the required notice prior to filing the original complaint. The question, then, is whether Ms. DeVane provided notice prior to the filing of this "action." She did not. In fact, Ms. DeVane did not give her purported notice until nearly three years after the original complaint was filed. Doc. 96-2.

In order for Ms. DeVane to have given notice "prior to the filing [of the] action," her complaint must be considered a new, separate action from Ms. Morris's first three complaints. However, nothing suggests that Ms. DeVane's action is new or separate. Ms. DeVane even terms her first filing in this case as the "Class Action Third Amended Complaint." It can only be the Third Amended Complaint if it is part of Ms. Morris's action. Likewise, the Third Amended Complaint was filed under the same civil action number and continues the docket numbering from Ms. Morris's action. Again, if this were a new action, Ms. DeVane would have filed the Complaint under a new civil action number, and the Third Amended Complaint would not be Docket No. 105.

This is not a new action because "the filing of an amended complaint cannot

commence a new 'civil action.'" *Tucker*, 57 F. Supp. 3d at 1354. For example, if this were a new action, the Clerk would have issued new magistrate consents to the Parties, but the Clerk rightly has taken no such action. 28 U.S.C. § 636(c)(2) (requiring consents be issued "at the time the action is filed.").

In sum, this action was commenced on April 30, 2019. Ms. DeVane, however, did not provide her purported notice until nearly three years later on April 21, 2022. Therefore, Ms. DeVane did not provide notice prior to the filing of this "action," and her ADTPA claims are due to be dismissed.

## IV. Ms. DeVane Fails to Plausibly Allege the Maltodextrin in the Shakes is a Synthetic Sweetener.

The recent developments in the vanilla flavoring litigation also bear on Plaintiff's allegation that the Shakes' falsely claim to contain "No Synthetic Color, Flavor, or Sweetener," and warrant revisiting the Court's prior decision on the issue. The Complaint alleges that the Shakes' label statement that it does not contain synthetic sweeteners is misleading because it contains maltodextrin. As with the naturally flavored allegations, "Plaintiff [is] merely speculating . . . and [has] not alleged sufficient facts to 'nudge [her] claims . . . across the line from conceivable to plausible.'" *Zaback*, 2020 WL 3414656, at *2 (quoting *Iqbal*, 556 U.S. at 680)). The Complaint only alleges that, "Maltodextrins **can** contain 8-9% mono and disaccharides and contribute to sweetness." Doc. 105, ¶ 55 (emphasis added). In other words, other types of maltodextrin do not contribute to sweetness. The

Complaint, however, does not allege—and provides no basis for an allegation—that the maltodextrin used in the Shakes is of the type that "can" contribute to sweetness versus the type of maltodextrin that does not contribute to sweetness.

The Complaint makes much over the fact that the Shakes contain 10 grams of "added sugar." Doc. 105, ¶ 49. The "added sugar," however, should come as no surprise given that "sugar" is the Shakes' third most abundant ingredient. Doc. 105, ¶ 47. According to the FDA, "Added sugars include sugars that are added during the processing of foods (such as sucrose or dextrose), foods packaged as sweeteners (such as table sugar), sugars from syrups and honey, and sugars from concentrated fruit or vegetable juices." https://www.fda.gov/food/new-nutrition-facts-label/added-sugars-new-nutrition-facts-label. Accordingly, the sugar listed in the ingredients, must be accounted for as "added sugars" on the nutrition panel. The Complaint provides nothing from which one could conclude that any of these "added sugars" come from maltodextrin. Moreover, given that sugar is the third-listed ingredient, the "obvious alternative explanation," is that the 10 grams of "added sugar" are the result of sugar being the Shakes' third most abundant ingredient. *Twombly*, 550 U.S. at 567.

Again, the recent developments in the vanilla flavoring cases are instructive here. For instance, in *Wach*, the court reasoned that "[s]ince guaiacol can come from natural *or* artificial sources, plaintiffs must offer some factual basis to suggest

that the guaiacol detected in the Product was artificially derived." *Wach*, 2022 WL 1591715, at *4. The court in *Fahey*, reached the same conclusion because plaintiff did not provide "'any factually substantiated allegations that the vanillin, maltol, and piperonal in [the] product are not derived from natural sources.'" *Fahey*, 2021 WL 2816919, at *5. Likewise, here, Ms. DeVane has not offered any "factual basis" or "factually substantiated allegations," from which to conclude the maltodextrin in the Shakes is of the type that can contribute to sweetness. "Accordingly, [her] allegations concerning the presence of [synthetic sweeteners] are insufficient to 'nudge [her] claims across the line from conceivable to plausible.'" *Wach*, 2022 WL 1591715, at *5.

## **CONCLUSION**

First, given there are no allegations that Plaintiff purchased the Shakes in the Northern District, venue in the Northern District is improper. Even assuming venue were proper, Plaintiff's conclusory naturally flavored and synthetic sweetener allegations do not state a plausible cause of action. Finally, Plaintiff's ADTPA claim fails because Ms. DeVane did not provide notice prior to the filing of this action.

Respectfully Submitted,

*s/ Cole R. Gresham*
Cole R. Gresham (ASB-8993-L47G)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama  35209
(205) 868-6000 Phone
(205) 868-6099 Facsimile
*cgresham@starneslaw.com*

*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 8, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

W. Lewis Garrison, Jr.
Taylor C. Bartlett
Heninger Garrison Davis, LLC
2224 First Ave North
Birmingham, AL 35203
lewis@hgdlawfirm.com
taylor@hgdlawfirm.com

J. Stuart McAtee
Alexander Shunnarah
Personal Injury Attorneys
3626 Clairmont Ave South
Birmingham, AL 35222
smcatee@asilpc.com

Taylor A. Pruett
Schreiber Law Firm, P.C.
2129 First Ave North
Birmingham, AL 35203
taylor@schreiber.law

                                *s/ Cole R. Gresham*
                                Cole R. Gresham