IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TAMMY DEVANE, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL CASE NO. 2:22-cv-709-ECM ) [WO] ) |
| WALMART INC. f/k/a WAL-MART STORES, INC., | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is Defendant Walmart Inc.'s ("Walmart") motion for judgment on the pleadings (doc. 124), filed on August 22, 2023. Plaintiff Tammy DeVane filed a response to Walmart's motion on October 12, 2023. (Doc. 130). Upon consideration of the motion, additional filings from the parties, and for the reasons that follow, the Court concludes that the motion is due to be GRANTED in part and DENIED in part.

**I. RELEVANT BACKGROUND**

Without recounting the entire docket in this case, the Court notes the long journey this case has taken through the federal judiciary and states the following facts relevant to the issues currently before the Court.

The first complaint in this case was filed on April 30, 2019 in the Northern District of Alabama by Kaylan Morris ("Morris"), the mother of an "extremely picky eater" who relied upon Walmart's Parent's Choice Pediatric Shakes ("Shakes") to supplement her

1

young son's diet. (Doc. 1 at 10–11). Morris alleged that Walmart falsely labeled and advertised, and otherwise used deceptive trade practices in marketing, its Shakes. (Doc. 1). Specifically, the Shakes' packaging and label contain the statements "Naturally Flavored" and "No Synthetic Color, Flavor or Sweeteners" with flavors such as chocolate and vanilla. (Doc. 105 at 4). The Plaintiff takes special issue with the vanilla flavored Shakes by alleging that the "flavor of vanilla is not derived from the characterizing ingredients of vanilla[.]" (Doc. 105 at 6).[1] In addition, the Plaintiff alleges that the "Shakes contain unnatural and synthetic ingredients such as maltodextrin and others," which would render the label statements to be untrue. (*Id.*).

Judge Borden was assigned the case on June 17, 2019. (Doc. 13). After Judge Borden partially granted two contested motions to dismiss (*see* docs. 11, 29, 35 & 38), Morris filed her second amended complaint stating the same five claims (doc. 42 at 2 & 22–35). Walmart answered the second amended complaint. (Doc. 43). Then, Morris filed a motion for class certification. (Doc. 49). After an evidentiary hearing (doc. 76), Judge Borden denied the motion because Morris neglected to provide pre-suit notice pursuant to the Alabama Deceptive Trade Practices Act ("ADTPA") such that it precluded Judge Borden from finding her claims and defenses to be typical of the class she sought to represent or that she would adequately represent the class (doc. 88 at 24).

---

[1] The Court cites these statements from the third amended complaint, which is the operative complaint, but these basic allegations are present throughout the life of this case.

Morris then requested leave to file an amended complaint substituting Tammy DeVane as the plaintiff. (Doc. 96). After a hearing, Judge Borden granted the motion. (Docs. 100–03). Plaintiff DeVane then filed the third amended class action complaint, which is presently the operative complaint but substantively mirrors the second amended complaint aside from the substitution of Plaintiff DeVane. (*See* Doc. 105). In response, Walmart filed a motion to dismiss the third amended complaint in which Walmart sought dismissal based on improper venue and for failure to state a claim. (Doc. 108 at 2–3). On December 21, 2022, Judge Borden issued an opinion finding venue to be improper in the Northern District of Alabama and, as a result, did not address the arguments relating to the allegations of failure to state a claim, but Judge Borden did note that the Rule 12(b)(6) arguments were similar to ones he previously addressed. (Doc. 118 at 2).

In accordance with Judge Borden's December 2022 order and opinion (doc. 118), the case was transferred to the Middle District of Alabama (doc. 119) and assigned to the undersigned (doc. 120). The case was then reassigned to Judge Stephen Michael Doyle on February 27, 2023. (Doc. 122). On that same day Walmart filed an answer to the third amended complaint. (Doc. 121). Several months later, on August 22, 2023, Walmart filed the motion for judgment on the pleadings which is presently before the Court. (Doc. 124). Following the conclusion of briefing on Walmart's motion, the case was once again reassigned to the undersigned on November 7, 2023. (*See* Doc. 134).

## II.  STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "Judgment on the pleadings

3

is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). "All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).

### III.  DISCUSSION

Walmart raises three bases for granting their motion: (1) Plaintiff DeVane has not plausibly alleged the Shakes' "Naturally Flavored" label statement as false (doc. 124 at 2); (2) Plaintiff DeVane did not provide proper notice of her suit under the ADTPA (doc. 124 at 3); and (3) Plaintiff DeVane has not plausibly alleged that maltodextrin used in the Shakes is of the type which can contribute to sweetness (doc. 124 at 3).  Points one and three were previously discussed in opinions from Judge Borden regarding Walmart's prior motions to dismiss (docs. 29, 38), which were entered prior to this case being transferred to the undersigned.  Judge Borden found Walmart's arguments on these points to be unpersuasive. (Doc. 38 at 13).  However, Walmart contends that developments in case law post-dating Judge Borden's opinions should now compel a different outcome on points one and three (doc. 124 at 2); and that the second basis is a new argument as it relates to Plaintiff DeVane (*id.* at 3–4).

**A.     The "Naturally Flavored" Label**

Walmart contends in its motion that the operative complaint "offers nothing more than speculative, conclusory allegations that the shakes do not contain natural vanilla

4

flavor" (doc. 124 at 2) and cites to several cases from other jurisdictions as persuasive authority (*id.* at 7–9).  However, most of the cases cited by Walmart are distinguishable from the present one because the operative complaint here plausibly alleges a violation of 21 C.F.R. § 101.22 (doc. 105 at 11)—a Food and Drug Administration ("FDA") regulation concerning the proper labeling of food items—and the cited cases did not. (Doc. 130 at 5; Doc. 132 at 5–6).  Walmart, in essence, attempts to diminish the importance of this fact in its response to Plaintiffs' arguments (doc. 132 at 5–6), but as Judge Borden wrote, "the devil is in the detail," (doc. 38 at 7).  Here, despite Walmart's arguments to the contrary, the detail reveals that Judge Borden analyzed allegations from a prior iteration of the complaint with substantially similar pleadings on this issue and found them to be sufficiently pled. (Doc. 38 at 9).  Particularly noteworthy is the fact that Judge Borden zeroed in on the allegation regarding § 101.22(i) to arrive at this conclusion. (*See* doc. 38 at 9).

With that being said, the parties failed to discuss the details of one case cited by Walmart that did mention a violation of § 101.22(i): *Zaback v. Kellogg Sales Company*. 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) (hereinafter *Zaback* II).  To be clear, this *Zaback* was on the second motion to dismiss.  The *Zaback v. Kellogg Sales Company* subject to the back and forth in the parties' submissions was that court's ruling on the first motion to dismiss, which specifically stated the court would not decide the § 101.22(i) issue since it was not in the complaint. 2020 WL 3414656, at *3 (S.D. Cal. June 22, 2020) (hereinafter *Zaback* I).  *Zaback* II came about after the plaintiff amended his complaint to allege a violation of § 101.22(i) following the court's statement in *Zaback* I.  *Zaback* II at

5

\*1.  Despite *Zaback* II's inclusion of discussion on the alleged violation, the Court also finds this case distinguishable from the present one due to the alleged violation of § 101.22(i) in that case stemming from the use of a vignette depicting vanilla beans. *See Id.* at \*2.  In any event, even if the Court did not find *Zaback* II distinguishable, it is not binding upon this Court.

In addition, Judge Borden noted that these allegations are not preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") since the inference drawn from these allegations is that Walmart violated § 101.22(i), rather than attempting to hold Walmart to a differing standard than the one promulgated by the FDA. (Doc. 38 at 7).

The Court finds no reason to disturb the analysis in Judge Borden's well-reasoned opinion (doc. 38) on this issue, even in light of the cases cited by Walmart.  And while the prior decision from Judge Borden was on a motion to dismiss, a "motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018)). Therefore, Walmart's motion is due to be denied on the issue of the "naturally flavored" issue, which is the first basis for their motion.

**B.    The "No Synthetic Color, Flavor, or Sweeteners" Label**

Plaintiff DeVane pleads that the "No Synthetic Color, Flavor, or Sweeteners" label on the Shakes is untrue and misleading because the Shakes contain maltodextrin and maltodextrin is an unnatural, synthetic sweetener. (Doc. 105 at 6).  Walmart argues that the Plaintiffs do not sufficiently allege that the maltodextrin in the shakes is the type which

can contribute to sweetness. (Doc. 124 at 13). Once again, the contentions raised by Walmart were in front of Judge Borden on prior motions and once more the Court adopts the analysis from his well-reasoned opinion on the issue despite Walmart's citations to additional case law.

> As Judge Borden explained:
>
>> While it is true that the complaint does not explicitly state that the maltodextrin in the shakes is the type of maltodextrin that contributes to sweetness, the complaint contains factual content allowing the reasonable inferences that Walmart uses maltodextrin in the shakes for sweetening purposes and that the maltodextrin in the shakes has a high [dextrose equivalent]. Specifically, the amended complaint alleges that maltodextrin can be used as synthetic sweetener if it is purposefully manufactured for a sweetening effect and has a high [dextrose equivalent]. It also alleges that the shakes contain ten grams of added sugar, and that the maltodextrin in the shakes is "an unnatural synthetic sweetener contained in the Shakes which is directly contrary to the Shakes' labelling." With these allegations, [the named Plaintiff] has provided enough factual material for the court to connect the dots. Drawing on the court's experience and common sense, the court finds that the amended complaint states a plausible claim for relief as to this label.
>
> (Doc. 38 at 11) (citations omitted).

The cited cases by Walmart do not persuade the Court to arrive at a differing conclusion than the one previously reached by Judge Borden. For instance, Walmart cites *Wach v. Prairie Farms Dairy, Inc.*, an unreported opinion from the Northern District of Illinois. (Doc. 132 at 9). In *Wach*, the plaintiffs alleged that an ice cream manufacturer deceived consumers by, among other things, claiming on the packaging that its ice cream contains "natural flavors." *Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 WL 1591715, at *4 (N.D. Ill. May 19, 2022). The *Wach* court found the plaintiffs in that case

failed to sufficiently plead facts which would result in a plausible claim that an ingredient at issue (guaiacol) was artificially derived. *Id.* at *4–*5. The plaintiffs in *Wach* relied upon lab testing for their allegations and had not alleged that natural and artificial guaiacol are chemically distinct, nor that the lab tests detected the presence of artificially derived guaiacol. *Id.* at *5. In contrast, the Plaintiffs in the present action have relied upon a variety of facts outlined by Judge Borden above to plead their allegations. Thus, the present case and *Wach* are distinguishable. And even if it was not, *Wach* is not binding upon this Court.

For the above stated reasons, the Court finds Walmart's arguments regarding the "No Synthetic Color, Flavor, or Sweeteners" label, referred to as its third basis, to be unavailing.

**C.     The ADTPA Notice Requirement**

Count V of the Plaintiff DeVane's operative complaint alleges a violation of the ADTPA. (Doc. 105 at 32). The ADTPA requires that "[a]t least 15 days prior to filing any ***action*** under this section, a written demand for relief, identifying the ***claimant*** and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent . . . ." ALA. CODE § 8-19-10(e) (emphasis added). Plaintiff DeVane gave notice of her impending entrance into this case on or about April 21, 2022. (*See* Doc. 105 at 17; Doc. 96-2). The original complaint in this case, which is non-operative, was filed on April 30, 2019. (Doc. 1). Walmart argues that "[t]he ADPTA requires that notice must be given 'prior to the filing of any action' *not* prior to when Ms. DeVane became a 'claimant.'" (Doc. 132 at 2). Thus, per Walmart's

arguments, Plaintiff DeVane failed to give proper notice and her ADPTA claims should be dismissed under the plain terms of the statute.

Plaintiff DeVane pushes back on Walmart's assertions by arguing that "the ADTPA claims require the 'claimant' to give notice of his or her claim" and that "[i]t is undisputed that Ms. DeVane gave notice to Defendant prior to the filing of the Third Amended Complaint, which is the time she became a 'claimant' in a lawsuit." (Doc. 130 at 7). Plaintiff DeVane further notes that Walmart fails to provide an explanation as to how she could have given notice any sooner than she did. (Doc. 130 at 6). But such arguments are misplaced as they appear to disregard the plain language of the statute.

The situation that Plaintiff DeVane presently finds herself in is the direct result of an odd set of circumstances. The ADTPA precludes private parties from bringing a class action. ALA. CODE § 8-19-10(f). However, the Eleventh Circuit has specifically held that this provision is inapplicable to class actions in federal court. *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls."). And this analysis does not change despite the ADTPA since being amended to label the class action prohibition as a "substantive right" because such analysis does not rest upon conclusory statutory labels. *See id.* ("And more importantly, the question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance—not on the placement of a statute within a state code."). Although § 8-19-10(f)'s prohibition on class actions is inapplicable under binding Eleventh Circuit precedent, the notice requirement remains in

effect—a requirement enacted with the understanding that class actions brought by private parties and the substitution of putative class representatives in such class actions would be prohibited.

Turning to the notice requirement's application to Plaintiff DeVane, Walmart is correct when it argues Plaintiff DeVane's notice came too late under the ADTPA. By requiring the pre-suit notice be sent "[a]t least 15 days prior to filing any *action*," ALA. CODE § 8-19-10(e) (emphasis added), the ADTPA clearly contemplates that notice be given prior to the filing of the action. Thus, the Plaintiffs' third amended complaint does not fall into the window contemplated by the ADTPA's notice requirement. *See Tucker v. Equifirst Corp.*, 57 F. Supp. 3d 1347, 1354 (S.D. Ala. 2014) ("Because the filing of an amended complaint is an act or event occurring between commencement and judgment, it is part of a single, ongoing civil action and cannot commence a new 'civil action' under Section 1446(b)(1).")[2].

In sum, the complexities of our legal system have produced an odd situation in which Plaintiff DeVane was required to furnish her notice fifteen days prior to April 30, 2019—a date which quite possibly precedes Plaintiff DeVane's first purchase of a Shake. Nonetheless, the governing statutory provision requires that Walmart be given notice of any potential action fifteen days prior to its filing. And instead of filing her action as a separate lawsuit, Plaintiff DeVane opted to join an ongoing one. In so doing, she has created a situation wherein compliance with the unambiguous notice requirement is not

---

[2] Although *Tucker* is not binding, the Court finds it persuasive.

possible.  As such, she forgoes her right to bring a claim pursuant to the ADTPA under these circumstances.  For this reason, Plaintiff DeVane's ADTPA claims are due to be dismissed with prejudice.

## IV.  CONCLUSION

Developments in case law cited by Walmart fail to persuade this Court to revise the analysis of Judge Borden's prior opinions regarding their label contentions.  However, Walmart's arguments regarding the ADTPA's pre-suit notice requirement have merit.  Therefore, for the reasons stated and for good cause, it is

ORDERED that Walmart's motion for judgment on the pleadings (doc. 124) is GRANTED to the extent that the ADTPA claims, Count V, are DISMISSED with prejudice.  The motion (doc. 124) is DENIED in all other respects.

Done this 22nd day of December, 2023.

                              /s/   Emily C. Marks  
                              EMILY C. MARKS  
                              CHIEF UNITED STATES DISTRICT JUDGE