# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **TAMMY DEVANE, on behalf of herself and all others similarly situated** ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | **CIVIL ACTION NO.:** **2:22-cv-00709-ECM-SMD** |
| ) | |
| **WALMART, INC. f/k/a WAL-MART STORES, INC.,** ) ) ) | **OPPOSED** |
| Defendant. ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, AND INCORPORATED MEMORANDUM OF LAW**

1

**Table Contents**

**I.   Devane is Included in the Class Definition Which Is Substantively The Same As What Was Plead in The Operative Complaint.**......................................3

**II.   Devane Has Standing.**..................................................................................4

  A.   Devane Has Standing Because She Purchased The Clean Label Shakes.5

  B.   Devane Paid A Premium For The Clean Label Shakes.**............................6

**III.   The Proposed Classes Are Ascertainable.**.................................................7

**IV.   Devane is Typical and Adequate.**................................................................7

**V.   A Class Action Is Superior to Walmart's Satisfaction Guarantee** .........12

**VI.   Important Questions Of Fact And Law Predominate.** ............................13

  A.   As With Ascertainability, Walmart Holds Devane To A Standard Divorced From The Law On Predominance.** ....................................................13

  B.   Butler's Report Suffers From Flawed A Methodology And Is Unreliable.**................................................................................................15

**VII.   The Court Should Grant Injunctive Relief Under Fed.R.Civ.P. 23(b)(2).** 18

**VIII.   Conclusion** ...................................................................................................19

## **REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION**

Plaintiff Tammy Devane ("Devane" or "Plaintiff") hereby replies in support of her Motion for Class Certification (hereinafter "Motion") (Dkt. No. 153) and in response to the Defendant Walmart Inc., f/k/a Wal-Mart Stores, Inc.'s ("Walmart" or "Defendant") Opposition (hereinafter "Opp.") (Dkt. No. 158).

### I. Devane is Included in the Class Definition Which Is Substantively The Same As What Was Plead in The Operative Complaint.

Walmart's Class Definition argument is a gotcha one. When it is viewed in light of the long history of this litigation, it fails to withstand even minimal scrutiny. Devane is a citizen of Florida, Dkt. 105 at ¶ 4, but made some of her Shake purchases while physically in Alabama at the Eufaula, Alabama Walmart. Opp. Exh. 8 at 3 and Exh. 4 58:9-12. The reason that Devane, a Florida citizen, made purchases in Alabama was that she has a farm in Georgia nearby the Eufaula, Alabama Walmart. Opp. Exh. 4 at 21:3-9. Defendant acknowledges this in prior filings and even sought, and won, a transfer of this case to the Middle District because Devane purchased "from the Eufaula Walmart." Dkt. 108 at 4.

There is no substantive difference between the class plead and the class moved for. Devane is a member of both the class plead in the Third Amended Complaint and the one sought in her Motion.[1] Walmart conflates citizenship and residency with

---

[1] It is also the same class definition moved for previously in this case. Dkt. 53 at 7. Judge Borden previously ruled on this issue finding that "the putative classes…include all purchasers of the Clean Label Shakes from Walmart stores in Alabama during the class period." Dkt 88 at 18 n. 4.

3

purchasing "in Alabama." *See* Opp at 9. Neither class definition is conditioned upon the citizenship or residency of a person, so the fact that Devane is a Florida citizen is not relevant; rather, the class definitions are conditioned upon purchasing "from an Alabama Walmart" and while "in Alabama." *Compare* Dkt. 105 at ¶ 80 with Motion at 7. Additionally, the Court can require putative class members to confirm that they were physically in Alabama when they made a purchase from Walmart.com.[2] In addition, Walmart's records show Walmart.com purchases and identify the stores from which they were "sourced" or "delivered." Opp. Ex. 6 at 58:5-9.[3] Thus, ascertaining who purchased while in Alabama is manageable.

## II. Devane Has Standing.

Under the Eleventh Circuit's decision in *Debernardis*, "an economic injury qualifies as a concrete injury" for purposes of standing, and "[a] person experiences an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." *Debernardis v. IQ Formulations, Ltd. Liab. Co.*, 942 F.3d 1076, 1084 (11th Cir. 2019).

---

[2] Judge Borden has previously held: "This interpretation better aligns with choice of-law principles. *See, e.g.*, *Morris v. SSE, Inc.*, 912 F.2d 1392, 1396 (11th Cir. 1990) (noting Alabama law governs claims sounding in contract if the purchase was made in Alabama); *Hughes Assocs., Inc. v. Printed Cir. Corp.*, 631 F. Supp. 851, 854 (N.D. Ala. 1986) (same)." Dkt. 88 at 18 n. 4.

[3] Alternatively, Devane seeks certification of any class the Court orders as it is within the Court's discretion to alter the class definitions. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930-31 (11th Cir. 1983); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000).

### A. Devane Has Standing Because She Purchased The Clean Label Shakes.

Devane was damaged because she purchased these Shakes based on the deceptive labeling, and she would not have bought them had she known their contents did not match the labeling. Motion, at p. 28, n. 14; Motion Exs. 6 & Ex. 9, Opp. Ex. 4 at 33:11-15, 33:24-34:3, 39:1-4.

In the Eleventh Circuit, a plaintiff may suffer an injury in fact simply because they purchase a product, as a result of a deceptive act or an unfair practice, that they would not have purchased otherwise. *Debernardis*, 942 F.3d at 1088; *Yachera v. Westminster Pharm., LLC*, 477 F. Supp. 3d 1251, 1264 (M.D. Fla. 2020) ("Plaintiffs suffered a concrete monetary injury when they paid for thyroid medication that they plausibly allege they would not have purchased had they known it did not contain the amount of API they thought they were receiving."); *Reynolds v. Wal-Mart Stores*, Inc., No. 4:14CV381-MW/CAS, 2015 U.S. Dist. LEXIS 53405, 2015 WL 1879615, at *2 (N.D. Fla. Apr. 23, 2015) ("A plaintiff can meet the injury-in-fact requirement with a showing that by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, ***or bought it when they otherwise would not have done so***.") (emphasis added); *Carder v. Graco Children's Prods.*, No. 220-CV-00137-LMM, 2021 U.S. Dist. LEXIS 165492, at *8-16 (N.D. Ga. Aug. 31, 2021) (finding plaintiffs allegations that they would not have purchase the Booster Seats had they known that Defendant's

representations about the Booster Seats' features and functionality were untrue and misleading sufficient for purposes of standing). Accordingly, Devane has standing based upon her purchase of the "Clean Label" Shakes.

### B. Devane Paid A Premium For The Clean Label Shakes.

Devane maintains she paid a premium for the Pediatric Shakes. Motion, at p. 28, n. 14. This is essentially a benefit of the bargain damages, which is "calculated based on the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Debernardis,* 942 F.3d at 1084. Defendant argues that Devane did not pay a premium because Walmart charged the same amount for the original formula and the "Clean Label" Shakes. Opp. at 22-23.

In making this argument, Walmart ignores the fact that just because Devane paid the same price for the "Clean Label" Shake, she paid more than its market value. Whether she, and the Class, paid more than they should have is not a question properly decided at this stage. Indeed, whether Devane paid a "premium" would "more properly be addressed in the context of a dispositive motion, rather than in a motion to dismiss or a motion for class certification." *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 U.S. Dist. LEXIS 1640, at *13-14 (N.D. Cal. Jan. 7, 2014).

### III. The Proposed Classes Are Ascertainable.

With respect to ascertainability, Judge Borden has already found that the same class definition sought here was ascertainable under the same set of facts. Dkt. 88 at 16-18. Devane's proposed classes easily meet the *Cherry* standard for ascertainability. *See* Motion, at pp. 7, 26-28.[4] Membership in each of the classes turns on the objective, verifiable criterion of having purchased the Shakes within a particular date range. *Id.*

If necessary, self-identification through proof of purchase or affidavit of class members is a "manageable process." *See, e.g.*, *Collins v. Quincy Bioscience, LLC*, No. 19-CV-22864-COOKE/GOODMAN, 2020 U.S. Dist. LEXIS 48236, at *63-64 (S.D. Fla. Mar. 19, 2020) (collecting cases). Here, affidavits can be used to certify, and corroborate with Walmart's records, that a class member is a member of the class who actually purchased a "Clean Label" Shake. *Id.*

### IV. Devane is Typical and Adequate.

#### A. There is No Requirement that All Claims Brought by a Putative Class Representative Must Survive for Her to be Adequate.

Walmart raises a novel argument whereby it argues that a putative class representative must have brought and succeeded on all legal claims potentially

---

[4] At the very minimum, as the Court may alter the class definition, it may also certify only the class which Walmart admits is ascertainable – "the purchaser[s] of 52,405…transactions." Opp. at 11, n. 4.

available to her in order to be typical and adequate. Walmart cites no cases on point, and the cases it does cite are inapposite. For example, Walmart's only cite to an Eleventh Circuit case cites dicta and is a decision on a motion to dismiss. *See* Opp. At 13 (citing *Settle v. PHBC Mktg., LLC*, No. 8:24-cv-404-SPF, 2024 U.S. Dist. LEXIS 136072, at *6 (M.D. Fla. Aug. 1, 2024)). Furthermore, Devane did not "abandon" a claim, as Walmart argues, but rather brought the ADTPA claim losing it on a motion to dismiss. Dkt. 141 at 11. Simply put, there is no law which supports an argument that the dismissal of a claim (where other legal claims remain) is grounds for denying class certification. Doing so would essentially curtail any and all class actions as one would be hard pressed to find a single consumer class action where each claim plead survived a motion to dismiss.

### B. Devane Purchased the Clean Label Shakes And No Contrary Evidence Exists.

Walmart is flatly wrong that "there is no evidence outside of Devane's testimony that she actually purchased the Clean Label Shakes." Opp. at 15. Walmart is also misleading when it argues Devane "cannot remember the exact dates" of her purchase. Opp. at 15. However, what is true, is that Walmart presented no evidence contradicting Devane's evidence showing that she purchased the Shakes.

In addition to Devane's testimony confirming her purchase and the time period of purchase, Devane's discovery responses also confirm them. Opp. Ex. 8 at 3 ("Plaintiff purchased the Shakes on multiple occasions, in Alabama and Florida,

8

and primarily in Eufaula, Alabama. To the best of her recollection, she purchased them from September 2021 through January 2022."). Furthermore, it is improper for Walmart to argue that "Devane cannot remember the exact dates she allegedly purchased the shakes," Opp. at 15, because Walmart never asked her that question or a similar one that would have elicited exact dates. *See* Opp. Ex. 4. Devane's testimony is clear and not challenged by any other evidence that she purchased the Clean Label Shakes in Alabama. Opp. Ex. 4 at 21:16-21 (confirming purchases from when Devane's granddaughter was two through "January of 2022.").

The reference to a "banana" shake is also not as Walmart presents it. Devane mentioned banana in passing when asked whether she had anything to add to her interrogatory response. Opp. Ex. 4 at 40:24-41:2 ("I think they had banana at one time, I'm thinking, so I think I've tried them all."). While she may be wrong about purchasing a banana shake, the existence of non-existence of a banana shake is irrelevant.

**C. Walmart's Reference to Devane's Other Class Actions is a Red Herring.**

On April 21, 2022, the date on which the undersigned emailed Devane asking if she had purchased the Clean Label Shakes at issue, she was a client of the undersigned. There is nothing improper about asking Devane what the undersigned asked her. *See* Opp. Ex. 13. In April 2022, the undersigned had recently learned that Judge Borden found Morris inadequate. So, in anticipation of seeking leave to

9

amend the complaint, the undersigned fulfilled his duties as putative class counsel by seeking another putative class representative.

Just as Walmart's counsel would be unlikely to discuss with Walmart his client's other cases and confidential matters, the undersigned did not and had no reason to discuss with Devane in 2019 the instant case. Indeed, Devane testified that it was not until 2022 when she learned of the instant case. Opp. Ex. 4 at 15:25-16:22. This makes sense because in 2019, Morris was the named plaintiff and there was no need for a substitution until 2022 when the undersigned contacted Devane. Any innuendos that Devane's inclusion in this case was nefarious or improper is unsupported.

Finally, the mere fact that over the span of more than five years Devane has brought two other putative class actions has no bearing on this class action. Indeed, Walmart cites no case which supports that argument.

**D. Walmart Waived Its Right to Demand Arbitration.**

The instant case was filed on April 30, 2019 with Morris as plaintiff. Morris used Walmart.com, thus according to Walmart, Morris (and all others who used Walmart.com) were subject to an arbitration agreement and class action waiver. *See* Dkt. 58-5 at 49:11-15 and Opp. at 17. Walmart has argued, and the Court has already found, that Morris's case is the same action as the one brought by Devane. Dkt. 141 at 10. On March 18, 2021, in the same "action," counsel for Walmart stipulated that

10

"Walmart will not be asserting any right to arbitration as against Ms. Morris or the purported class." Exh. A. Intense and expensive litigation continued for the next three years. Some three plus years later, in the same "action," counsel for Walmart seemingly reversed course but importantly caveated that "Walmart will not be arguing that arbitration effects Ms. Devane's claims **or prevents a class from being certified**." Exh. B (emphasis added). Thus, until Walmart's Opposition was filed, Devane had relied upon Walmart's stipulation that it would not argue arbitration or class waivers would prevent a class from being certified.

Walmart's conduct constitutes a waiver of any right it may have to compel arbitration or to enforce a class action waiver in any arbitration agreement. "Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right." *Johnson v. KeyBank Nat'l Assoc (In re Checking Account Overdraft Litig.)*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1365 (11th Cir. 1995)). "Waiver occurs when both: (1) the party seeking arbitration 'substantially participates in litigation to a point inconsistent with an intent to arbitrate'; and (2) 'this participation results in prejudice to the opposing party.'" *Johnson v. KeyBank Nat'l Assoc (In re Checking Account Overdraft Litig.)*, 754 F.3d 1290, 1294 (11th Cir. 2014) (citing *Morewitz* 62 F.3d at 1366. "Prejudice" occurs "when the party opposing arbitration undergoes the types of litigation expenses that

11

arbitration was designed to alleviate." *Id*. Here, expenses have occurred for more than five years in litigation; had Walmart asserted arbitration at the outset of this action, those expenses would have been curtailed.

Despite Walmart having knowledge of the existence of an arbitration agreement more than five years ago, it failed to assert the defense of arbitration or class action waiver. It extensively litigated this action such that there are more than 150 docket entries with multiple rounds of complex briefing required. Until more than five years into this litigation, including in multiple answers to complaints, Walmart has never once asserted the defense of arbitration or class action waiver. In fact, its latest stipulation indicated it would not assert arbitration as a defense, yet it did. Walmart's conduct "manifests the party's intent to waive arbitration." *Morewitz* 62 F.3d at 1366. Thus, under controlling Eleventh Circuit precedent it has waived any right to assert arbitration or class waivers. To allow Walmart to do so at this late stage would be prejudicial and unfair.[5]

### V. A Class Action Is Superior to Walmart's Satisfaction Guarantee

It is not disputed that Walmart advertises a return guarantee. However, that return "guarantee" is not what it may seem at first glance. Walmart fails to inform

---

[5] Were this Court to disagree with the waiver argument, Devane respectfully asserts that Walmart's unilateral very late stage arbitration arguments require further analysis and discovery. It may even require additional briefing. Finally, as noted infra, the Court is able to modify the proposed class definition to exclude persons subject to a valid arbitration and class waiver agreement.

the Court that the return "guarantee" is limited by Walmart's return terms and conditions:

> **Not 100% Satisfied? We Are Happy to Help.**
>
> To exchange or return an item, here is what you need to know:
>
> You have **90 days after purchase or upon receipt** to exchange or return an item unless noted in our exceptions. Please provide your store receipt or Walmart.com/Walmart Business order number and we will refund your purchase to the original form of payment.

https://corporate.walmart.com/policies#return-policy, last visited November 15, 2024. The "guarantee" is conditioned upon the following: 1) extends only to 90 days after purchase, 2) requires a store receipt or order number, and 3) requires a customer to take the time to return the Shake to Walmart. Devane's class action, if certified, would not be so limited. Additionally, the "guarantee" requires that the actual Shake be returned to Walmart for a refund or replacement. Devane's class action, were it to be certified, is not limited to those putative class members who still have empty Shakes from years ago. Thus, a class action is the superior method and Walmart's "guarantee" is insufficient.

## VI. Important Questions Of Fact And Law Predominate.

### A. As With Ascertainability, Walmart Holds Devane To A Standard Divorced From The Law On Predominance.

With respect to predominance, Walmart attempts to parse out the proposed

classes based on two issues: liability and damages.[6] Opp., at pp. 20-27. First, Walmart maintains that individual issues predominate as to why class members bought the Shakes and whether that class member bought them because of the "Clean Label." *See, e.g.* Opp., at p. 21-22. Second, Walmart maintains that individual issues regarding the amount of damages predominate. *See, e.g.,* Opp., at pp. 26-27. Walmart is wrong on both counts, according to the Eleventh Circuit's decision in *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 988 (11th Cir. 2016).

In *Carriulo*, the Court – denying arguments nearly identical to those Walmart makes in its Opposition – stated as follows:

> In this case, the district court found the predominance requirement to be satisfied by an essential question common to each class member: whether the inaccurate Monroney sticker provided by General Motors constituted a misrepresentation prohibited by FDUTPA. General Motors claims that the liability determination will be highly individualized because the buying and leasing experiences of each proposed class member were not uniform. General Motors points out that some class members may have known that the safety ratings were inaccurate; some may not have been aware of the Monroney sticker; and each member negotiated the purchase or lease price individually with the dealer from whom the member purchased or leased the vehicle.
>
> But these objections do not defeat the district court's determination that common questions predominate. …. Thus, General Motors is incorrect to suggest that the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it. As the district court correctly observed, these arguments simply seek a reliance inquiry by another name.

---

[6] Walmart is also wrong when it says Devane failed to present a damages model. *See* Motion, at pp. 6, 14, 15, 20., 28, 29, & 29, n. 17 (setting forth the damages claimed, which are the same for all Class members).

823 F.3d 977, 985-986.  Like the Monroney sticker at issue in *Carriulo*, Walmart previously conceded that Plaintiff has identified "a single common question—the truth or falsity of the label claims."  Dkt. 59 at p. 23.  Under *Carriulo*, this alone should be sufficient for purposes of class certification on the issue of predominance. Moreover, "[i]t is axiomatic that individualized damages calculations are generally insufficient to foreclose class certification, and particularly so where the central liability question is common to each class member.  *Monroe Cty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 397 (N.D. Ga. 2019) (*citing Carriuolo*, 823 F.3d at 988 (11th Cir. 2016)); *see also In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 686 (N.D. Ga. 2016).  Accordingly, Walmart's arguments apply any incorrect standard to the issue of predominance, and therefore, they should be denied.

### B. Butler's Report Suffers From Flawed A Methodology And Is Unreliable.

Walmart attempts to bolster its Opposition with the use of a flawed and unreliable "Purchase Survey" by Sarah Butler. *See*, Opp., at pp. 5-7, 23. Ms. Butler's expert report or "Purchase Survey" is dated August 3, 2021 which is before the operative complaint in this case was filed.  Opp. Ex. 9 at 38.  It has not been updated to include pertinent facts; namely, her expert report refers to a former plaintiff and a non-operative complaint.  *See* Opp. Ex. 9 at 4 (basing her opinion on "Kaylan Morris" and the "Second Amended Complaint.").   For this reason alone, Ms.

15

Butler's opinions, and Walmart's reliance on them, should have no bearing. *Gomez v. Dadeland Dodge, Inc.*, No. 19-23682-Civ-WILLIAMS/TORRES, 2020 U.S. Dist. LEXIS 73701, at *11-12 (S.D. Fla. Apr. 24, 2020).

Assuming, arguendo, that Butler's report somehow survives this fatal flaw, Butler's deposition testimony demonstrates just how unpersuasive the results of this survey are and how flawed her methodology is. First, Butler did not independently verify that respondents purchased a Shake. Dkt. 61-5, Butler Depo., at 49:7-20. So, anyone, not just actual purchasers of the "Clean Label" Shakes, could have taken this survey. Even though Walmart has this data, and has produced this data, Butler did not use it to verify purchasers or validate that these *paid* survey takers had actually purchased the Shakes. *Id.*; *see also, id.*, at 100:2-8 (did not verify purchasers based upon email address); 92:1-7 (respondents were paid in points and only paid upon successfully getting to the end of the survey and through trap questions which require specific answers to proceed); 94:22-95:3 (Respondents are a subset of the U.S. population who sought out the survey marketing group to be paid for participating.); 101:11-14 (Butler does not know how many paid surveys respondents participated in); 34:16-17 (Butler did not review Walmart's 30b6 testimony relating to advertising, never went to a Walmart store to observe how the Shakes are advertised, and never spoke to an actual verified Shake customer). In fact, Butler failed to review, or even consider, any of the actual data produced by

16

Walmart of known Shake purchasers when designing the survey. Dkt. 61-5, Butler Depo., at 37:20-38:8; 43:12-19.

Second, Butler's survey was comprised of people across the entire United States, not just Alabama, despite knowing that the Second Amended Complaint (not the operative complaint, notably) contained a class of those who purchased in Alabama. Dkt. 61-5, Butler Depo., at 114:15-115:7; *cf.* Dkt. No. 42, at ¶81. In designing her study, she wrongly assumed the class was not restricted in any way to geographic location, yet Plaintiff moves only for the Alabama class. Dkt. 61-5, Butler Depo., at 154:10-20. Accordingly, her flawed survey produced unreliable results of unverified alleged purchasers outside of Alabama – a set of persons who are not in the Class.

Third, Butler's survey was even inconsistent with how she had performed surveys for Walmart in the past on similar product issues. Specifically, in a similar survey conducted for Walmart testing an analogous labelling claim, Butler showed respondents pictures and labels of the product at issue. Dkt. 61-5, Butler Depo., at 11:5-10, pp. 20-23. However, in this survey, Butler never showed respondents pictures of the Shakes, its advertising, or its labels. Dkt. 61-5, Butler Depo., at 45:7-15. Instead, Butler relied solely on paid and unverified respondents' recall of reasons for purchase one, two, and up to three years ago – without showing the respondents any pictures or labels of the Shakes. Ex. 14, Butler Depo., at 72:9-18. Even though

she failed to consider it, Butler's demonstrated recall bias is real. When questioned about recall bias and her own recall of reasons for purchasing bread, Butler was unable to even correctly identify the name of the bread – calling it "Dan's Killer Bread" when the correct name is "Dave's Killer Bread." Dkt. 61-5, Butler Depo., at 174:2-5. She was also unable to recall whether it contained soy, was enriched, or was vegetarian. *Id*.

Lastly, Butler failed to calculate the margin of error and admits her survey was a convenience sample only and not a probability sample. Dkt. 61-5, Butler Depo., at 118:14-19 and 119:1-5. This alone is a second fatal flaw of her survey as it precludes anyone from determining how confident she is in her results. In sum, Butler's survey of paid respondents did nothing to verify their actual purchase of the Shakes. Interestingly, it is on this same ground that Walmart has faulted Plaintiff's claim arguing that she cannot certify a class because she has no proof of purchase. While Plaintiff explains that actual proof of purchase is not required, it is disingenuous for Walmart to fault Plaintiff for something that its own paid expert failed to consider.

## VII. The Court Should Grant Injunctive Relief Under Fed.R.Civ.P. 23(b)(2).

Walmart argues that Devane lacks standing to seek injunctive relief because she does not allege that she will purchase the Shakes in the future, and if she does, her harm will be self-inflicted. Opp., at pp. 27-28. However, Walmart's argument

ignores that courts have held that previously deceived consumers have standing to seek injunctive relief if they allege that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would require that "a plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, [and] then injunctive relief would never be available in false advertising cases, a wholly unrealistic result" for the very harm which consumer protection statutes are designed to redress. *Davidson v. Kimberly-Clark Corp.*, 889 F. 3d 956, 969-970 (9th Cir. 2018) (holding "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."). Accordingly, Devane maintains standing to seek injunctive relief regardless whether she intends to purchase another Shake again in the future.

## VIII. Conclusion

As demonstrated above and in Devane Motion, the requirements of Rule 23(a) and 23(b)(3) are met for the Classes. Therefore, Devane respectfully requests that the Court certify each proposed Class, appoint undersigned counsel as class counsel under Rule 23(g), and allow Devane thirty days following certification to present the Court with a proposal for class notice.

DATED this 15th day of November 2024.

Respectfully Submitted,

/s/ Taylor C. Bartlett
Taylor C. Bartlett (ASB-2365-A51B)
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, Alabama 35203
Phone: 205.326.3336
taylor@hgdlawfirm.com


J. Stuart McAtee (ASB-0868-T52J)
ALEXANDER SHUNNARAH PERSONAL INJURY ATTORNEYS
3626 Clairmont Avenue South
Birmingham, Alabama 35222
Phone: 205.983.8116
smcatee@asilpc.com


## CERTIFICATE OF SERVICE

I certify that on November 15, 2024, I filed the foregoing using the CM/ECF system that will send electronic notice of such filing to all counsel of record.

/s/ Taylor C. Bartlett
Attorney for Plaintiff