IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| TAMMY DEVANE, on behalf of herself and all others similarly situated | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Civil Action No. 02:22-cv-00709-SMD<br>) |
| WALMART INC. f/k/a WAL-MART STORES, INC., | )  **OPPOSED**<br>)<br>) |
| Defendants. | )<br>) |

**WALMART'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Walmart Inc. ("Walmart"), respectfully requests that the Court enter summary judgment and dismiss the Class Action Amended Complaint ("Complaint"), pursuant to Federal Rule of Civil Procedure 56.

**INTRODUCTION**

All of Plaintiff's claims are premised on the unsubstantiated allegations that: 1) Walmart's Vanilla Parent's Choice Pediatric Shakes claim to be "Naturally Flavored" is false because the ingredient list does not contain vanilla; and 2) all of the Parent's Choice Pediatric Shakes claims to contain "No Synthetic Color, Flavor or Sweeteners," are false because the shakes contain maltodextrin. While Plaintiff's barebones allegations were sufficient to avoid a motion to dismiss, the court made clear "[t]he task for [Devane] going forward will be to marshal evidence tending to

3257570.1

prove," these allegations. *Morris v. Walmart Inc.*, No. 2:19-cv-650-GMB, 2020 U.S. Dist. LEXIS 173193, at *11 (N.D. Ala. Sep. 22, 2020). Now that discovery is complete, the record demonstrates Plaintiff wholly failed to marshal any support for her claims. As a result, Walmart is entitled to summary judgment for all of the following reasons:

*First,* Plaintiff has not adduced any evidence that the Vanilla flavored Parent's Choice Pediatric Shakes are artificially flavored. In fact, Walmart's expert—providing the only evidence on the issue—found the results of his testing are consistent with the vanilla shakes' claim to be "Naturally Flavored."

*Second*, Plaintiff has not put forward any evidence the Parent's Choice Pediatric Shakes use maltodextrin as a sweetener, or even that the maltodextrin used in the shakes is "synthetic." Again, the only evidence on the issue is from Walmart's expert, who opined that maltodextrin would not be added as a sweetener, and, even if it were, contrary to the Complaint's allegations, not all maltodextrins are "synthetic."

*Third*, even if Plaintiff could prove the Shakes' label claims were false—she cannot—Plaintiff's claims still fail as she has not put forward any evidence that would allow her damages to be calculated with a reasonable degree of certainty.

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. The nonmoving party then has the burden of showing summary judgment is improper by coming forward with 'specific facts' demonstrating a genuine dispute." *MJ Mod. Trucking, Inc. v. Stops*, No. 1:23-cv-898-MLB, 2025 U.S. Dist. LEXIS 56932, at *7-8 (N.D. Ga. Mar. 27, 2025). "'Where, as here, the non-moving party bears the burden of proof on an issue at trial, the moving party' may prevail on summary judgment by show[ing] that the non-moving party has no evidence to support its case[.]'" *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1357 (11th Cir. 2022) (quoting *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1177 (11th Cir. 2020).

## STATEMENT OF UNDISPUTED FACTS

### The Shakes

1. In 2014, Walmart began selling the original Parent's Choice Pediatric Shakes. Ex. 1, Redford Depo., 13:22-14:6.

2. The labels for these original Shakes did not contain the "Naturally Flavored" and "No Synthetic Color, Flavor or Sweeteners" statement. *Id.* at 16:9-17:5.

3. In fact, the labels made clear that the original Shakes contained artificial flavors and sucralose (an artificial sweetener). *Id.* at 16:9-17:5, 158:18-159:9.

4. In 2017, Walmart began reformulating the Shakes. This reformulation resulted in the "Clean Label" Shakes. The new Clean Label Shakes removed the artificial flavors and sweeteners, and, for the first time, included the label claims at issue here. Ex. 1, Redford Depo., 16:9-17:20, 64:17-20, 69:3-6.

5. In late February 2018, the Clean Label Shakes were first shipped to the stores. (*Id.* at 146:15-147:1). The shipment of the Clean Label Shakes occurred prior to all of the original Shakes being sold. *Id.* at 96:9-17.

6. The label for the vanilla flavored Clean Label Shakes states that the shakes are "Naturally Flavored." Doc. 121 at ¶ 12.

7. The label for all of the Clean Label Shakes states that they contain "No Synthetic Color, Flavor or Sweeteners." *Id.*

8. The vanilla flavored Clean Label Shakes do not list vanilla in the ingredient list. Instead, the ingredient list states it contains "Natural Flavors." *Id.* at ¶ 14.

9. Dr. Sean O'Keefe who is a professor in the Department of Food Science and Technology at Virginia Polytechnic Institute and State University (Virginia Tech), analyzed the vanilla flavored Clean Label Shakes using a gas chromatograph mass spectrometer and determined that the vanilla shakes contain vanillin, which "is consistent with the Parents Choice claims to be naturally flavored." Ex. 2, O'Keefe Report at p. 4-7.

10. According to Dr. O'Keefe, "synthetic vanilla almost always contains ethyl vanillin," and "no ethyl vanillin was observed in the Parents Choice shake." *Id.*

11. All of the Clean Label Shakes contain maltodextrin. Doc. 121 at ¶¶ 14-16.

12. "Maltodextrin is a '...nonsweet nutritive saccharide polymer...'" Ex. 2, O'Keefe Report at p. 7.

13. "Maltodextrins are added to foods in a liquid shake product such as the Pediatric Shake for body, mouthfeel and viscosity control." *Id.* at 8.

14. The maltodextrins also "provide a nutritionally available carbohydrate without the sweetness of sucrose or dextrose." *Id.*

15. The sweeteners in the Shakes "include sugar, monk fruit extract and stevia leaf extract. There would be no reason to add a maltodextrin as a sweetener." *Id.*

16. In Dr. O'Keefe's experience he has never seen maltodextrin used to sweeten a product. *Id.* at 9.

17. Additionally, not all maltodextrins are synthetic. "Maltodextrins can be formed through natural processes." *Id.* at 8.

18. Plaintiff never deposed Dr. O'Keefe, and Plaintiff never identified an expert to rebut Dr. O'Keefe's expert opinions.

Plaintiff's Damages

19. Ms. Devane testified that she does not remember how many times she purchased the Shakes, and she does not remember how much she spent purchasing the Shakes. Ex. 3, Devane Depo. at 41:3-8.

20. Ms. Devane also testified that she got some value from the Shakes, but it is her position that she did not receive the full value of the Shakes. *Id.* at 33:5-15.

21. Walmart issued an interrogatory asking Plaintiff to "Identify all damages allegedly suffered and the method for calculating those damages for Ms. DeVane and the purported class as a whole." Ex. 4, Plaintiff's Objections & Responses to Defendant's First Set of Interrogatories, Response No. 6.

22. Plaintiff responded: "The amount due to Plaintiff has not been calculated, in part because the Plaintiff's investigation is not complete. Any amount due to Plaintiff for attorney's fees has not been calculated and is not reasonably calculable at this time. Further, any amount due as class relief has not been calculated

6

3257570.1

and may depend on information obtained from Defendant in discovery. Additionally discovery has just begun in this case and Plaintiff reserves the right to amend." *Id.*

23. When Ms. Devane was deposed, she confirmed she still had not calculated the damages she claims she is owed. Ex. 3, Devane Depo. at 48:14-49:4.

24. Plaintiff never served anything supplementing her initial response to Walmart's interrogatory requesting her damages calculations.

25. Pursuant to the Court's Scheduling Order, the Discovery Cutoff in this case was on June 16, 2025.

## ARGUMENT

**I. THERE IS NO EVIDENCE THE VANILLA SHAKES ARE NOT NATURALLY FLAVORED.**

Judge Borland made clear, in his order on the Motion to Dismiss, that "[t]he task for [Devane] going forward will be to marshal evidence tending to prove that the components identified only as 'Natural Flavors' on the shakes' labeling do not include any natural flavors derived from vanilla within the meaning of the FDCA." *Morris v. Walmart Inc.*, 2020 U.S. Dist. LEXIS 173193, at *11. Ms. Devane never marshalled any such evidence.

The Complaint alleges the vanilla flavored Clean Label Shakes are not naturally flavored because they do not list "vanilla, vanilla beans, vanilla extract, or any other natural flavor ingredient derived from Vanilla on its list of ingredients." Doc. 105 at ¶¶ 43. Plaintiff's allegation, however, is not evidence that the Clean

Label Shakes are not "Naturally Flavored." Indeed, the vanilla Clean Label Shakes' ingredient list specifically includes "Natural Flavors." Doc. 121 at ¶ 14. The FDA expressly permits natural flavorings—like the vanilla found in the Shakes—"may be declared [on ingredient lists] as 'natural flavor.'" 21 C.F.R. § 101.22(h)(1). Compliance with the FDA's regulations is certainly not evidence that the Clean Label Shakes' "Naturally Flavored" claim is false.

The Complaint implies Walmart lied when it listed "Natural Flavors," on the ingredient list, but Ms. Devane has put forward no evidence to support her implication. The only analysis of the Clean Label Shakes was performed by Walmart's expert—Dr. Sean O'Keefe. As outlined in Dr. O'Keefe's report, he analyzed the vanilla flavored Clean Label Shakes to determine whether the flavoring was natural or artificial. Ex. 2, O'Keefe Report at p. 6. Dr. O'Keefe determined the Shakes were flavored with vanillin, which is "consistent with the Parents Choice claims to be naturally flavored." *Id.* at p. 7. Further, "[s]ynthetic vanilla almost always contains ethyl vanillin," but "[t]here was no ethyl vanillin observed in the Parents Choice shake." *Id.* In sum, the undisputed evidence demonstrates the "Naturally Flavored," claim on the vanilla Clean Label Shakes is true.

II. **THERE IS NO EVIDENCE THE MALTODEXTRIN IS A SYNTHETIC SWEETENER.**

Ms. Devane also failed to put forward any evidence that the Clean Label Shakes are using maltodextrin as a sweetener or that the maltodextrin used is

8

synthetic. First, there is no evidence that maltodextrin is used as a sweetener in the Shakes. The Complaint recognizes that not all maltodextrins are suitable for use as sweeteners. Doc. 105 at ¶ 57. Plaintiff, however, has adduced no evidence as to the sweetness level of the maltodextrin that is actually used in the Clean Label Shakes. Again, the only evidence comes from Dr. O'Keefe. According to Dr. O'Keefe, the maltodextrin used in the Shakes "are added to foods in liquid shake product such as the Pediatric Shakes for body, mouthfeel and viscosity control." Ex. 2, O'Keefe Report at p. 8. The sweeteners in the Shakes "include sugar, monk fruit extract and stevia leaf extract. There would be no reason to add maltodextrin as a sweetener." *Id.* In Dr. O'Keefe' experience, he has "never" seen maltodextrins used "to sweeten a product." *Id.* at p. 9. Dr. O'Keefe's opinion is consistent with the FDA's regulations that describe Maltodextrin as a "nonsweet nutritive saccharide polymer." 21 C.F.R. §184.1444(a). Ms. Devane has not, and cannot, put forward any evidence to rebut Dr. O'Keefe's report.

Even if Ms. Devane were able to demonstrate the maltodextrin used in the Clean Label Shakes was being used as a sweetener, she would still have to prove the maltodextrin used was also synthetic. According to Dr. O'Keefe, "Maltodextrins can be formed through natural processes." Ex. 2, O'Keefe Report at p. 8. In other words, contrary to the Complaint's allegations, maltodextrins are not by definition synthetic. Here, Plaintiff cannot put forward any evidence that would indicate the

9

maltodextrin used in the Clean Label Shakes was made using synthetic processes. As such, Walmart is entitled to summary judgment on Plaintiff's synthetic sweeteners claims.

### III. REGARDLESS, PLAINTIFF'S CLAIMS FAIL BECAUSE SHE CANNOT PUT FORWARD ANY METHOD FOR CALCULATING HER DAMAGES WITH REASONABLE CERTAINTY.

Plaintiff's remaining claims of unjust enrichment, Moss-Magnuson Warranty Act ("MMWA"), breach of express warranty, and breach of implied warranty,[1] all require her to either prove she has suffered damages or, in the case of unjust enrichment, that Walmart gained some unjust benefit. *Rogers v. Tiffin Motor Homes, Inc.*, No. 23-164-MU, 2025 U.S. Dist. LEXIS 109624, at *33-34 (S.D. Ala. June 10, 2025) (breach of warranty); *Id.* at *39 (MMWA claim); *Autery v. Pope*, 260 So. 3d 846, 851 (Ala. Civ. App. 2018) (unjust enrichment). Under Alabama law, "damages may be awarded only where they are reasonably certain." *Industrial Chemical & Fiberglass Corp. v. Chandler*, 547 So. 2d 812 (Ala. 1988). "Damages may not be based upon speculation." *Id.*

"[U]nder Alabama law, damages recoverable under a breach of warranty claim are measured by 'the difference . . . between the value of the goods accepted and the value they would have had if they had been as warranted.'" *Holmes v. Kabco Builders, Inc.*, No. 07-0069-WS-C, 2007 U.S. Dist. LEXIS 19399, at *17 (S.D. Ala.

---

[1] Plaintiff also brought a claim under the Alabama Deceptive Trade Practices Act, but the Court previously dismissed that claim. Doc. 141.

10

Mar. 15, 2007) (quoting ALA. CODE § 7-2-714(2) & (3)). For a claim of unjust enrichment, a plaintiff must prove "the value of the benefit gained by the defendant." *Autery*, 260 So. 3d at 851. Here, assuming Plaintiff could prove her claims (she cannot) those damages for breach of warranty and unjust enrichment would be the same; the amount Plaintiff supposedly overpaid would be the same as the value of the unjust benefit gained by Walmart. Plaintiff, however, cannot prove either number with "reasonable certainty."

For starters, Plaintiff testified that she does not know how many of the Clean Label Shakes she purchased or what she paid for those Shakes. Ex. 3, Devane Depo. at 41:3-8. It should be self-evident that Plaintiff cannot calculate the harm she suffered, or the benefit Walmart gained with any certainty, much less reasonable certainty, if she does not know what she paid for the Shakes. Even assuming Plaintiff knew the total she paid for the Shakes, she still could not prove her damages as there is no evidence as to the difference in price between the Shakes as advertised versus the value of the Shakes as received.

Ms. Devane testified that she received some value from her purchase of the Shakes. Ex. 3, Devane Depo. at 33:5-15. Accordingly, she cannot now claim she is entitled to a full refund under either a breach of warranty or unjust enrichment theory. *Debernardis v. IQ Formulations, Ltd. Liab. Co.*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Ordinarily, when a plaintiff purchases a product with a defect, the

product retains some value, meaning her benefit-of-the-bargain damages are less than the entire purchase price of the product."). The question then is what is the premium Ms. Devane claims to have paid as a result of the allegedly false advertisements? Unfortunately for Ms. Devane, she has not put forth any evidence from which a jury could reasonably calculate that premium. Walmart's interrogatories specifically asked Plaintiff to "[i]dentify all damages allegedly suffered and the method for calculating those damages for Ms. Devane and the purported class as a whole." Ex. 4, Plaintiff's Objections & Responses to Defendant's First Set of Interrogatories, Response No. 6. Ms. Devane responded, "The amount due has not been calculated." *Id.* Ms. Devane testified the same way at her deposition. Ex. 3, Devane Depo. at 48:14-14-49:4.

Ms. Devane never identified a damages expert, and never served anything to supplement her interrogatory response. Ms. Devane cannot, after Walmart has moved for summary judgment, amend her discovery responses to belatedly disclose the damages she claims to have suffered. The Rules of Civil Procedure are clear. If a party fails to supplement its discovery responses as required by Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Any "attempt to defeat summary judgment using never-before disclosed [information] is prejudicial and not harmless." *Phillips v.*

*Delta Air Lines*, No. 21-80413-CV, 2021 U.S. Dist. LEXIS 252336, at *8 (S.D. Fla. Nov. 18, 2021). Consequently, Ms. Devane cannot prove her damages to a reasonable degree of certainty, and Walmart is entitled to summary judgment as to all of her remaining claims.

## CONCLUSION

Plaintiff has failed to put forward any evidence to support any of her remaining claims against Walmart. The undisputed evidence demonstrates that the Shakes are "Naturally Flavored," and that the Shakes do not use maltodextrin as a synthetic sweetener. Regardless, Ms. Devane has not produced any evidence that would allow a jury to calculate any alleged damages with a reasonable degree of certainty. As such, Walmart is entitled to summary judgment as to all of Plaintiff's remaining claims.

Respectfully Submitted,

*s/ Cole R. Gresham*
Cole R. Gresham (ASB-8993-L47G)
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Seventh Floor
Birmingham, Alabama  35209
(205) 868-6000 Phone
(205) 868-6099 Facsimile
cgresham@starneslaw.com

*Attorney for Defendant*

3257570.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to the following:

W. Lewis Garrison, Jr.
Taylor C. Bartlett
Heninger Garrison Davis, LLC
2224 First Ave North
Birmingham, AL 35203
lewis@hgdlawfirm.com
taylor@hgdlawfirm.com

J. Stuart McAtee
Alexander Shunnarah
Personal Injury Attorneys
3626 Clairmont Ave South
Birmingham, AL 35222
smcatee@asilpc.com

Taylor A. Pruett
Schreiber Law Firm, P.C.
2129 First Ave North
Birmingham, AL 35203
taylor@schreiber.law

*s/ Cole R. Gresham*
Cole R. Gresham

3257570.1