```
                                                    Page 1

 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF ALABAMA
 2

 3    ------------------------------x
                                    :
 4    TAMMY DEVANE, on behalf of     :
      herself and all others        :
 5    similarly situated,           :
                                    :
 6           Plaintiff,             :
                                    :
 7    vs.                           :  CIVIL ACTION NO.:
                                    :  02:22-cv-00709-SMD
 8    WALMART INC. f/k/a            :
      WAL-MART STORES, INC.,        :
 9                                  :
              Defendant.            :
10    ------------------------------x

11

12

13    DEPOSITION OF:          TAMMY LYNN DEVANE

14

      TAKEN:                  Pursuant to Notice by
15                            Counsel for Defendant

16

      DATE:                   July 18, 2024
17

18    TIME:                   10:01 a.m. to 12:04 p.m.

19

      PLACE:                  Embassy Suites by Hilton
20                            Conference Room
                              10220 Palm River Road
21                            Tampa, FL 33619

22

      REPORTER:               KENNEDY RUSSELL, RPR, CRR
23                            Notary Public - State of
                              Florida

24

25                            Pages:  1 - 76
```

Page 2

1                        APPEARANCES
2

          TAYLOR C. BARTLETT, ESQUIRE
3         HENINGER GARRISON DAVIS, LLC
          2224 First Avenue North
4         Birmingham, AL 35203
5            Attorney for Plaintiff
6

7         COLE R. GRESHAM, ESQUIRE
          STARNES DAVIS FLORIE LLP
8         100 Brookwood Place, 7th Floor
          Birmingham, AL 35209
9

          Attorney for Defendant
10

11

                           INDEX
12                                              Page
13   Direct Examination By Mr. Gresham        4
14   Cross-Examination By Mr. Bartlett       67
15   Redirect Examination By Mr. Gresham     72
16   Certificate of Oath                     75
17   Reporter's Certificate                  76
18   Read & Sign Letter                      77
19   Errata Sheet                            78
20
21
22
23
24
25

Page 3

1                          EXHIBITS

                                                Page
2

    Defendant's Exhibit 1                        10
3   (Class Action Third Amended Complaint)
4   Defendant's Exhibit 2                        15
    (Plaintiff's Objections and Responses to
5    Defendant's First Set of Interrogatories)
6   Defendant's Exhibit 3                        17
    (Complaint from Tammy DeVane on behalf of
7    herself and all others similarly situated
     against Loreal USA)
8
    Defendant's Exhibit 4                        18
9   (The complaint styled "Tammy DeVane versus
     Church & Dwight Company.")
10
    Defendant's Exhibit 5                        49
11  (Plaintiff's Objections and Responses to
     Defendant's First Set of Requests for
12   Production to the Plaintiff)
13  Defendant's Exhibit 6                        51
    (Printout from PediaSure website for PediaSure
14   Grow & Gain shake)
15  Defendant's Exhibit 7                        59
    (Lawsuit titled Tammy DeVane, individually and
16   on behalf of all others similarly situated
     against Instant Brands, LLC)
17
    Defendant's Exhibit 8                        64
18  (Complaint in Gordon Food Service, Inc. versus
     Price Armstrong, LLC, et al. lawsuit)
19
20
21
22
23
24
25

Page 4

1                    TAMMY LYNN DEVANE,

2    the Deponent herein, having been first duly sworn,

3    was examined and testified as follows:

4                    DIRECT EXAMINATION

5    BY MR. GRESHAM:

6         Q    Ms. DeVane, I am Cole Gresham.  We met

7    earlier.  Thanks for being here today.  Just to cover a

8    few quick ground rules, if I ask a question you don't

9    understand, please let me know.  If you answer it, I'm

10   going to assume that you understood the question.  Is

11   that fair?

12        A    Yes.

13        Q    Okay.  If you need a break at any point, let

14   me know if you need to get a drink of water, go to the

15   restroom, whatever.  I would ask that you answer any

16   question that's sitting on the table first.

17             And also, I'm bad at this, and I will try

18   to be better about it, but he's trying to take down

19   our conversation here, so please try to let me

20   finish, and I'll try to let you finish your answer

21   so that he can take down a clean record.

22        A    Sure.

23        Q    And also, we'll need a "yes" or "no."

24   "Uh-huh" or nods of the head are hard to take down, so

25   just a verbalized, clear answer is what we need, okay?

1      A     Okay.

2      Q     Can you state your name for the record?

3      A     Tammy Lynn DeVane.

4      Q     Have you gone by any other names?

5      A     No.

6      Q     What did you do to get ready for the

7    deposition today?

8      A     I spoke with Taylor.

9      Q     Did you review any documents?

10     A     Yes.

11     Q     Which ones?

12     A     Just what we filed.

13     Q     Okay.  So, just your complaint?

14     A     Yes.

15     Q     Did you talk to anybody other than your

16   lawyers?

17     A     No.

18     Q     Have you talked to anybody other than your

19   lawyers about this case?

20     A     No.

21     Q     Are you married?

22     A     Yes.

23     Q     What's your husband's name?

24     A     Curtis.

25     Q     Curtis DeVane?

1      A    Yes.

2      Q    Have you talked to Curtis about this case?

3      A    I told him where I was coming, yes.

4      Q    Okay.  And I think you said that you purchased

5   these shakes for your granddaughter?

6      A    My granddaughter, yes.

7      Q    Is that your son, your daughter's --

8      A    My daughter's.

9      Q    Have you talked to your daughter about this

10   case?

11      A    Yes.

12      Q    Okay.  And what have y'all talked about?

13      A    I just told her what I was doing.

14      Q    Have you ever been convicted of any crime?

15      A    I have not.

16      Q    Have you ever declared for bankruptcy?

17      A    I have not.

18      Q    And I know you said your daughter is in

19   Alabama.  What's your daughter's name?

20      A    She doesn't live in Alabama.  She lives in

21   Plant City.

22      Q    Okay.  Did she ever live in Alabama?

23      A    No.

24           MR. BARTLETT:  Just give it a little pause

25      after he asks the question so that the record

```
 1        will be a little more clear.
 2             THE WITNESS:  Okay.
 3   BY MR. GRESHAM:
 4        Q    So, do you have any family members in Alabama?
 5        A    No.
 6        Q    And who are you seeking to recover for in this
 7   lawsuit?
 8        A    Myself.
 9        Q    No one else?
10        A    No.
11        Q    What do you hope to get out of this lawsuit?
12        A    I would like Walmart to change the label to
13   where it states exactly what it is and isn't.
14        Q    You're not seeking any monetary --
15        A    Yes.
16        Q    What are you seeking monetarily?
17        A    Whatever the court deems fit for the case.
18        Q    Do you have any idea of what that should be?
19        A    I don't.
20        Q    Have you been promised anything for this case?
21        A    I have not.
22        Q    Do you realize that you are -- that you've
23   been put forward as a class representative in this case?
24        A    Yes.
25        Q    What have you done in your position as a class
```

```
 1   representative in this lawsuit?
 2        A    Well, all I've done was buy the actual
 3   product.
 4        Q    Anything else?
 5        A    No.
 6        Q    Are you relying on your lawyers to direct this
 7   litigation?
 8             MR. BARTLETT:  Object to the form.
 9             THE WITNESS:  Yes.
10   BY MR. GRESHAM:
11        Q    Are you funding this litigation?
12        A    No.
13        Q    Who is?
14        A    The lawyer.
15        Q    Are you willing to bear the cost for this
16   litigation?
17        A    No.
18        Q    Do you know what claims have been made in this
19   case?
20        A    I do.
21        Q    And what are those?
22        A    That it's supposed to have real vanilla.  It
23   does not.  And it's supposed to be all natural, no
24   artificial sweeteners.
25        Q    Have you done any independent investigation on
```

```
                                             Page 9

 1    those claims?

 2         A    No.

 3         Q    So, you're relying purely on your lawyers for

 4    that?

 5              MR. BARTLETT:  Object to the form.

 6              THE WITNESS:  Yes.

 7    BY MR. GRESHAM:

 8         Q    Have you done anything to ensure that your

 9    lawyers are doing what they're supposed to do?

10         A    No.

11         Q    Are you aware that your lawyers have twice

12    failed to give notice required by law?

13              MR. BARTLETT:  Object to the form.

14              THE WITNESS:  No.

15    BY MR. GRESHAM:

16         Q    Are you aware that this failure could result

17    in the dismissal of your Alabama Deceptive Trade

18    Practices claim?

19              MR. BARTLETT:  Object to the form.

20              THE WITNESS:  No.

21    BY MR. GRESHAM:

22         Q    Are you aware that it resulted in the

23    dismissal of all of Ms. Morris's claims?

24              MR. BARTLETT:  Object to the form.

25              THE WITNESS:  Yes.
```

Page 10

1    BY MR. GRESHAM:

2        Q    Do you think these actions are acceptable?

3             MR. BARTLETT:  Object to the form.

4             THE WITNESS:  Yes.

5    BY MR. GRESHAM:

6        Q    Do you know how these actions have -- or do

7    you know how these failures have affected the claims of

8    the absent class members?

9        A    No.

10       Q    You haven't looked to see?

11       A    No.

12       Q    Are you concerned about how they would affect

13   the absent class members?

14       A    No.

15       Q    I'm going to mark as Defendant's Exhibit 1 the

16   Class Action Third Amended Complaint.  I believe you

17   said you reviewed this earlier today, is that correct?

18       A    Yes.

19   (Whereupon, marked for identification by the Court Reporter

20   was Defendant's Exhibit 1.)

21   BY MR. GRESHAM:

22       Q    Okay.  Are the allegations in this complaint

23   accurate?

24       A    Yes.

25       Q    Did you meet with your lawyers prior to this

Page 11

```
 1   lawsuit being filed?
 2             MR. BARTLETT:  Object to the form.
 3             THE WITNESS:  When you say "meet," like,
 4        in person?  What do you mean, "meet"?
 5   BY MR. GRESHAM:
 6        Q    Did you have a conversation?  I mean, I would
 7   include a call or --
 8        A    Yes, yes.
 9        Q    So, I assume you did meet in person before
10   then?
11        A    Right.
12        Q    And who was that?  Which lawyer?
13        A    Taylor.
14        Q    Have you ever met Stuart McAtee?
15        A    No.
16        Q    Do you know who that is?
17        A    No.
18        Q    Do you know that he is one of the lawyers on
19   this file?
20        A    No.
21        Q    And how many times did you meet with him prior
22   to filing the lawsuit?
23        A    Maybe six.
24        Q    About how much time would you say you spent?
25        A    30 minutes each time going back and forth.
```

Page 12

1      Q    Okay.  And how many times have you

2  communicated with your lawyers since the filing of this

3  lawsuit?

4      A    Probably five.

5      Q    And about how much time would you say you

6  spent?

7      A    The same, about 30 minutes.

8      Q    How did you choose your lawyers?

9      A    I was recommended to Mr. Taylor through Oscar

10  Price.

11      Q    I've known Oscar for a very long time.  Our

12  sons are good friends.

13          What did you do to ensure your lawyers

14  were capable of handling a claim like this?

15          MR. BARTLETT:  Object to the form.

16          THE WITNESS:  I mainly took Oscar's

17          recommendation.

18  BY MR. GRESHAM:

19      Q    And how did you come to meet Oscar?

20          MR. GRESHAM:  I'm not asking for any legal

21          advice.  I'm asking about how she came to meet

22          him.

23          MR. BARTLETT:  Yes, but I think that gets

24          a little bit into attorney-client privilege.

25          Can you ask that a different way, maybe timing,

1    you know, and things like that rather than the

2    substance of it?  Because if she discloses the

3    substance of it, it could disclose

4    attorney-client privilege.

5         MR. GRESHAM:  So, I'm asking how she came

6    to know him, so the attorney-client privilege

7    couldn't have attached until sometime after she

8    had come to know him.

9         MR. BARTLETT:  Okay.  Maybe how did you

10    contact him is different than how did you get

11    to know him.

12         MR. GRESHAM:  Okay.  I'll ask that first.

13  BY MR. GRESHAM:

14    Q    How did you first come to contact him?

15    A    I emailed him.

16    Q    Okay.  Were you responding to an

17  advertisement?

18    A    No.

19    Q    What led you to email him?

20         MR. BARTLETT:  Don't get into the reason

21    you asked for legal advice.

22         You can explain -- I think you were about

23    to -- Maybe I might suggest you ask again

24    whether there was an advertisement.

25  BY MR. GRESHAM:

```
 1       Q    Was there an advertise.
 2       A    There was an advertisement that I looked up
 3  and found.
 4       Q    Okay.  And so, based on that advertisement,
 5  you --
 6       A    I contacted Oscar or their firm.
 7       Q    And was this on behalf of Snell Groves?
 8       A    Yes.
 9       Q    And so, how did you come to be aware that you
10  might have a claim?
11            MR. BARTLETT:  In this case?
12            MR. GRESHAM:  No, in that case.
13            MR. BARTLETT:  If you became aware of that
14       outside of conversations you had with Oscar or
15       anyone at Oscar's office, you can answer that.
16       If not, I'm going to instruct you not to answer
17       that.
18            THE WITNESS:  Snell Groves was a
19       restaurant, and we had a vendor come in
20       explaining about a practice that they were
21       doing that he felt was not right, and that set
22       off the conversation for me to find someone to
23       look that up.
24  BY MR. GRESHAM:
25       Q    How did you come to be a class representative
```

Page 15

1    here?

2         A    Through speaking with Taylor about the shakes.

3         Q    Did you reach out to him?

4         A    No.

5         Q    He reached out to you?

6         A    Yes.

7         Q    When did that happen?

8         A    Back in, I think, April of 2022.

9         Q    Did he call you?

10        A    Emailed.

11        Q    When did you first become aware of this

12   lawsuit?

13        A    That day.

14        Q    So, before that, you weren't aware that there

15   was a pending lawsuit?

16        A    No.

17        Q    Do you know when this lawsuit was originally

18   filed?

19        A    No.

20        Q    I'll represent to you that it was filed on

21   April 30, 2019.

22   (Whereupon, marked for identification by the Court Reporter

23   was Defendant's Exhibit 2.)

24   BY MR. GRESHAM:

25        Q    I'll mark as Defendant's Exhibit 2 your

1    objections and responses to our first set of

2    interrogatories.  I think you state in response to

3    interrogatory number 7, "Please state the date the

4    attorney-client relationship began with each of the

5    attorneys representing you in this matter."  It's the

6    very last one on page 4?

7        A    2022?

8        Q    Yes.

9        A    Yes.

10       Q    So, would it have been in that April of 2022?

11       A    I can't tell you for sure unless I looked at

12   my email.  I just know it was in 2022.

13       Q    But it wouldn't have been before that?

14       A    It was not.

15       Q    So, that email would have been the start of

16   the --

17       A    Yes.

18       Q    Okay.  Did Mr. Bartlett or anyone from his

19   office contact you between that April 30, 2019 and the

20   email he sent in 2022?

21           MR. BARTLETT:  Object to the form.

22           THE WITNESS:  No.

23   BY MR. GRESHAM:

24       Q    Now, this isn't the first case that you've

25   been a class representative for Mr. Bartlett, is it?

1     A    It is not.

2     Q    How many times before have you done --

3     A    I believe there was one.

4     Q    And what case was that?

5     A    I don't remember.

6     Q    I'm going to mark as Defendant's Exhibit 3 the

7     complaint from Tammy DeVane on behalf of herself and all

8     others similarly situated against Loreal USA.  Do you

9     remember this case?

10    A    Yes, I do.

11    (Whereupon, marked for identification by the Court Reporter

12    was Defendant's Exhibit 3.)

13    BY MR. GRESHAM:

14    Q    Is this the case you were referencing?

15    A    Yes.

16    Q    Do you remember what the claims were in this

17    case?

18    A    I believe it was about the keratin or whatever

19    was in this shampoo from Loreal.

20    Q    So, this is another labeling case?

21    A    It was.

22    Q    Is this case still ongoing?

23    A    It is not.

24    Q    Do you know if the class was certified in this

25    case?

Page 18

1        A    I think it was.

2        Q    Do you know what the ultimate resolution was

3    of this case?

4        A    I think we won.

5        Q    Okay.  Did you, yourself, get a payment?

6        A    I did.

7        Q    Do you recall how much?

8        A    I do not recall how much.

9            MR. BARTLETT:  I believe that that

10           settlement is confidential.

11   BY MR. GRESHAM:

12       Q    Do you know if you got more than other class

13   members?

14       A    I do not know what they got.

15           MR. BARTLETT:  Well, to be clear, it

16           wasn't certified.  I mean, it was an individual

17           settlement.

18           MR. GRESHAM:  Gotcha.

19   BY MR. GRESHAM:

20       Q    I'm going to mark as Exhibit 4 the complaint

21   styled "Tammy DeVane versus Church & Dwight Company."

22   (Whereupon, marked for identification by the Court Reporter

23   was Defendant's Exhibit 4.)

24   BY MR. GRESHAM:

25       Q    Do you recall this lawsuit?

```
 1       A    Yes, I do.  It was vitamins.

 2       Q    And what were the claims here?

 3       A    It was a labeling claim, also.

 4       Q    Okay.  And this was, again, on behalf of your

 5  grandchildren, is that right?

 6       A    It is; my granddaughter.

 7       Q    Do you recall what the ultimate outcome of

 8  this case was?

 9       A    I believe we won.

10       Q    Do you know if the class was certified?

11       A    I don't know that.

12       Q    Do you know how much you got?

13            MR. BARTLETT:  That also was an

14       individual, confidential settlement.

15            THE WITNESS:  No, I do not.

16  BY MR. GRESHAM:

17       Q    Okay.  And so, if you look at Exhibit 3, up at

18  the top, it says it was filed May 14, 2019?

19       A    Yes.

20       Q    So, what's that, three weeks after this case

21  was filed, something like that?

22       A    Yes.

23       Q    And if you look at Exhibit 4, up at the top,

24  that was filed on April 15, 2019?

25       A    It was.
```

Page 20

1    Q    So, that's what, two weeks after this case was

2   filed -- or two weeks before this case was filed?

3    A    Yes, yes.

4         MR. BARTLETT:  I'm going to object to the

5         form.  Ms. DeVane didn't file her claim in this

6         case until 2022.  We've already established

7         that she didn't know anything about it until

8         April of 2022.

9         MR. GRESHAM:  Well, I don't know if we've

10        established that.

11  BY MR. GRESHAM:

12   Q    So, did Mr. Bartlett or anyone at his firm

13  ever mention to you that he was, simultaneous to these

14  cases, filing --

15   A    No, I had no idea.

16   Q    Did they ever ask you to buy the shakes?

17   A    No, they did not.

18   Q    When did you start buying the shakes?

19   A    My granddaughter is seven now.  I started

20  buying them when she was two, so that was, I don't know,

21  five years ago.

22   Q    So, if you look at Exhibit 2, in response to

23  question 2, I believe you said you started to purchase

24  them in September of 2021?

25   A    In Alabama.

Page 21

1      Q    In Alabama?

2      A    That's correct.

3      Q    Why would you purchase them in Alabama?

4      A    We have a farm in Georgia.  We go up there

5  every year from September to February.  That is the only

6  Walmart in the area, so we go and buy all of our

7  supplies.

8           MR. BARTLETT:  The metropolis of Eufaula.

9           THE WITNESS:  Yes, that's it.

10          MR. BARTLETT:  Which I think they have a

11      Chick-fil-A now.

12          THE WITNESS:  Yes, and a Starbucks.

13          MR. BARTLETT:  Oh, really?

14          THE WITNESS:  Yes, yes.

15  BY MR. GRESHAM:

16      Q    Okay.  Let's go back to Defendant's Exhibit 1,

17  which is the complaint in this action.  I think you said

18  your granddaughter was two when you started purchasing

19  them?

20      A    Yes.

21      Q    And you purchased them through January of

22  2022, is that right?

23      A    Yes.

24      Q    Okay.  Why did you stop?

25      A    When I found out what was in them on the

Page 22

1    label, I stopped purchasing them.

2        Q    So, after you spoke with Mr. Bartlett?

3        A    Yes.

4        Q    Does your granddaughter live with you?

5        A    She does not.

6        Q    But they come up to your farm in Georgia with

7    you?

8        A    Every time.

9        Q    And how long do y'all spend up there?

10       A    We're there from -- like I said, we're there

11   from September to February, and then they're there just

12   about every Thursday through Sunday.

13       Q    Okay.  Have you ever purchased any other

14   similar shakes?

15       A    Yes.

16       Q    And what would those be?

17       A    PediaSure.  I think that's about the only one

18   I can think of off the top of my head.  I just look

19   around, look at them and see.

20       Q    Was that before, after, during?

21       A    All of the above.

22       Q    Would you have started purchasing those in

23   roughly the same time period as the Walmart shakes?

24       A    I'm sure in between, yes.

25       Q    So, what led you to purchase the Walmart

```
 1   shakes?
 2        A    They're cheaper.
 3        Q    Did you purchase those other shakes at
 4   Walmart, too?
 5        A    Yes.
 6        Q    Anywhere else?
 7        A    I'm sure Winn-Dixie or, I mean, yes, Publix.
 8        Q    And did you purchase the Walmart shakes in
 9   Florida, as well?
10        A    I have.
11        Q    How many times?
12        A    Oh, gosh, over a dozen, I'm sure.
13             MR. BARTLETT:  Would you like us to amend?
14   BY MR. GRESHAM:
15        Q    So, the first time you would have come to
16   believe that the shakes were artificially flavored and
17   contained a synthetic sweetener would have been after
18   your conversation with Mr. Bartlett?
19        A    That's correct.
20        Q    Do you know what maltodextrin is?
21        A    I do now.
22        Q    What do you believe it to be?
23        A    An artificial sweetener.
24        Q    But you haven't done any research into what
25   maltodextrin is?
```

Page 24

1      A    Well, I looked it up, of course, yes.

2      Q    You looked it up online?

3      A    Yes.

4      Q    Just Googled it?

5      A    Yes.

6      Q    So, is it your position that it's always a

7    sweetener?

8           MR. BARTLETT:  Object to the form.

9           THE WITNESS:  Yes.

10   BY MR. GRESHAM:

11     Q    How do you define "sweetener"?

12          MR. BARTLETT:  Object to the form.

13          THE WITNESS:  I define sweetener -- Well,

14        I think sweetener would be sugar sometimes,

15        depends on if it's artificial.  It has all of

16        those big words; so honey, stevia.  I guess

17        there's different types.  Some are better than

18        others.

19   BY MR. GRESHAM:

20     Q    So, anything with sugars in it, would you

21   consider that to be a sweetener?

22     A    Yes.

23     Q    Do you know what is used to flavor the vanilla

24   shakes?

25     A    It says vanilla.

Page 25

1      Q    But you don't believe that?

2      A    No.

3      Q    Why not?

4      A    It's supposed to have real vanilla in it.

5      Q    Have you done any tests?

6      A    No, I have not.

7      Q    So, you don't know if it has --

8      A    Not personally.

9      Q    If you'll look at Defendant's Exhibit 1, which

10  is the complaint in this action, if you will look at

11  paragraph 14, you'll see there listed the ingredients in

12  the vanilla shakes.  Do you see that?

13     A    Yes.

14     Q    Do you see, I guess, it's, like, the third

15  line down, it lists natural flavors?

16     A    Yes.

17     Q    So, you just think Walmart is lying right

18  there?

19          MR. BARTLETT:  Object to the form.

20          THE WITNESS:  Yes.

21  BY MR. GRESHAM:

22     Q    Any basis for that conclusion?

23     A    Well, I would think it would say "vanilla."

24     Q    So, you just think they would say "vanilla"?

25     A    Yes.

1       Q    You don't have any other basis for your

2  contention that they're lying right there?

3       A    No.

4       Q    Have you looked at how any of the other

5  similar shakes list theirs?

6       A    No, I have not looked.

7       Q    So, have you looked at any of the FDA labeling

8  regulations?

9            MR. BARTLETT:  Object to the form.

10           THE WITNESS:  No.

11 BY MR. GRESHAM:

12      Q    So, you don't know if that's a permissible way

13 to list natural flavors?

14      A    I don't.

15      Q    But you sued Walmart?

16      A    Yes.

17      Q    Because you think they're lying?

18      A    Yes.

19      Q    So, you're suing over the naturally flavored

20 claim and the no synthetic color, flavor, and sweeteners

21 claim, is that right?

22      A    Yes.

23      Q    Were any other representations made to you

24 about the shakes other than what is on the label of the

25 shake?

Page 27

```
 1           MR. BARTLETT:  Object to the form.
 2           THE WITNESS:  No.
 3    BY MR. GRESHAM:
 4       Q    If you would go to paragraph 71 of Defendant's
 5    Exhibit 1, and I guess starting with paragraph 70 on the
 6    other side through about paragraph 79, these appear to
 7    be, sort of, your specific allegations, is that correct?
 8       A    You said 79?
 9       Q    That's right, yes.
10       A    Yes.
11       Q    And if you'll look at -- we've talked about
12    today in paragraph 71, you said you bought these shakes
13    on multiple occasions for your granddaughter?
14       A    Yes.
15       Q    Do you have any other grandchildren you bought
16    them for?
17       A    I do, but I have not bought for them.
18       Q    Is it fair to say that when you're buying food
19    for your grandchildren that you examine the labels
20    carefully?
21       A    I do.
22       Q    Do you carefully examine the claims made on
23    the label?
24       A    To the best of my ability, I do, yes.
25       Q    Do you look at the list of ingredients?
```

```
 1        A     Yes, I do.

 2        Q     Do you look at the nutrition panel?

 3        A     Yes, I do.

 4        Q     Did you do that when you purchased the shakes

 5   in this case?

 6        A     Yes, I did.

 7        Q     In paragraph 72, you say you bought the shakes

 8   to help supplement -- I guess this would be your

 9   granddaughter's diet, and based upon the promises

10   Walmart made on the labeling?

11        A     Yes, this is true.

12        Q     Which of these was the most important?

13              MR. BARTLETT:  Object to the form.

14              THE WITNESS:  It would be the label.

15   BY MR. GRESHAM:

16        Q     Okay.  Would you have purchased these shakes

17   if they had been labeled as artificially flavored?

18        A     No.

19        Q     Would you have purchased the shakes if they

20   had said they had a synthetic sweetener?

21        A     No.

22        Q     Paragraph 74, the second sentence in

23   Exhibit 1, you say, "Further, they fail to contain the

24   nutrients her son needed"?

25        A     That's wrong.
```

1      Q    I assume that's supposed to be your

2  granddaughter?

3      A    That's right.

4      Q    "And instead relied on significant sweeteners

5  and sugars, some of which are not natural or synthetic"?

6      A    Yes.

7      Q    Are you making any claims as to the

8  nutritional value of these shakes?

9      A    I don't understand what you mean.

10      Q    Well, you said instead, they had significant

11  sweeteners and sugars?

12      A    Right.

13      Q    You're not making a claim that they had more

14  sugar than they said they did or that they were somehow

15  unhealthy for your child?

16      A    Unhealthy, yes.  More sugars than claimed, no.

17      Q    How were they unhealthy for your

18  granddaughter?

19      A    I think anything that says "synthetic" is not

20  good.  And if it's natural, like I said, I consider

21  natural sugars better than synthetic.  I just took the

22  word natural as a sugar.  I'm okay with that, but

23  nothing synthetic for her.

24      Q    Nothing synthetic ever?

25      A    Well, I can't say ever, but I try -- a lot of

```
 1   the words, I don't know what they mean -- to look them
 2   up, but yes.
 3        Q    If you'll look at paragraph 75, you say,
 4   "Plaintiff would not have purchased the shakes had she
 5   known that they contained synthetic and artificial
 6   ingredients"?
 7        A    Yes.
 8        Q    The representation here that Walmart made,
 9   though, isn't that broad, is it?
10             MR. BARTLETT:  Object to the form.
11             THE WITNESS:  It is broad.
12   BY MR. GRESHAM:
13        Q    Does it say, "Contains no synthetic
14   ingredients"?
15             MR. BARTLETT:  Object to the form.
16             THE WITNESS:  For me, it was very
17        confusing when they say it is natural.  You
18        can't use the word "synthetic" and "natural" in
19        the same -- No.  So, yes, it is broad.
20   BY MR. GRESHAM:
21        Q    So, is it your contention -- Are you saying
22   that Walmart made the representation that it contains no
23   synthetic ingredients?
24        A    Yes.
25        Q    If you'll go back to paragraph 12 of the
```

1  complaint, do you see what the allegations are that the

2  shakes label contains?

3      A    Yes.

4      Q    And what are they?

5      A    "Natural flavor.  No synthetic colors,

6  flavors, or sweeteners."

7      Q    So, do you still believe that it was no

8  synthetic ingredients?

9          MR. BARTLETT:  Object to the form.

10         THE WITNESS:  Yes.

11  BY MR. GRESHAM:

12      Q    So, I think you said earlier that you would

13  not have purchased the shakes if it had said that they

14  were artificially sweetened?

15      A    Artificially, yes.

16      Q    And you wouldn't if they had said they were

17  artificially flavored, is that correct?

18      A    Right.

19      Q    What if the artificially sweetened shakes had

20  cost less?  Would you have purchased them then?

21      A    No.

22      Q    What if the artificially flavored shakes had

23  cost less?  Would you have purchased them then?

24      A    No.

25      Q    And you said that you try not to purchase

Page 32

1    artificially sweetened things for your grandchildren, is

2    that correct?

3         A    Correct.

4         Q    When you bought these shakes for your

5    granddaughter, did she drink them?

6         A    She did.

7         Q    I take it she liked them because you kept

8    purchasing them?

9         A    She did.

10        Q    She wasn't injured in any way by these shakes,

11   was she?

12        A    She was not.

13        Q    So, the shakes provided nutritional value for

14   your granddaughter, didn't they?

15             MR. BARTLETT:  Object to the form.

16             THE WITNESS:  I can't make that

17        assumption.

18   BY MR. GRESHAM:

19        Q    You what?

20        A    I don't know.

21        Q    You don't know?

22        A    No.

23        Q    But by drinking them, she got food, right?

24        A    I bought them for that purpose.

25        Q    Right.  So, you received some benefit from the

1   shakes, didn't you?

2       A    I don't know that.

3       Q    You don't know that you --

4       A    No.

5       Q    So, she didn't eat the shakes?

6       A    She did.

7       Q    Did she get calories from the shakes?

8       A    She did.

9       Q    She wasn't harmed by them in any way?

10      A    She was not harmed.

11      Q    So, you did receive some value?

12      A    Yes, okay.

13      Q    It's just your position that you didn't

14  receive the full value?  Is that the --

15      A    That's correct.

16      Q    If you would go to paragraph 119 of the

17  complaint, Exhibit 1, here you say, "Walmart's breaches

18  of warranties have caused the Plaintiff and putative

19  class members to suffer injuries, paid for shakes

20  without the promised properties and entered into

21  transactions they would not have entered into for the

22  considerations paid," is that correct?

23      A    That's correct.

24      Q    So, is it fair to say that you claim you were

25  harmed because you paid a premium for the naturally

```
 1   flavored shakes without synthetic colors, flavors, or
 2   sweeteners?
 3        A    That's true.
 4        Q    Do you know what premium that would be?  Do
 5   you know how much that would be?
 6        A    I do not.
 7        Q    And what would you use to compare it to?  How
 8   would you figure out that premium?  How would one
 9   determine that premium?
10             MR. BARTLETT:  Object to the form.
11             THE WITNESS:  I guess we would leave it up
12        to the court or the judge to determine that
13        premium.
14   BY MR. GRESHAM:
15        Q    But you don't have any idea of how much less
16   valuable these shakes were because of your ideation that
17   they didn't live up to the -- I'm sorry, strike that.
18   That was a bad question.
19        A    To me, there was no value.  There was no
20   value.
21        Q    To you, there's no value?
22        A    There is not.
23        Q    And what is your basis for that?
24        A    Because the label was misleading to me.
25        Q    If you'll look at paragraph 120 of Exhibit 1,
```

Case 2:22-cv-00709-ECM-SMD    Document 170-3    Filed 07/16/25    Page 35 of 99

Page 35

1    in that, you say you have suffered damages, including

2    economic damages in terms of the cost of the shakes and

3    the cost of efforts to mitigate damages caused by using

4    the shakes?

5         A    Yes.

6         Q    What costs have you incurred in mitigating the

7    damages caused by the shakes?

8         A    Just my time and what I paid for all the

9    shakes.

10        Q    You say your time.  What time is that?

11        A    The time coming here, the time meeting with

12   Taylor.

13        Q    So, the time in prosecuting this lawsuit?

14        A    Yes.

15        Q    Anything else?

16        A    No.

17        Q    So, you're seeking to recover for your time in

18   litigating this suit?

19        A    Yes.

20        Q    Are you seeking anything else?

21             MR. BARTLETT:  Other than what you just

22        said?

23             MR. GRESHAM:  Right.  Sorry, yes.

24             MR. BARTLETT:  Object to the form.

25             MR. GRESHAM:  Sorry, you're right.  That

Veritext Legal Solutions

877-373-3660                                                800.808.4958

```
 1      is bad.
 2    BY MR. GRESHAM:
 3        Q    So, you said you're seeking the cost of the
 4    shakes?
 5        A    Yes, yes.
 6        Q    You're seeking to recover for your time?
 7        A    And I would like for them to change the
 8    labeling.
 9        Q    Anything else?
10        A    No.
11        Q    Is it your position that you're entitled to
12    the full cost of the shakes?
13        A    Yes.
14        Q    Even though your granddaughter drank them?
15        A    Yes.
16        Q    Even though she received some benefit, as you
17    said before?
18        A    Yes.
19        Q    So, if you'll look at paragraph 96 of
20    Exhibit 1, you say the Plaintiff and putative class
21    members have been damaged as a direct and approximate
22    result of Walmart's unjust enrichment because they would
23    not have purchased the shakes on the same terms or for
24    the same price had they known of the true ingredients
25    and the true nature of the shakes, is that right?
```

1       A    Yes.

2       Q    Have you spoken to any of the class members?

3       A    I have not.

4       Q    Wouldn't you need to speak to each of them

5    individually to make this determination?

6            MR. BARTLETT:  Object to the form.

7            THE WITNESS:  Yes.

8    BY MR. GRESHAM:

9       Q    If you would go back to paragraph 119 in

10   Exhibit 1, there again, you make the allegation that you

11   and the Plaintiff or the putative class members would

12   not have entered into the transaction for the

13   consideration paid, is that right?

14      A    Yes.

15      Q    Again, we would need to speak to the

16   individual class members to make that determination?

17           MR. BARTLETT:  Object to the form.

18           THE WITNESS:  Yes.

19   BY MR. GRESHAM:

20      Q    If you would go to paragraph 132 of Exhibit 1,

21   again, you make the allegation that the putative class

22   members would not have entered into the transaction for

23   the consideration paid, is that right?

24      A    Right.

25      Q    Again, we would have to ask them that

```
 1   question, the putative class members?
 2        A    Right, yes.
 3             MR. BARTLETT:  Object to the form.
 4             MR. GRESHAM:  Let me ask that again.  That
 5        was messy.
 6   BY MR. GRESHAM:
 7        Q    Again, we would have to ask each of the
 8   putative class members if they would have entered into
 9   the transaction for the consideration paid, is that
10   correct?
11             MR. BARTLETT:  Object to the form.
12             THE WITNESS:  Yes.
13   BY MR. GRESHAM:
14        Q    And if you would go to paragraph 143 of
15   Exhibit 1, here you allege that the putative class
16   members would not have purchased the shakes if they had
17   known the true facts, is that correct?
18        A    That's correct.
19        Q    And again, we would need to ask each of those
20   putative class members --
21        A    That's correct.
22             MR. BARTLETT:  Sorry to interrupt, but the
23        usual stipulations, right?
24             MR. GRESHAM:  Yes.
25   BY MR. GRESHAM:
```

1      Q    Would you be satisfied here if Walmart

2   refunded you the money you paid for the shakes?

3           MR. BARTLETT:  Object to the form.

4           THE WITNESS:  Yes.

5   BY MR. GRESHAM:

6      Q    Did you know that Walmart has offered to give

7   you a refund for your purchases?

8           MR. BARTLETT:  Object to the form.

9           THE WITNESS:  No.

10  BY MR. GRESHAM:

11     Q    You didn't?

12     A    No.

13     Q    So, if Walmart had offered that, you would

14  have accepted it?

15          MR. BARTLETT:  Object to the form.

16          THE WITNESS:  Yes.

17          MR. GRESHAM:  I'm about to change gears,

18      and I need to use the restroom.  You want to

19      take a quick break?

20          MR. BARTLETT:  Okay, sure.

21  (A brief recess was taken.)

22  BY MR. GRESHAM:

23     Q    Ms. DeVane, if you will go back to Defendant's

24  Exhibit 2, your Plaintiff's Objections and Responses to

25  Defendant's First Set of Interrogatories.  Do you have

Page 40

1    that in front of you?

2         A    Yes.

3         Q    When did you first see these?

4         A    This whole set?

5         Q    Yes, ma'am.

6         A    I can't tell you the exact date, but I have

7    seen them.

8         Q    Did you have input into answering these?

9         A    Yes.

10        Q    Are they accurate?

11        A    Yes.

12        Q    If you'll go to response number 2, it says,

13   "List all flavors of the shakes you purchased.  For each

14   purchase, list the date, location, and method of

15   payment."

16        A    I'm sorry.  Where are we at?

17        Q    It's on page 3.

18        A    Yes.

19        Q    Do you see that?

20        A    Yes.

21        Q    I take it this represents your entire

22   recollection of your purchasing of the shakes?

23        A    Yes.

24        Q    Is there anything else that you think should

25   be added to that response?

1      A    I think they had banana at one time, I'm

2  thinking, so I think I've tried them all.

3      Q    So, I take it you don't remember exactly how

4  many times you purchased the shakes?

5      A    No.

6      Q    I take it you don't know the total amount you

7  spent purchasing the shakes?

8      A    I do not.

9      Q    Have you purchased any of the Walmart shakes

10 since you discovered the --

11     A    No, I have not.

12     Q    Did you ever try to return any of the shakes

13 to Walmart?

14     A    I did not.

15     Q    Did you ever call Walmart to complain?

16     A    I did not.

17     Q    If you'll look at your response to number 3

18 here on Exhibit 2, it says, "List any and all

19 ingredients of the shakes that you allege being of

20 synthetic flavor, color, and/or sweetener."  You list,

21 "Maltodextrin and natural flavors," isn't that correct?

22     A    Yes.

23     Q    Is there anything else?

24     A    No.

25     Q    And how is it that you believe that natural

Page 42

```
 1   flavors are synthetic?
 2           MR. BARTLETT:  Object to the form.
 3           THE WITNESS:  What is it again?
 4   BY MR. GRESHAM:
 5      Q    How is it that you believe that natural
 6   flavors are synthetic?
 7      A    Well, I don't know that all natural flavors
 8   are synthetic.  I can't say that, but it should list
 9   what the natural flavors are.
10      Q    So, the basis for your belief here that
11   natural flavors are synthetic is because they don't list
12   what those natural flavors are?
13           MR. BARTLETT:  Object to the form.
14           THE WITNESS:  Yes.
15   BY MR. GRESHAM:
16      Q    You only allege that the vanilla shakes are
17   not naturally flavored, is that correct?
18      A    That's correct.
19      Q    If you'll go back to the complaint, which is
20   Exhibit 1, and if you'll go to paragraph 35 -- Actually,
21   sorry, that's not right.  Paragraph 45 -- That's not
22   right either.  Actually, sorry, go to paragraph 16, so
23   paragraph 16 of Exhibit 1.  And these are the
24   ingredients for the chocolate shakes?
25      A    Yes.
```

```
 1        Q    And you're not making a claim that these are
 2   not naturally flavored, is that correct?
 3        A    I can make a claim if you want me to.
 4        Q    I'm just asking you a question.  Are you?
 5        A    No.
 6        Q    Okay.  If you'll look down there in paragraph
 7   16 is the list of ingredients for those chocolate
 8   shakes.  Do you see that?
 9        A    Yes, yes.
10        Q    If you'll look at the first in that
11   second-to-last line, it's natural flavors.  Do you see
12   that?
13        A    Yes, I see that.
14        Q    Okay.  So, what is your basis for claiming
15   that natural flavors means natural flavors in chocolate
16   shakes but not the vanilla shakes?
17             MR. BARTLETT:  Object to the form.  You
18        can ask again if you'd like.
19   BY MR. GRESHAM:
20        Q    What is your basis for claiming that natural
21   flavors means natural flavors in the chocolate shakes
22   but not in the vanilla shakes?
23             MR. BARTLETT:  Object to the form.
24             THE WITNESS:  Well, I'm making the claim
25        it's the same, but I didn't buy as many
```

1       chocolate as she doesn't care for the

2       chocolate.  I have bought the chocolate, but

3       not like I have the vanilla.

4  BY MR. GRESHAM:

5       Q    But you're not alleging that the chocolate

6  shakes have artificial flavorings, are you?

7            MR. BARTLETT:  Object to the form.

8            THE WITNESS:  Yes.

9  BY MR. GRESHAM:

10      Q    I'm sorry, "yes," you are alleging the

11 chocolate shakes have artificial flavorings?

12      A    Well, I don't understand what you're asking

13 me.  I'm only alleging on the vanilla, but if you're

14 asking me now if it's the same, then yes, I have to tell

15 you in my eyes, the chocolate is the same as the

16 vanilla.

17      Q    Okay.  So, you don't make any allegations in

18 the complaint, but now looking at it, you believe

19 that --

20      A    That's right, yes.

21      Q    Because it lists natural flavors?

22      A    Yes.

23      Q    So, any product that listed natural flavors in

24 the ingredient list you would think doesn't actually

25 have natural flavors, is that right?

```
 1            MR. BARTLETT:  Object to the form.
 2            THE WITNESS:  I would have to do a case by
 3       case at what the product is and look at it for
 4       myself.  I can't just put them all in that one
 5       category.
 6  BY MR. GRESHAM:
 7       Q    Okay.  But you didn't do that case by case
 8  here, did you?
 9            MR. BARTLETT:  Object to the form.
10            THE WITNESS:  Yes, because I didn't
11       include the chocolate, even though I bought the
12       chocolate.
13  BY MR. GRESHAM:
14       Q    Okay.  So, what did you do to differentiate
15  the chocolate natural flavors here from the vanilla
16  natural flavors?
17            MR. BARTLETT:  Object to the form.
18            THE WITNESS:  Well, I didn't do anything
19       other than what I just told you.  I only bought
20       mainly vanilla, so that was my main concern was
21       the vanilla.  And if they changed the vanilla,
22       they would change the rest, but my thing was
23       all the vanilla that I purchased, reading the
24       label.
25  BY MR. GRESHAM:
```

1      Q    So, before this lawsuit, did you believe that

2    if you read "natural flavors," that that would have

3    actually meant artificial flavors?

4           MR. BARTLETT:  Object to the form.

5           THE WITNESS:  Yes.

6    BY MR. GRESHAM:

7      Q    Okay.  So, if before you purchased these, if

8    you had read the vanilla shake's ingredient list, you

9    would have seen that the no synthetic flavor and

10   naturally flavored claims on the label were false, is

11   that right?

12          MR. BARTLETT:  Object to the form.

13          THE WITNESS:  Yes.

14   BY MR. GRESHAM:

15     Q    So, you didn't carefully read the label?

16          MR. BARTLETT:  Object to the form.

17          THE WITNESS:  I did.

18   BY MR. GRESHAM:

19     Q    Or I take that back.  You didn't carefully

20   read the ingredient list?

21          MR. BARTLETT:  Object to the form.

22          THE WITNESS:  I did.

23   BY MR. GRESHAM:

24     Q    But you didn't see that it had natural

25   flavors?

1          MR. BARTLETT:  Object to the form.

2          THE WITNESS:  At the time, I didn't know

3     until after, what was in there.

4  BY MR. GRESHAM:

5     Q    Well, you just testified a second ago that you

6  knew that before the filing of this lawsuit?

7          MR. BARTLETT:  No.  Object to the form.

8          THE WITNESS:  No.

9  BY MR. GRESHAM:

10    Q    I guess the record will say what the record

11  will say.  Let's go back to Defense Exhibit 2, your

12  responses to the first set of interrogatories.  If

13  you'll look at response number 4, it says -- The

14  interrogatory asks, "List any and all ingredients of the

15  shakes that you allege to be an unnatural flavor."

16    A    Yes.

17    Q    And what do you list there?

18    A    "Maltodextrin and natural flavors."

19    Q    Do you still believe maltodextrin is an

20  unnatural flavoring?

21    A    Yes.

22    Q    What's your basis for that?

23          MR. BARTLETT:  Object to the form.

24          THE WITNESS:  Well, because I looked it

25     up, and it's synthetic sugar.

Page 48

1    BY MR. GRESHAM:

2        Q    So, do you believe it is a flavoring agent for

3    the vanilla shakes?

4        A    Yes.

5        Q    If you'll go back to Exhibit 1, paragraph 16,

6    you see maltodextrin is also in the chocolate shakes, is

7    that right?

8        A    Yes.

9        Q    But you haven't made a claim on the chocolate

10   shakes, is that right?

11       A    I have not.

12            MR. BARTLETT:  Object to the form.

13   BY MR. GRESHAM:

14       Q    Okay.  If you'll look at interrogatory

15   number 6 on Exhibit 2, it says, "Identify all damages

16   allegedly suffered and the method for calculating those

17   damages for you and for the class as a whole."  Do you

18   see that?

19       A    Yes.

20       Q    It says, "The amount due has not been

21   calculated"?

22       A    Yes.

23       Q    Is this still true?

24       A    Correct.

25       Q    So, you still haven't calculated how much?

1      A    No.

2      Q    And you haven't undertaken to calculate how

3  much the class is owed?

4      A    No.

5           MR. BARTLETT:  You also haven't produced

6       those documents.

7           MR. GRESHAM:  Well, she bought them.

8  BY MR. GRESHAM:

9      Q    Do you have any idea how you would go about

10  doing that?

11     A    No.

12     Q    I'm going to mark as Defendant's Exhibit 5

13  Plaintiff's Objections and Responses to Defendant's

14  First Set of Requests for Production to the Plaintiff.

15  (Whereupon, marked for identification by the Court Reporter

16  was Defendant's Exhibit 5.)

17  BY MR. GRESHAM:

18     Q    Have you seen these before?

19     A    Yes.

20     Q    Did you have any input into these?

21     A    Yes.

22     Q    Did you search for any documents that might be

23  responsive to these requests?

24     A    Yes.

25     Q    Did you find any documents?

1        A    No.

2        Q    What did you do to search for these documents?

3        A    Well, I looked back -- In Georgia, we looked

4   to see if we had any product.  There was none left.  I

5   had no receipts from the shakes.  And of course, your

6   credit card statement just says what you spent at

7   Walmart.  It doesn't show individual purchases.

8        Q    Did you search any email?

9        A    No.

10       Q    Did you search any text messages?

11       A    For the products?

12       Q    No, for documents relating to the products.

13       A    No.

14       Q    Did you do anything else?

15       A    No.

16       Q    Do you have a Walmart.com account?

17       A    I do not.

18       Q    Do you have a Walmart Pay account?

19       A    No.

20       Q    I think you said earlier that you purchased

21   the PediaSure shakes before, during, and after you found

22   out about the Walmart shakes, is that right?

23       A    Yes.

24       Q    And what flavor of those shakes did you

25   purchase?

1      A     Vanilla.

2      Q     I'll mark as Exhibit 6 a printout from

3   PediaSure website as to the shake.

4   (Whereupon, marked for identification by the Court Reporter

5   was Defendant's Exhibit 6.)

6   BY MR. GRESHAM:

7      Q     Would you look at that and tell me if that is

8   the shake?

9           MR. BARTLETT:  Object to the form.  Do you

10          have a date on this?

11          MR. GRESHAM:  I don't.  I'm just asking if

12      this is what she purchased.

13          MR. BARTLETT:  Where is the label?

14          MR. GRESHAM:  It's on page 3.  Sorry.

15          THE WITNESS:  I think this was it.  I

16      think mine was in a box.

17   BY MR. GRESHAM:

18      Q     Okay.  If you'll go to the fifth page, it

19   lists the ingredients.  And could you tell me what the

20   second ingredient is there?

21      A     Maltodextrin.

22      Q     Then, if you'll go down, it is, I believe, the

23   fourth line from the bottom, the very last, you see it

24   says natural and artificial flavors?

25      A     Yes, I do.

Page 52

```
 1        Q    And if you'll go back to the label on page 3,
 2   you see down there at the bottom of the bottle, it says
 3   "Natural and artificial flavors" just below the "Vanilla
 4   Shake"?
 5        A    I do.
 6        Q    So, these shakes contain artificial flavors,
 7   is that right?
 8        A    That's right.
 9        Q    And they contain maltodextrin, is that right?
10        A    They do.
11        Q    And you've continued purchasing those even
12   after you stopped purchasing the Walmart shakes, is that
13   right?
14             MR. BARTLETT:  Object to the form.
15             THE WITNESS:  Mine was in a box, so I
16        don't know what my box said other than this
17        bottle you have here.
18   BY MR. GRESHAM:
19        Q    But these are the shakes you purchased, is
20   that right?
21        A    PediaSure.
22        Q    PediaSure, okay.  Did you carefully inspect
23   the PediaSure label before purchasing it?
24             MR. BARTLETT:  Object to the form.
25             THE WITNESS:  No.
```

Page 53

1    BY MR. GRESHAM:

2        Q    Do you intend to continue purchasing the

3    PediaSure?

4        A    I have not.

5        Q    You have not continued?

6        A    I have not purchased any shakes, period.

7        Q    You have not purchased any PediaSure shakes?

8        A    Correct.

9        Q    Ever?

10        A    Since finding out what was in them.

11        Q    Didn't you previously testify that you

12    purchased the PediaSure shakes before, during, and after

13    the Walmart shakes?

14        A    Right, but then we stopped.  No more shakes.

15        Q    So, you stopped purchasing all shakes?

16        A    That is correct.

17        Q    Why did you stop purchasing all shakes?

18        A    Because of all the unnatural and synthetic

19    ingredients in the shakes.

20        Q    Well, the PediaSure said that they have

21    artificial flavors, correct?

22        A    It did, but I didn't know what it was until

23    after I started looking up what is in the shakes.  I had

24    no idea what those words were or the ingredients until I

25    actually looked them up.

```
 1      Q    So, you didn't know what artificial flavor
 2   was?
 3           MR. BARTLETT:  Object to the form.
 4           THE WITNESS:  No.
 5   BY MR. GRESHAM:
 6      Q    So, at the time you started purchasing the
 7   Walmart shakes, you had no objection to purchasing
 8   something that was artificially flavored, is that right?
 9      A    I didn't know what artificial flavor was.
10      Q    Okay.  What have you come to know that it is
11   now?
12      A    Well, when it said "vanilla," that would be
13   real vanilla, not artificial vanilla.  I know the
14   chocolate has cocoa, which is real chocolate, so I think
15   that's artificial.
16      Q    Well, with the PediaSure, it says it's
17   artificially flavored on the label.
18           MR. BARTLETT:  Object to the form.
19   BY MR. GRESHAM:
20      Q    And you still purchased it, is that right?
21           MR. BARTLETT:  Object to the form.
22           THE WITNESS:  Yes.
23           MR. BARTLETT:  She just testified that she
24        didn't after the lawsuit.
25           THE WITNESS:  Right.
```

1  BY MR. GRESHAM:

2      Q    Well, prior to the lawsuit, you still

3  purchased it, is that right?

4          MR. BARTLETT:  Object to the form.

5          THE WITNESS:  Prior to the lawsuit, I did.

6  BY MR. GRESHAM:

7      Q    So, you would have still purchased

8  artificially flavored shakes prior to finding out that

9  Walmart shakes were not naturally flavored, is that

10  correct?

11         MR. BARTLETT:  Object to the form.

12         THE WITNESS:  That's correct.

13  BY MR. GRESHAM:

14     Q    And do you know how the PediaSure shakes

15  compare in cost to the Walmart shakes?

16     A    Yes.

17     Q    And how do they compare?

18     A    I just know they're more.

19     Q    The PediaSure shakes cost more than the --

20     A    Yes.

21     Q    -- Walmart shakes?

22     A    That's correct.

23     Q    Even though they say they're artificially

24  flavored?

25     A    That's correct.

1        Q    And they don't claim here to not be -- have no

2   synthetic sweeteners, is that right?

3        A    PediaSure?

4        Q    Yes.  Let me reask that question.  The

5   PediaSure shakes do not contain a claim to have no

6   synthetic sweeteners, is that correct?

7        A    Yes.

8        Q    So, even without the claims to have no

9   synthetic colors, flavors, or sweeteners, or to be

10  naturally flavored, they still cost more than the

11  Walmart shakes?

12       A    They do cost more.

13       Q    So, if the Walmart shakes cost less than the

14  PediaSure shakes, you weren't injured by purchasing the

15  Walmart shakes, were you?

16            MR. BARTLETT:  Object to the form.

17            THE WITNESS:  Yes.

18  BY MR. GRESHAM:

19       Q    "Yes," you were not injured?

20            MR. BARTLETT:  Object to the form.

21            THE WITNESS:  Yes, I was injured.

22  BY MR. GRESHAM:

23       Q    Well, how?

24       A    Because the label is misleading and false.

25       Q    Okay.  And I believe you said you paid a

Page 57

```
 1   premium, is that correct?
 2        A    For what?
 3        Q    For the Walmart shakes.  Let me rephrase.  I
 4   believe you said earlier you were injured by the Walmart
 5   shakes because you paid a premium for --
 6        A    I didn't say "premium."  I never used that
 7   word, "premium."
 8        Q    Let's go back to Defendant's Exhibit 1, which
 9   is the complaint.  If you'll look at paragraph 119, it
10   says you wouldn't have entered into the transaction for
11   the consideration -- excuse me.  Let me rephrase that.
12   It says here you wouldn't have entered into the
13   transactions entered into for the consideration paid, is
14   that right?
15        A    Yes.
16        Q    But you paid more for shakes that contained
17   artificial flavors and did not contain those label
18   claims, is that right?
19             MR. BARTLETT:  Object to the form.
20             THE WITNESS:  Yes.  Their label claimed
21        it.  Walmart's does not.
22   BY MR. GRESHAM:
23        Q    So, you were willing to pay more for the
24   artificial shakes?
25        A    No, I'm not.
```

```
 1      Q    Well, you paid more for them, didn't you?

 2           MR. BARTLETT:  Object to the form.

 3           THE WITNESS:  Right.  I did.

 4  BY MR. GRESHAM:

 5      Q    So, you're not willing to pay more, but you

 6  did pay more?

 7      A    Well, sometimes when you're there, you just

 8  get what you get in Eufaula.

 9      Q    Well, you purchased these shakes more than

10  just in Eufaula, didn't you?

11      A    Yes, I did, but most of the time, it was in

12  Eufaula.

13      Q    How many times have you served as a class rep?

14           MR. BARTLETT:  Object to the form.

15           THE WITNESS:  Total?

16  BY MR. GRESHAM:

17      Q    Yes.

18      A    With just --

19      Q    No.  In your entire lifetime.

20      A    This would be the fifth.

21      Q    And what were the names of those cases, if you

22  remember them?

23      A    I don't remember the names.  The two you have

24  here, and the other two were from the restaurant.

25      Q    Any others?
```

Page 59

1        A    No.

2        Q    I'll mark as Defendant's Exhibit 7 the lawsuit

3    titled Tammy DeVane, individually and on behalf of all

4    others similarly situated against Instant Brands, LLC.

5    (Whereupon, marked for identification by the Court Reporter

6    was Defendant's Exhibit 7.)

7    BY MR. GRESHAM:

8        Q    Do you recall this lawsuit?

9        A    Oh, yes, yes.

10       Q    When was this filed?

11       A    I don't recall.  This was some guy in Chicago

12   or New York or something, and nothing ever became of it,

13   nothing.  And just so you know, I never received

14   anything or never got anything from it.

15       Q    How did you come in contact with this Spencer

16   Sheehan?

17       A    He contacted me through email about this cup,

18   this Pyrex.  I thought he was a sham.

19       Q    You thought he was a sham?

20       A    I did.

21       Q    But you were willing to file a lawsuit for him

22   or --

23            MR. BARTLETT:  Object to the form.

24            THE WITNESS:  I did because this did

25       happen to me.  But as you can see, nothing

1      happened.

2      Q    So, you don't know what's going on with this

3  lawsuit?

4      A    I have no idea.

5      Q    You don't even know if it's still pending?

6      A    No.

7      Q    Have you had any contact with Mr. Sheehan?

8      A    I have not.

9      Q    So, you haven't done anything to make sure

10  that he's prosecuting this case effectively?

11          MR. BARTLETT:  Object to the form.

12          THE WITNESS:  I have no idea, no.

13  BY MR. GRESHAM:

14      Q    So, do you have any idea how Mr. Sheehan got

15  your name?

16      A    You know, on the class action lawsuits

17  website, there's a thing you fill out if you use

18  these -- whatever they'll picture, if you used this and

19  you had problems, you put your name on there, and he

20  contacted me through that paper that you fill out.

21      Q    What website is that?

22      A    Class Actions.

23      Q    So, you went on there and filled out that you

24  had purchased that product?

25      A    That's correct.

Page 61

```
 1       Q    Have you done that for other products?
 2       A    Yes.
 3       Q    Have you done that for these products, for the
 4    shakes?
 5       A    No, I have not.
 6       Q    Have any of the cases that you have acted as a
 7    class rep, have any of them been certified as a class?
 8    Has the class itself been certified?
 9            MR. BARTLETT:  Object to the form.
10            THE WITNESS:  I think so.
11    BY MR. GRESHAM:
12       Q    Do you know how many of those you've reached
13    an individual settlement for?
14       A    It would be four.
15       Q    So, you've reached an individual settlement
16    for all of them except for this Pyrex case in Exhibit 7?
17       A    That's correct.  That's correct.
18       Q    Is it fair to say that each of those
19    settlements, you received more than what you paid for
20    the product?
21            MR. BARTLETT:  Object to the form.  To the
22            extent that --
23            MR. GRESHAM:  I'm not asking her for
24            specifics.  I mean, if we need to get a
25            protective order, we can put it under a
```

```
 1      protective order.
 2              THE WITNESS:  Yes.
 3   BY MR. GRESHAM:
 4      Q    Significantly more?
 5              MR. BARTLETT:  Object to the form.
 6              THE WITNESS:  I can't tell you about the
 7       first two because it was related to the
 8       restaurant, so it was pretty high.  Not what we
 9       got but what we paid, so it would not be
10       considerably higher.
11   BY MR. GRESHAM:
12      Q    What about in the --
13      A    Yes.  Not this?
14      Q    Not this, but the other two cases you had with
15   Mr. Bartlett?
16      A    Yes.
17              MR. BARTLETT:  And "this" not meaning the
18       Pyrex case.
19              MR. GRESHAM:  Yes, "this" meaning the
20       Pyrex case.  Thank you.
21              MR. BARTLETT:  We'll wonder what you were
22       talking about when you said "this."
23              MR. GRESHAM:  I'm bad about that.  I just
24       assume everybody can read my mind.
25   BY MR. GRESHAM:
```

1      Q    Has any court ever found that you were not an

2   adequate class representative?

3      A    No.

4      Q    How many lawsuits are you involved with right

5   now?

6      A    Just this one and I guess this one.  I don't

7   really know.

8      Q    I think you mentioned before that you had a

9   few cases for your restaurant.  Is that Snell Groves

10  restaurant?

11     A    Yes.

12     Q    And did you-all used to own that restaurant?

13     A    We did.

14     Q    Do you still own that restaurant?

15     A    We do not.

16     Q    Did you-all sell that in 2018?

17     A    We did.

18     Q    And how many cases was Snell Groves involved

19  in?

20     A    Two.

21     Q    And both of those were with Oscar Price?

22     A    Yes.

23     Q    What was the outcome of those cases?

24     A    We won or he won, however you want to put it.

25     Q    I'll mark as Defendant's Exhibit 8 the

1  complaint titled "Gordon Food Service, Inc. versus Price

2  Armstrong, LLC, et al."  Have you seen this before?

3      A    Yes.

4  (Whereupon, marked for identification by the Court Reporter

5  was Defendant's Exhibit 8.)

6  BY MR. GRESHAM:

7      Q    Are you a defendant in this case, or were you

8  a defendant in this case, rather?

9      A    Yes.

10     Q    What was this case about?

11     A    This was about the fuel charge.

12     Q    Why were you getting sued?

13     A    Why was I getting sued?

14     Q    Yes.

15     A    I really don't know.  I never did understand

16  it.  We did get sued.  I don't know.  You'd have to ask

17  Oscar or read this.

18     Q    So, you don't remember ever getting sued?

19     A    Well, I don't know.  I don't have all the

20  paperwork, but there was so much.  This guy was a

21  bulldog, and Oscar just told me to let him handle it.

22  It was just a lot of paperwork.  We sued them.

23     Q    Right.  And you sued them on behalf of Snell

24  Groves, right?

25     A    That's correct.

1    Q    And you sued them after you had sold Snell

2    Groves, is that right?

3    A    Yes, that's correct.

4    Q    And after you had dissolved Snell Groves, LLC,

5    is that correct?

6    A    That's correct.

7    Q    And were you seeking to represent a class in

8    that?

9    A    Yes.

10    Q    So, you were suing on behalf of a defunct

11    entity?

12    A    Well, the Snell Groves corporation was still

13    in our name, so we were told we could still -- because

14    this happened while we owned Snell Groves.

15    Q    But you didn't do any independent

16    investigation of any of the facts, did you?

17    A    No.

18    Q    What was the ultimate outcome of this case?

19        MR. BARTLETT:  Object to the form.

20        THE WITNESS:  It all got dropped.

21    BY MR. GRESHAM:

22    Q    Oh, it got dropped?

23    A    It did.

24    Q    Was it settled?

25    A    No.

1       Q    They just dropped it?

2       A    They dropped theirs, and we dropped ours.

3       Q    So, you dropped yours in exchange for them

4    dropping theirs?

5       A    I don't know how that went.

6       Q    And you dropped that on behalf of the class

7    members, as well?

8       A    There was no class members, I don't guess.  I

9    don't know.

10      Q    Were you seeking to represent a class -- not

11   in this case but in the case -- Sorry.  You said, as I

12   heard you say, that you dropped your case against -- the

13   Snell Groves case against Gordon Foods?

14      A    That's correct.

15      Q    In that case, was Snell Groves seeking to

16   represent a class?

17           MR. BARTLETT:  Object to the form.

18           THE WITNESS:  I don't know.

19   BY MR. GRESHAM:

20      Q    You don't know?

21      A    I don't know.

22      Q    Have you been involved in any other lawsuits?

23      A    No.

24           MR. GRESHAM:  Give me a second.  I think

25      we're done.

1         MR. BARTLETT:  Sure.

2         MR. GRESHAM:  We can go off the record.

3   (A brief recess was taken.)

4         MR. GRESHAM:  I'm done.

5         MR. BARTLETT:  Okay.  I just have a few

6      follow-up questions, Ms. DeVane.

7                     CROSS-EXAMINATION

8   BY MR. BARTLETT:

9      Q    In addition to bringing this claim on your

10  behalf, you understand you're also bringing it on behalf

11  of a class of individuals who purchased the shakes in

12  Alabama, correct?

13     A    I do.

14     Q    And you're okay with that?

15     A    I am.

16     Q    Okay.  Mr. Gresham mentioned a settlement

17  offer, which I can say I don't know that I ever saw it,

18  but about refunding the price that you paid for the

19  shakes, do you remember that?

20     A    Yes.

21     Q    In addition to being refunded for the shakes

22  and any other kind of monetary damages that you talked

23  about, do you also want to have the label be changed so

24  that it's accurate?

25     A    Yes.

Page 68

1      Q    Mr. Gresham put a number of lawsuits in front

2    of you in which you, Tammy DeVane, were named as a

3    plaintiff.  Do you recall those?

4      A    Yes.

5      Q    There were also maybe one or two in which your

6    restaurant, the corporation, was also named as a

7    plaintiff?

8      A    Yes.

9      Q    In the corporation lawsuit for your

10   restaurant, that was just on behalf of your restaurant?

11   It didn't have anything to do with you personally,

12   right?

13     A    Right.

14     Q    And the ones that Mr. Gresham mentioned where

15   you were a plaintiff, has the court ever appointed you,

16   to your knowledge, as a class representative in any

17   order of any sort?

18     A    No.

19     Q    So, those lawsuits that Mr. Gresham put in

20   front of you were, to your knowledge, never certified as

21   a class, and you settled them individually, is that

22   right?

23     A    Yes.

24     Q    Okay.  And in each of those lawsuits, did you

25   think you had a valid claim?

1          A     Yes.

2          Q     Mr. Gresham asked you a number of questions

3     about your claims and referenced the complaint, so if

4     you have Exhibit 1 there, I just want to make sure that

5     I understand what you-all were talking about.  If we can

6     talk about just the vanilla shakes for now, and

7     paragraph 14 and 15 are the ingredient and the vitamins

8     and minerals list, is that right?

9          A     Yes.

10         Q     And if you switch over to paragraph 19 and

11    take just a minute to read that to yourself.

12         A     Yes.

13         Q     Is paragraph 19 a true and accurate

14    representation of the claims that you're making with

15    respect to -- you see after number 1, the vanilla

16    shakes?

17         A     Yes.

18              MR. GRESHAM:  Object to form.

19    BY MR. BARTLETT:

20         Q     And after number 2, the shakes in general,

21    both chocolate and vanilla?

22              MR. GRESHAM:  Object to form.

23              THE WITNESS:  Yes.

24    BY MR. BARTLETT:

25         Q     And if you would read that partial sentence

1  after the number 1, which is in brackets in paragraph

2  19, out loud?

3      A    "The vanilla shakes characterizing the flavor

4  of vanilla is not derived from characterizing

5  ingredients of vanilla."

6      Q    Is that one of the claims that you're making

7  with respect to the vanilla shakes?

8      A    Yes.

9      Q    We just looked at the vanilla ingredients,

10  which were in paragraph 14, and the vitamins and

11  minerals in paragraph 15, right?

12      A    Yes.

13      Q    The next page, paragraphs 16 and 17, relate to

14  the chocolate shakes, right?

15      A    Yes.

16      Q    And is maltodextrin in both the vanilla and

17  the chocolate shakes?

18      A    Yes.

19      Q    And is it your claim that maltodextrin in both

20  the vanilla and the chocolate shakes is not a natural

21  flavor or sweetener?

22      A    Yes.

23      Q    Is one of the reasons that you purchased the

24  Walmart shakes because they claim to be naturally

25  flavored, sweetened, and colored?

```
 1      A    Yes.

 2      Q    And is one of the reasons that you purchased

 3  the vanilla Walmart shakes because you thought that

 4  there was vanilla or a derivative of vanilla in those

 5  shakes?

 6           MR. GRESHAM:  Object to form.

 7           THE WITNESS:  Yes.

 8  BY MR. BARTLETT:

 9      Q    In your experience, are name-brand items such

10  as PediaSure shakes more expensive, regardless of the

11  label, than a store-brand?

12           MR. GRESHAM:  Object to form.

13           THE WITNESS:  Yes.

14  BY MR. BARTLETT:

15      Q    So, is it fair to characterize the price of a

16  name-brand something to a store-brand something?

17           MR. GRESHAM:  Object to form.

18           THE WITNESS:  No.

19  BY MR. BARTLETT:

20      Q    When you purchased the PediaSure shakes that

21  Mr. Gresham referenced earlier, is the reason that you

22  did that because at least at Walmart, the store-brand

23  Walmart shakes that we're here about today were out of

24  stock or not available?

25           MR. GRESHAM:  Object to the form.
```

1            THE WITNESS:  Yes, yes.

2            MR. BARTLETT:  That's all I have.

3            MR. GRESHAM:  I have just a couple.

4            THE WITNESS:  Okay.

5                    REDIRECT EXAMINATION

6    BY MR. GRESHAM:

7        Q    So, I believe it was in reference to

8    Defendant's Exhibit 3 and Defendant's Exhibit 4, these

9    were the cases that you filed against Loreal USA and

10   Church & Dwight, Incorporated?

11       A    Yes.

12       Q    I believe you testified that you settled these

13   individually, is that correct?

14       A    Yes.

15       Q    But you were seeking to represent a class, is

16   that right?

17       A    I'm not sure.

18       Q    If you'll look at page 7 of Exhibit 4, which

19   is the Church & Dwight lawsuit, it says Plaintiff brings

20   this action as a class action pursuant to Federal Rules

21   of Civil Procedure.  Does that jog your memory as to

22   whether you were seeking to bring this on behalf of a

23   class?

24       A    That's what it said.  I just don't remember

25   it.

Page 73

1        Q    You don't remember it?

2        A    No, I don't.

3        Q    If you'll look at Exhibit 3, which is the

4    complaint against Loreal USA, if you'll go to page 13 of

5    Exhibit 3, paragraph 53, it says, "Plaintiff brings this

6    action on behalf of herself and the following class."

7    Does this jog your memory if --

8        A    I'm sorry.  Where are you?

9        Q    I'm sorry.  Paragraph 53 of Exhibit 3.

10       A    I see it, yes, yes.

11       Q    Does this refresh your recollection?

12       A    I see it.  I still don't remember, but yes,

13   yes.

14       Q    Were you seeking to have the label changed in

15   both Exhibit 3 and Exhibit 4?

16       A    Yes.

17       Q    Do you recall whether the label was changed as

18   a result of your settlement?

19       A    I don't recall.

20       Q    You don't recall?

21       A    No, I don't.

22       Q    And as it relates to Exhibits 3 and 4, even

23   though you brought these on behalf of a class, you

24   settled it just for yourself?

25       A    I can't answer.  I don't know.

1      Q    You don't know?

2      A    No, I don't.

3           MR. GRESHAM:  That's all I've got.

4           MR. BARTLETT:  We're done.

5           MR. GRESHAM:  Thank you.

6           MR. BARTLETT:  And she'll read and sign.

7           THE COURT REPORTER:  And do you know if

8      you want to order the transcript?

9           MR. GRESHAM:  Yes, I do want to order it.

10          THE COURT REPORTER:  And Taylor, do you

11     want a copy of the transcript?

12          MR. BARTLETT:  Yes, I do want a copy,

13     electronic only.

14

15     (Whereupon, the deposition was concluded at 12:04 p.m.)

16

17

18

19

20

21

22

23

24

25

Page 75

1                    CERTIFICATE OF OATH

2

3    STATE OF FLORIDA

4    COUNTY OF HILLSBOROUGH

5        I, the undersigned authority, certify that

6    TAMMY LYNN DEVANE, personally appeared before me and was

7    duly sworn.

8        WITNESS my hand and official seal this 24th day of July

9    2024.

10

11       Personally known _____
         (SELECT WHICH ONE APPLIES)

12       OR Produced Identification _____X_____
         Type of Identification Produced __driver's license__

13

14

15       KENNEDY M. RUSSELL

16       Notary Public - State of Florida

17       My Commission Expires:  10/16/2024

18       Commission No.:  HH 44494

19

20

21

22

23

24

25

Page 76

```
 1                    REPORTER'S CERTIFICATE

 2    STATE OF FLORIDA

 3    COUNTY OF HILLSBOROUGH

 4        I, KENNEDY M. RUSSELL, CRR, RPR, certify that I was

 5    authorized to and did stenographically report the deposition

 6    of TAMMY LYNN DEVANE; that a review of the transcript was

 7    requested and that the transcript is a true and complete

 8    record of my stenographic notes.

 9        I FURTHER CERTIFY that I am not a relative, employee,

10    attorney, or counsel of any of the parties, nor am I a

11    relative or employee of any of the parties' attorneys or

12    counsel connected with the action, nor am I financially

13    interested in the outcome of the foregoing action.

14        IN WITNESS WHEREOF, I have affixed my hand and official

15    seal this 24th day of July 2024.

16

17

18

19

20                    KENNEDY M. RUSSELL

21                    Notary Public - State of Florida

22                    My Commission Expires:  10/16/2024

23                    Commission No.:  HH 44494

24

25
```

Page 77

1    Taylor C. Bartlett, Esquire

2    taylor@hgdlawfirm.com

3    (Jul. 24, 2024)   RE:  DEVANE VS. WALMART

4    7/18/2024 - TAMMY LYNN DEVANE - AL 6800382

5

6    The above-referenced transcript is available for review.

7    Ms. Tammy Lynn DeVane should read the testimony to verify

8    its accuracy.  If there are any changes, Ms. DeVane should

9    note those with the reason on the attached Errata Sheet.

10   Ms. DeVane should, please, date and sign the Errata Sheet

11   and email to the deposing attorney as well as to Veritext at

12   Transcripts-fl@veritext.com and copies will be emailed to

13   all ordering parties.

14   It is suggested that the completed errata be returned 30

15   days from receipt of testimony, as considered reasonable

16   under Federal rules*, however, there is no Florida statute

17   to this regard.  If the witness fails to do so, the

18   transcript may be used as if signed.

19

20       Yours, Veritext Legal Solutions,

21      *Federal Civil Procedure Rule 30(e)/

22       Florida Civil Procedure Rule 1.310(e).

23

24

25

Page 78

1   TAMMY DEVANE VS. WALMART INC.

2   7/18/2024/TAMMY LYNN DEVANE

3                 E R R A T A   S H E E T

4   PAGE_____ LINE_____ CHANGE_____

5   _____

6   REASON_____

7   PAGE_____ LINE_____ CHANGE_____

8   _____

9   REASON_____

10  PAGE_____ LINE_____ CHANGE_____

11  _____

12  REASON_____

13  PAGE_____ LINE_____ CHANGE_____

14  _____

15  REASON_____

16  PAGE_____ LINE_____ CHANGE_____

17  _____

18  REASON_____

19  Under penalties of perjury, I declare that I have read the

20  foregoing document and that the facts stated in it are true.

21

22

23  _____    _____

24      TAMMY LYNN DEVANE                    DATE

25

| & | | | |
|---|---|---|---|
| **&**   2:18 3:9,14 18:21 72:10,19 | **15**   3:4 19:24 69:7 70:11 | **30**   11:25 12:7 15:21 16:19 77:14,21 | **70**   27:5 |

**&**   2:18 3:9,14
  18:21 72:10,19

**0**

**00709**   1:7
**02:22**   1:7

**1**

**1**   1:25 3:2 10:15
  10:20 21:16
  25:9 27:5 28:23
  33:17 34:25
  36:20 37:10,20
  38:15 42:20,23
  48:5 57:8 69:4
  69:15 70:1
**1.310**   77:22
**10**   3:2
**10/16/2024**
  75:17 76:22
**100**   2:8
**10220**   1:20
**10:01**   1:18
**119**   33:16 37:9
  57:9
**12**   30:25
**120**   34:25
**12:04**   1:18
  74:15
**13**   73:4
**132**   37:20
**14**   19:18 25:11
  69:7 70:10
**143**   38:14

**15**   3:4 19:24
  69:7 70:11
**16**   42:22,23 43:7
  48:5 70:13
**17**   3:6 70:13
**18**   1:16 3:8
**19**   69:10,13 70:2

**2**

**2**   3:4 15:23,25
  20:22,23 39:24
  40:12 41:18
  47:11 48:15
  69:20
**2018**   63:16
**2019**   15:21
  16:19 19:18,24
**2021**   20:24
**2022**   15:8 16:7
  16:10,12,20
  20:6,8 21:22
**2024**   1:16 75:9
  76:15 77:3
**2224**   2:3
**24**   77:3
**24th**   75:8 76:15
**25006**   75:14
  76:19

**3**

**3**   3:6 17:6,12
  19:17 40:17
  41:17 51:14
  52:1 72:8 73:3,5
  73:9,15,22

**30**   11:25 12:7
  15:21 16:19
  77:14,21
**33619**   1:21
**35**   42:20
**35203**   2:4
**35209**   2:8

**4**

**4**   2:13 3:8 16:6
  18:20,23 19:23
  47:13 72:8,18
  73:15,22
**44494**   75:18
  76:23
**45**   42:21
**49**   3:10

**5**

**5**   3:10 49:12,16
**51**   3:13
**53**   73:5,9
**59**   3:15

**6**

**6**   3:13 48:15
  51:2,5
**64**   3:17
**67**   2:14
**6800382**   77:4

**7**

**7**   3:15 16:3 59:2
  59:6 61:16
  72:18
**7/18/2024**   77:4
  78:2

**70**   27:5
**71**   27:4,12
**72**   2:15 28:7
**74**   28:22
**75**   2:16 30:3
**76**   1:25 2:17
**77**   2:18
**78**   2:19
**79**   27:6,8
**7th**   2:8

**8**

**8**   3:17 63:25
  64:5

**9**

**96**   36:19

**a**

**a.m.**   1:18
**ability**   27:24
**above**   22:21
  77:6
**absent**   10:8,13
**acceptable**   10:2
**accepted**   39:14
**account**   50:16
  50:18
**accuracy**   77:8
**accurate**   10:23
  40:10 67:24
  69:13
**acted**   61:6
**action**   1:7 3:3
  10:16 21:17
  25:10 60:16
  72:20,20 73:6

76:12,13

**actions** 10:2,6
60:22

**actual** 8:2

**actually** 42:20
42:22 44:24
46:3 53:25

**added** 40:25

**addition** 67:9,21

**adequate** 63:2

**advertise** 14:1

**advertisement**
13:17,24 14:2,4

**advice** 12:21
13:21

**affect** 10:12

**affected** 10:7

**affixed** 76:14

**agent** 48:2

**ago** 20:21 47:5

**al** 2:4,8 3:18
64:2 77:4

**alabama** 1:1
6:19,20,22 7:4
9:17 20:25 21:1
21:3 67:12

**allegation** 37:10
37:21

**allegations**
10:22 27:7 31:1
44:17

**allege** 38:15
41:19 42:16
47:15

**allegedly** 48:16

**alleging** 44:5,10
44:13

**amend** 23:13

**amended** 3:3
10:16

**amount** 41:6
48:20

**answer** 4:9,15
4:20,25 14:15
14:16 73:25

**answering** 40:8

**anybody** 5:15
5:18

**appear** 27:6

**appearances** 2:1

**appeared** 75:6

**applies** 75:11

**appointed** 68:15

**approximate**
36:21

**april** 15:8,21
16:10,19 19:24
20:8

**area** 21:6

**armstrong** 3:18
64:2

**artificial** 8:24
23:23 24:15
30:5 44:6,11
46:3 51:24 52:3
52:6 53:21 54:1
54:9,13,15
57:17,24

**artificially**
23:16 28:17
31:14,15,17,19
31:22 32:1 54:8
54:17 55:8,23

**asked** 13:21
69:2

**asking** 12:20,21
13:5 43:4 44:12
44:14 51:11
61:23

**asks** 6:25 47:14

**assume** 4:10
11:9 29:1 62:24

**assumption**
32:17

**attached** 13:7
77:9

**attorney** 2:5,9
12:24 13:4,6
16:4 76:10
77:11

**attorneys** 16:5
76:11

**authority** 75:5

**authorized** 76:5

**available** 71:24
77:6

**avenue** 2:3

**aware** 9:11,16
9:22 14:9,13
15:11,14

| **b** |
| --- |

**back** 11:25 15:8
21:16 30:25
37:9 39:23
42:19 46:19
47:11 48:5 50:3
52:1 57:8

**bad** 4:17 34:18
36:1 62:23

**banana** 41:1

**bankruptcy**
6:16

**bartlett** 2:2,14
6:24 8:8 9:5,13
9:19,24 10:3
11:2 12:15,23
13:9,20 14:11
14:13 16:18,21
16:25 18:9,15
19:13 20:4,12
21:8,10,13 22:2
23:13,18 24:8
24:12 25:19
26:9 27:1 28:13
30:10,15 31:9
32:15 34:10
35:21,24 37:6
37:17 38:3,11
38:22 39:3,8,15
39:20 42:2,13
43:17,23 44:7
45:1,9,17 46:4
46:12,16,21
47:1,7,23 48:12
49:5 51:9,13

52:14,24 54:3
54:18,21,23
55:4,11 56:16
56:20 57:19
58:2,14 59:23
60:11 61:9,21
62:5,15,17,21
65:19 66:17
67:1,5,8 69:19
69:24 71:8,14
71:19 72:2 74:4
74:6,12 77:1
**based** 14:4 28:9
**basis** 25:22 26:1
34:23 42:10
43:14,20 47:22
**bear** 8:15
**began** 16:4
**behalf** 1:4 3:6
3:16 14:7 17:7
19:4 59:3 64:23
65:10 66:6
67:10,10 68:10
72:22 73:6,23
**belief** 42:10
**believe** 10:16
17:3,18 18:9
19:9 20:23
23:16,22 25:1
31:7 41:25 42:5
44:18 46:1
47:19 48:2
51:22 56:25
57:4 72:7,12

**benefit** 32:25
36:16
**best** 27:24
**better** 4:18
24:17 29:21
**big** 24:16
**birmingham** 2:4
2:8
**bit** 12:24
**bottle** 52:2,17
**bottom** 51:23
52:2
**bought** 27:12,15
27:17 28:7 32:4
32:24 44:2
45:11,19 49:7
**box** 51:16 52:15
52:16
**brackets** 70:1
**brand** 71:9,11
71:16,16,22
**brands** 3:16
59:4
**breaches** 33:17
**break** 4:13
39:19
**brief** 39:21 67:3
**bring** 72:22
**bringing** 67:9
67:10
**brings** 72:19
73:5
**broad** 30:9,11
30:19

**brookwood** 2:8
**brought** 73:23
**bulldog** 64:21
**buy** 8:2 20:16
21:6 43:25
**buying** 20:18,20
27:18

**c**

**c** 2:2 77:1
**calculate** 49:2
**calculated**
48:21,25
**calculating**
48:16
**call** 11:7 15:9
41:15
**calories** 33:7
**capable** 12:14
**card** 50:6
**care** 44:1
**carefully** 27:20
27:22 46:15,19
52:22
**case** 5:19 6:2,10
7:17,20,23 8:19
14:11,12 16:24
17:4,9,14,17,20
17:22,25 18:3
19:8,20 20:1,2,6
28:5 45:2,3,7,7
60:10 61:16
62:18,20 64:7,8
64:10 65:18
66:11,11,12,13
66:15

**cases** 20:14
58:21 61:6
62:14 63:9,18
63:23 72:9
**category** 45:5
**caused** 33:18
35:3,7
**certificate** 2:16
2:17 75:1 76:1
**certified** 17:24
18:16 19:10
61:7,8 68:20
**certify** 75:5 76:4
76:9
**change** 7:12
36:7 39:17
45:22 78:4,7,10
78:13,16
**changed** 45:21
67:23 73:14,17
**changes** 77:8
**characterize**
71:15
**characterizing**
70:3,4
**charge** 64:11
**cheaper** 23:2
**chicago** 59:11
**chick** 21:11
**child** 29:15
**chocolate** 42:24
43:7,15,21 44:1
44:2,2,5,11,15
45:11,12,15
48:6,9 54:14,14

69:21 70:14,17 70:20
**choose**  12:8
**church**  3:9 18:21 72:10,19
**city**  6:21
**civil**  1:7 72:21 77:21,22
**claim**  9:18 12:14 14:10 19:3 20:5 26:20 26:21 29:13 33:24 43:1,3,24 48:9 56:1,5 67:9 68:25 70:19,24
**claimed**  29:16 57:20
**claiming**  43:14 43:20
**claims**  8:18 9:1 9:23 10:7 17:16 19:2 27:22 29:7 46:10 56:8 57:18 69:3,14 70:6
**class**  3:3 7:23,25 10:8,13,16 14:25 16:25 17:24 18:12 19:10 33:19 36:20 37:2,11 37:16,21 38:1,8 38:15,20 48:17 49:3 58:13 60:16,22 61:7,7

61:8 63:2 65:7 66:6,8,10,16 67:11 68:16,21 72:15,20,23 73:6,23
**clean**  4:21
**clear**  4:25 7:1 18:15
**client**  12:24 13:4,6 16:4
**cocoa**  54:14
**cole**  2:7 4:6
**color**  26:20 41:20
**colored**  70:25
**colors**  31:5 34:1 56:9
**come**  12:19 13:8 13:14 14:9,19 14:25 22:6 23:15 54:10 59:15
**coming**  6:3 35:11
**commission**  75:17,18 76:22 76:23
**communicated**  12:2
**company**  3:9 18:21
**compare**  34:7 55:15,17
**complain**  41:15

**complaint**  3:3,6 3:9,18 5:13 10:16,22 17:7 18:20 21:17 25:10 31:1 33:17 42:19 44:18 57:9 64:1 69:3 73:4
**complete**  76:7
**completed**  77:14
**concern**  45:20
**concerned**  10:12
**concluded**  74:15
**conclusion**  25:22
**conference**  1:20
**confidential**  18:10 19:14
**confusing**  30:17
**connected**  76:12
**consider**  24:21 29:20
**considerably**  62:10
**consideration**  37:13,23 38:9 57:11,13
**considerations**  33:22
**considered**  77:15

**contact**  13:10 13:14 16:19 59:15 60:7
**contacted**  14:6 59:17 60:20
**contain**  28:23 52:6,9 56:5 57:17
**contained**  23:17 30:5 57:16
**contains**  30:13 30:22 31:2
**contention**  26:2 30:21
**continue**  53:2
**continued**  52:11 53:5
**conversation**  4:19 11:6 14:22 23:18
**conversations**  14:14
**convicted**  6:14
**copies**  77:12
**copy**  74:11,12
**corporation**  65:12 68:6,9
**correct**  10:17 21:2 23:19 27:7 31:17 32:2,3 33:15,22,23 38:10,17,18,21 41:21 42:17,18 43:2 48:24 53:8 53:16,21 55:10

[correct - electronic]                                              Page 83

**d**

55:12,22,25
56:6 57:1 60:25
61:17,17 64:25
65:3,5,6 66:14
67:12 72:13
**cost**  8:15 31:20
31:23 35:2,3
36:3,12 55:15
55:19 56:10,12
56:13
**costs**  35:6
**counsel**  1:15
76:10,12
**county**  75:4
76:3
**couple**  72:3
**course**  24:1 50:5
**court**  1:1 7:17
10:19 15:22
17:11 18:22
34:12 49:15
51:4 59:5 63:1
64:4 68:15 74:7
74:10
**cover**  4:7
**credit**  50:6
**crime**  6:14
**cross**  2:14 67:7
**crr**  1:22 76:4
**cup**  59:17
**curtis**  5:24,25
6:2
**cv**  1:7

**d**

**damaged**  36:21
**damages**  35:1,2
35:3,7 48:15,17
67:22
**date**  1:16 16:3
40:6,14 51:10
77:10 78:24
**daughter**  6:9,18
**daughter's**  6:7,8
6:19
**davis**  2:3,7
**day**  15:13 75:8
76:15
**days**  77:15
**deceptive**  9:17
**declare**  78:19
**declared**  6:16
**deems**  7:17
**defendant**  1:9
1:15 2:9 64:7,8
**defendant's**  3:2
3:4,5,6,8,10,11
3:13,15,17
10:15,20 15:23
15:25 17:6,12
18:23 21:16
25:9 27:4 39:23
39:25 49:12,13
49:16 51:5 57:8
59:2,6 63:25
64:5 72:8,8
**defense**  47:11
**define**  24:11,13

**defunct**  65:10
**depends**  24:15
**deponent**  4:2
**deposing**  77:11
**deposition**  1:13
5:7 74:15 76:5
**derivative**  71:4
**derived**  70:4
**determination**
37:5,16
**determine**  34:9
34:12
**devane**  1:4,13
3:6,9,15 4:1,6
5:3,25 17:7
18:21 20:5
39:23 59:3 67:6
68:2 75:6 76:6
77:3,4,7,8,10
78:1,2,24
**diet**  28:9
**different**  12:25
13:10 24:17
**differentiate**
45:14
**direct**  2:13 4:4
8:6 36:21
**disclose**  13:3
**discloses**  13:2
**discovered**
41:10
**dismissal**  9:17
9:23
**dissolved**  65:4

**district**  1:1,1
**dixie**  23:7
**document**  78:20
**documents**  5:9
49:6,22,25 50:2
50:12
**doing**  6:13 9:9
14:21 49:10
**dozen**  23:12
**drank**  36:14
**drink**  4:14 32:5
**drinking**  32:23
**driver's**  75:12
**dropped**  65:20
65:22 66:1,2,2,3
66:6,12
**dropping**  66:4
**due**  48:20
**duly**  4:2 75:7
**dwight**  3:9
18:21 72:10,19

**e**

**e**  77:21,22 78:3
78:3,3
**earlier**  4:7
10:17 31:12
50:20 57:4
71:21
**eat**  33:5
**economic**  35:2
**effectively**  60:10
**efforts**  35:3
**either**  42:22
**electronic**  74:13

**email**  13:19 16:12,15,20 50:8 59:17 77:11
**emailed**  13:15 15:10 77:12
**embassy**  1:19
**employee**  76:9 76:11
**enrichment**  36:22
**ensure**  9:8 12:13
**entered**  33:20 33:21 37:12,22 38:8 57:10,12 57:13
**entire**  40:21 58:19
**entitled**  36:11
**entity**  65:11
**errata**  2:19 77:9 77:10,14
**esquire**  2:2,7 77:1
**established**  20:6 20:10
**et**  3:18 64:2
**eufaula**  21:8 58:8,10,12
**everybody**  62:24
**exact**  40:6
**exactly**  7:13 41:3

**examination**  2:13,14,15 4:4 67:7 72:5
**examine**  27:19 27:22
**examined**  4:3
**except**  61:16
**exchange**  66:3
**excuse**  57:11
**exhibit**  3:2,4,6,8 3:10,13,15,17 10:15,20 15:23 15:25 17:6,12 18:20,23 19:17 19:23 20:22 21:16 25:9 27:5 28:23 33:17 34:25 36:20 37:10,20 38:15 39:24 41:18 42:20,23 47:11 48:5,15 49:12 49:16 51:2,5 57:8 59:2,6 61:16 63:25 64:5 69:4 72:8,8 72:18 73:3,5,9 73:15,15
**exhibits**  3:1 73:22
**expensive**  71:10
**experience**  71:9
**expires**  75:17 76:22

**explain**  13:22
**explaining**  14:20
**extent**  61:22
**eyes**  44:15

**f**

**f**  1:8
**facts**  38:17 65:16 78:20
**fail**  28:23
**failed**  9:12
**fails**  77:17
**failure**  9:16
**failures**  10:7
**fair**  4:11 27:18 33:24 61:18 71:15
**false**  46:10 56:24
**family**  7:4
**farm**  21:4 22:6
**fda**  26:7
**february**  21:5 22:11
**federal**  72:20 77:16,21
**felt**  14:21
**fifth**  51:18 58:20
**figure**  34:8
**fil**  21:11
**file**  11:19 20:5 59:21
**filed**  5:12 11:1 15:18,20 19:18

19:21,24 20:2,2 59:10 72:9
**filing**  11:22 12:2 20:14 47:6
**fill**  60:17,20
**filled**  60:23
**financially**  76:12
**find**  14:22 49:25
**finding**  53:10 55:8
**finish**  4:20,20
**firm**  14:6 20:12
**first**  2:3 3:5,11 4:2,16 13:12,14 15:11 16:1,24 23:15 39:25 40:3 43:10 47:12 49:14 62:7
**fit**  7:17
**five**  12:4 20:21
**fl**  1:21 77:12
**flavor**  24:23 26:20 31:5 41:20 46:9 47:15 50:24 54:1,9 70:3,21
**flavored**  23:16 26:19 28:17 31:17,22 34:1 42:17 43:2 46:10 54:8,17 55:8,9,24 56:10 70:25

**flavoring** 47:20
48:2
**flavorings** 44:6
44:11
**flavors** 25:15
26:13 31:6 34:1
40:13 41:21
42:1,6,7,9,11,12
43:11,15,15,21
43:21 44:21,23
44:25 45:15,16
46:2,3,25 47:18
51:24 52:3,6
53:21 56:9
57:17
**floor** 2:8
**florida** 1:23
23:9 75:3,16
76:2,21 77:16
77:22
**florie** 2:7
**follow** 67:6
**following** 73:6
**follows** 4:3
**food** 3:18 27:18
32:23 64:1
**foods** 66:13
**foregoing** 76:13
78:20
**form** 8:8 9:5,13
9:19,24 10:3
11:2 12:15
16:21 20:5 24:8
24:12 25:19
26:9 27:1 28:13

30:10,15 31:9
32:15 34:10
35:24 37:6,17
38:3,11 39:3,8
39:15 42:2,13
43:17,23 44:7
45:1,9,17 46:4
46:12,16,21
47:1,7,23 48:12
51:9 52:14,24
54:3,18,21 55:4
55:11 56:16,20
57:19 58:2,14
59:23 60:11
61:9,21 62:5
65:19 66:17
69:18,22 71:6
71:12,17,25
**forth** 11:25
**forward** 7:23
**found** 14:3
21:25 50:21
63:1
**four** 61:14
**fourth** 51:23
**friends** 12:12
**front** 40:1 68:1
68:20
**fuel** 64:11
**full** 33:14 36:12
**funding** 8:11
**further** 28:23
76:9

**g**

**gain** 3:14
**garrison** 2:3
**gears** 39:17
**general** 69:20
**georgia** 21:4
22:6 50:3
**getting** 64:12,13
64:18
**give** 6:24 9:12
39:6 66:24
**go** 4:14 21:4,6
21:16 27:4
30:25 33:16
37:9,20 38:14
39:23 40:12
42:19,20,22
47:11 48:5 49:9
51:18,22 52:1
57:8 67:2 73:4
**going** 4:10
10:15 11:25
14:16 17:6
18:20 20:4
49:12 60:2
**good** 12:12
29:20
**googled** 24:4
**gordon** 3:18
64:1 66:13
**gosh** 23:12
**gotcha** 18:18
**grandchildren**
19:5 27:15,19
32:1

**granddaughter**
6:5,6 19:6 20:19
21:18 22:4
27:13 29:2,18
32:5,14 36:14
**granddaughter's**
28:9
**gresham** 2:7,13
2:15 4:5,6 7:3
8:10 9:7,15,21
10:1,5,21 11:5
12:18,20 13:5
13:12,13,25
14:12,24 15:24
16:23 17:13
18:11,18,19,24
19:16 20:9,11
21:15 23:14
24:10,19 25:21
26:11 27:3
28:15 30:12,20
31:11 32:18
34:14 35:23,25
36:2 37:8,19
38:4,6,13,24,25
39:5,10,17,22
42:4,15 43:19
44:4,9 45:6,13
45:25 46:6,14
46:18,23 47:4,9
48:1,13 49:7,8
49:17 51:6,11
51:14,17 52:18
53:1 54:5,19
55:1,6,13 56:18

56:22 57:22
58:4,16 59:7
60:13 61:11,23
62:3,11,19,23
62:25 64:6
65:21 66:19,24
67:2,4,16 68:1
68:14,19 69:2
69:18,22 71:6
71:12,17,21,25
72:3,6 74:3,5,9
**ground** 4:8
**groves** 14:7,18
63:9,18 64:24
65:2,4,12,14
66:13,15
**grow** 3:14
**guess** 24:16
25:14 27:5 28:8
34:11 47:10
63:6 66:8
**guy** 59:11 64:20

**h**

**h** 78:3
**hand** 75:8 76:14
**handle** 64:21
**handling** 12:14
**happen** 15:7
59:25
**happened** 60:1
65:14
**hard** 4:24
**harmed** 33:9,10
33:25

**head** 4:24 22:18
**heard** 66:12
**help** 28:8
**heninger** 2:3
**hgdlawfirm.c...**
77:2
**hh** 75:18 76:23
**high** 62:8
**higher** 62:10
**hillsborough**
75:4 76:3
**hilton** 1:19
**honey** 24:16
**hope** 7:11
**huh** 4:24
**husband's** 5:23

**i**

**idea** 7:18 20:15
34:15 49:9
53:24 60:4,12
60:14
**ideation** 34:16
**identification**
10:19 15:22
17:11 18:22
49:15 51:4 59:5
64:4 75:12,12
**identify** 48:15
**important** 28:12
**include** 11:7
45:11
**including** 35:1
**incorporated**
72:10

**incurred** 35:6
**independent**
8:25 65:15
**index** 2:11
**individual**
18:16 19:14
37:16 50:7
61:13,15
**individually**
3:15 37:5 59:3
68:21 72:13
**individuals**
67:11
**ingredient**
44:24 46:8,20
51:20 69:7
**ingredients**
25:11 27:25
30:6,14,23 31:8
36:24 41:19
42:24 43:7
47:14 51:19
53:19,24 70:5,9
**injured** 32:10
56:14,19,21
57:4
**injuries** 33:19
**input** 40:8 49:20
**inspect** 52:22
**instant** 3:16
59:4
**instruct** 14:16
**intend** 53:2
**interested** 76:13

**interrogatories**
3:5 16:2 39:25
47:12
**interrogatory**
16:3 47:14
48:14
**interrupt** 38:22
**investigation**
8:25 65:16
**involved** 63:4
63:18 66:22
**items** 71:9

**j**

**january** 21:21
**jog** 72:21 73:7
**judge** 34:12
**jul** 77:3
**july** 1:16 75:8
76:15

**k**

**k** 1:8
**kennedy** 1:22
75:15 76:4,20
**kept** 32:7
**keratin** 17:18
**kind** 67:22
**knew** 47:6
**know** 4:9,14
6:18 8:18 10:6,7
11:16,18 13:1,6
13:8,11 15:17
16:12 17:24
18:2,12,14
19:10,11,12

20:7,9,20 23:20
24:23 25:7
26:12 30:1
32:20,21 33:2,3
34:4,5 39:6 41:6
42:7 47:2 52:16
53:22 54:1,9,10
54:13 55:14,18
59:13 60:2,5,16
61:12 63:7
64:15,16,19
66:5,9,18,20,21
67:17 73:25
74:1,7
**knowledge**
68:16,20
**known** 12:11
30:5 36:24
38:17 75:11

**l**

**label** 7:12 22:1
26:24 27:23
28:14 31:2
34:24 45:24
46:10,15 51:13
52:1,23 54:17
56:24 57:17,20
67:23 71:11
73:14,17
**labeled** 28:17
**labeling** 17:20
19:3 26:7 28:10
36:8
**labels** 27:19

**law** 9:12
**lawsuit** 3:15,18
7:7,11 8:1 11:1
11:22 12:3
15:12,15,17
18:25 35:13
46:1 47:6 54:24
55:2,5 59:2,8,21
60:3 68:9 72:19
**lawsuits** 60:16
63:4 66:22 68:1
68:19,24
**lawyer** 8:14
11:12
**lawyers** 5:16,19
8:6 9:3,9,11
10:25 11:18
12:2,8,13
**leave** 34:11
**led** 13:19 22:25
**left** 50:4
**legal** 12:20
13:21 77:20
**letter** 2:18
**license** 75:12
**lifetime** 58:19
**liked** 32:7
**line** 25:15 43:11
51:23 78:4,7,10
78:13,16
**list** 26:5,13
27:25 40:13,14
41:18,20 42:8
42:11 43:7
44:24 46:8,20

47:14,17 69:8
**listed** 25:11
44:23
**lists** 25:15 44:21
51:19
**litigating** 35:18
**litigation** 8:7,11
8:16
**little** 6:24 7:1
12:24
**live** 6:20,22 22:4
34:17
**lives** 6:20
**llc** 2:3 3:16,18
59:4 64:2 65:4
**llp** 2:7
**location** 40:14
**long** 12:11 22:9
**look** 14:23
19:17,23 20:22
22:18,19 25:9
25:10 27:11,25
28:2 30:1,3
34:25 36:19
41:17 43:6,10
45:3 47:13
48:14 51:7 57:9
72:18 73:3
**looked** 10:10
14:2 16:11 24:1
24:2 26:4,6,7
47:24 50:3,3
53:25 70:9
**looking** 44:18
53:23

**loreal** 3:7 17:8
17:19 72:9 73:4
**lot** 29:25 64:22
**loud** 70:2
**lying** 25:17 26:2
26:17
**lynn** 1:13 4:1
5:3 75:6 76:6
77:4,7 78:2,24

**m**

**m** 75:15 76:4,20
**ma'am** 40:5
**made** 8:18
26:23 27:22
28:10 30:8,22
48:9
**main** 45:20
**make** 32:16
37:5,10,16,21
43:3 44:17 60:9
69:4
**making** 29:7,13
43:1,24 69:14
70:6
**maltodextrin**
23:20,25 41:21
47:18,19 48:6
51:21 52:9
70:16,19
**mark** 10:15
15:25 17:6
18:20 49:12
51:2 59:2 63:25
**marked** 10:19
15:22 17:11

[marked - office]                                                    Page 88

18:22 49:15
51:4 59:5 64:4
**married** 5:21
**mart** 1:8
**matter** 16:5
**mcatee** 11:14
**mean** 11:4,6
18:16 23:7 29:9
30:1 61:24
**meaning** 62:17
62:19
**means** 43:15,21
**meant** 46:3
**meet** 10:25 11:3
11:4,9,21 12:19
12:21
**meeting** 35:11
**members** 7:4
10:8,13 18:13
33:19 36:21
37:2,11,16,22
38:1,8,16,20
66:7,8
**memory** 72:21
73:7
**mention** 20:13
**mentioned** 63:8
67:16 68:14
**messages** 50:10
**messy** 38:5
**met** 4:6 11:14
**method** 40:14
48:16
**metropolis** 21:8

**middle** 1:1
**mind** 62:24
**mine** 51:16
52:15
**minerals** 69:8
70:11
**minute** 69:11
**minutes** 11:25
12:7
**misleading**
34:24 56:24
**mitigate** 35:3
**mitigating** 35:6
**monetarily** 7:16
**monetary** 7:14
67:22
**money** 39:2
**morris's** 9:23
**multiple** 27:13

**n**

**name** 5:2,23
6:19 60:15,19
65:13 71:9,16
**named** 68:2,6
**names** 5:4 58:21
58:23
**natural** 8:23
25:15 26:13
29:5,20,21,22
30:17,18 31:5
41:21,25 42:5,7
42:9,11,12
43:11,15,15,20
43:21 44:21,23
44:25 45:15,16

46:2,24 47:18
51:24 52:3
70:20
**naturally** 26:19
33:25 42:17
43:2 46:10 55:9
56:10 70:24
**nature** 36:25
**need** 4:13,14,23
4:25 37:4,15
38:19 39:18
61:24
**needed** 28:24
**never** 57:6
59:13,14 64:15
68:20
**new** 59:12
**nods** 4:24
**north** 2:3
**notary** 1:23
75:16 76:21
**note** 77:9
**notes** 76:8
**notice** 1:14 9:12
**number** 16:3
40:12 41:17
47:13 48:15
68:1 69:2,15,20
70:1
**nutrients** 28:24
**nutrition** 28:2
**nutritional** 29:8
32:13

**o**

**oath** 2:16 75:1
**object** 8:8 9:5
9:13,19,24 10:3
11:2 12:15
16:21 20:4 24:8
24:12 25:19
26:9 27:1 28:13
30:10,15 31:9
32:15 34:10
35:24 37:6,17
38:3,11 39:3,8
39:15 42:2,13
43:17,23 44:7
45:1,9,17 46:4
46:12,16,21
47:1,7,23 48:12
51:9 52:14,24
54:3,18,21 55:4
55:11 56:16,20
57:19 58:2,14
59:23 60:11
61:9,21 62:5
65:19 66:17
69:18,22 71:6
71:12,17,25
**objection** 54:7
**objections** 3:4
3:11 16:1 39:24
49:13
**occasions** 27:13
**offer** 67:17
**offered** 39:6,13
**office** 14:15
16:19

**official** 75:8
76:14
**oh** 21:13 23:12
59:9 65:22
**okay** 4:13,25
5:1,13 6:4,12,22
7:2 10:22 12:1
13:9,12,16 14:4
16:18 18:5 19:4
19:17 21:16,24
22:13 28:16
29:22 33:12
39:20 43:6,14
44:17 45:7,14
46:7 48:14
51:18 52:22
54:10 56:25
67:5,14,16
68:24 72:4
**ones** 5:11 68:14
**ongoing** 17:22
**online** 24:2
**order** 61:25
62:1 68:17 74:8
74:9
**ordering** 77:13
**originally** 15:17
**oscar** 12:9,11,19
14:6,14 63:21
64:17,21
**oscar's** 12:16
14:15
**outcome** 19:7
63:23 65:18
76:13

**outside** 14:14
**owed** 49:3
**own** 63:12,14
**owned** 65:14

**p**

**p.m.** 1:18 74:15
**page** 2:12 3:1
16:6 40:17
51:14,18 52:1
70:13 72:18
73:4 78:4,7,10
78:13,16
**pages** 1:25
**paid** 33:19,22
33:25 35:8
37:13,23 38:9
39:2 56:25 57:5
57:13,16 58:1
61:19 62:9
67:18
**palm** 1:20
**panel** 28:2
**paper** 60:20
**paperwork**
64:20,22
**paragraph**
25:11 27:4,5,6
27:12 28:7,22
30:3,25 33:16
34:25 36:19
37:9,20 38:14
42:20,21,22,23
43:6 48:5 57:9
69:7,10,13 70:1
70:10,11 73:5,9

**paragraphs**
70:13
**partial** 69:25
**parties** 76:10,11
77:13
**pause** 6:24
**pay** 50:18 57:23
58:5,6
**payment** 18:5
40:15
**pediasure** 3:13
3:13 22:17
50:21 51:3
52:21,22,23
53:3,7,12,20
54:16 55:14,19
56:3,5,14 71:10
71:20
**penalties** 78:19
**pending** 15:15
60:5
**period** 22:23
53:6
**perjury** 78:19
**permissible**
26:12
**person** 11:4,9
**personally** 25:8
68:11 75:6,11
**picture** 60:18
**place** 1:19 2:8
**plaintiff** 1:6 2:5
3:12 30:4 33:18
36:20 37:11
49:14 68:3,7,15

72:19 73:5
**plaintiff's** 3:4
3:11 39:24
49:13
**plant** 6:21
**please** 4:9,19
16:3 77:10
**point** 4:13
**position** 7:25
24:6 33:13
36:11
**practice** 14:20
**practices** 9:18
**premium** 33:25
34:4,8,9,13 57:1
57:5,6,7
**pretty** 62:8
**previously**
53:11
**price** 3:18 12:10
36:24 63:21
64:1 67:18
71:15
**printout** 3:13
51:2
**prior** 10:25
11:21 55:2,5,8
**privilege** 12:24
13:4,6
**probably** 12:4
**problems** 60:19
**procedure**
72:21 77:21,22
**produced** 49:5
75:12,12

**product** 8:3
44:23 45:3 50:4
60:24 61:20
**production** 3:12
49:14
**products** 50:11
50:12 61:1,3
**promised** 7:20
33:20
**promises** 28:9
**properties**
33:20
**prosecuting**
35:13 60:10
**protective** 61:25
62:1
**provided** 32:13
**public** 1:23
75:16 76:21
**publix** 23:7
**purchase** 20:23
21:3 22:25 23:3
23:8 31:25
40:14 50:25
**purchased** 6:4
21:21 22:13
28:4,16,19 30:4
31:13,20,23
36:23 38:16
40:13 41:4,9
45:23 46:7
50:20 51:12
52:19 53:6,7,12
54:20 55:3,7
58:9 60:24

67:11 70:23
71:2,20
**purchases** 39:7
50:7
**purchasing**
21:18 22:1,22
32:8 40:22 41:7
52:11,12,23
53:2,15,17 54:6
54:7 56:14
**purely** 9:3
**purpose** 32:24
**pursuant** 1:14
72:20
**put** 7:23 45:4
60:19 61:25
63:24 68:1,19
**putative** 33:18
36:20 37:11,21
38:1,8,15,20
**pyrex** 59:18
61:16 62:18,20

**q**
**question** 4:8,10
4:16 6:25 20:23
34:18 38:1 43:4
56:4
**questions** 67:6
69:2
**quick** 4:8 39:19

**r**
**r** 2:7 78:3,3
**rather** 13:1 64:8

**reach** 15:3
**reached** 15:5
61:12,15
**read** 2:18 46:2,8
46:15,20 62:24
64:17 69:11,25
74:6 77:7 78:19
**reading** 45:23
**ready** 5:6
**real** 8:22 25:4
54:13,14
**realize** 7:22
**really** 21:13
63:7 64:15
**reask** 56:4
**reason** 13:20
71:21 77:9 78:6
78:9,12,15,18
**reasonable**
77:15
**reasons** 70:23
71:2
**recall** 18:7,8,25
19:7 59:8,11
68:3 73:17,19
73:20
**receipt** 77:15
**receipts** 50:5
**receive** 33:11,14
**received** 32:25
36:16 59:13
61:19
**recess** 39:21
67:3

**recollection**
40:22 73:11
**recommendati...**
12:17
**recommended**
12:9
**record** 4:21 5:2
6:25 47:10,10
67:2 76:8
**recover** 7:6
35:17 36:6
**redirect** 2:15
72:5
**reference** 72:7
**referenced** 69:3
71:21 77:6
**referencing**
17:14
**refresh** 73:11
**refund** 39:7
**refunded** 39:2
67:21
**refunding** 67:18
**regard** 77:17
**regardless**
71:10
**regulations** 26:8
**relate** 70:13
**related** 62:7
**relates** 73:22
**relating** 50:12
**relationship**
16:4
**relative** 76:9,11

relied  29:4
relying  8:6 9:3
remember  17:5
  17:9,16 41:3
  58:22,23 64:18
  67:19 72:24
  73:1,12
rep  58:13 61:7
rephrase  57:3
  57:11
report  76:5
reporter  1:22
  10:19 15:22
  17:11 18:22
  49:15 51:4 59:5
  64:4 74:7,10
reporter's  2:17
  76:1
represent  15:20
  65:7 66:10,16
  72:15
representation
  30:8,22 69:14
representations
  26:23
representative
  7:23 8:1 14:25
  16:25 63:2
  68:16
representing
  16:5
represents
  40:21
requested  76:7

requests  3:11
  49:14,23
required  9:12
research  23:24
resolution  18:2
respect  69:15
  70:7
responding
  13:16
response  16:2
  20:22 40:12,25
  41:17 47:13
responses  3:4
  3:11 16:1 39:24
  47:12 49:13
responsive
  49:23
rest  45:22
restaurant
  14:19 58:24
  62:8 63:9,10,12
  63:14 68:6,10
  68:10
restroom  4:15
  39:18
result  9:16
  36:22 73:18
resulted  9:22
return  41:12
returned  77:14
review  5:9 76:6
  77:6
reviewed  10:17
right  11:11
  14:21 19:5

21:22 25:17
26:2,21 27:9
29:3,12 31:18
32:23,25 35:23
35:25 36:25
37:13,23,24
38:2,23 42:21
42:22 44:20,25
46:11 48:7,10
50:22 52:7,8,9
52:13,20 53:14
54:8,20,25 55:3
56:2 57:14,18
58:3 63:4 64:23
64:24 65:2
68:12,13,22
69:8 70:11,14
72:16
river  1:20
road  1:20
room  1:20
roughly  22:23
rpr  1:22 76:4
rule  77:21,22
rules  4:8 72:20
  77:16
russell  1:22
  75:15 76:4,20

**s**

s  78:3
satisfied  39:1
saw  67:17
saying  30:21
says  19:18 24:25
  29:19 40:12

41:18 47:13
48:15,20 50:6
51:24 52:2
54:16 57:10,12
72:19 73:5
seal  75:8 76:15
search  49:22
  50:2,8,10
second  28:22
  43:11 47:5
  51:20 66:24
see  10:10 22:19
  25:11,12,14
  31:1 40:3,19
  43:8,11,13
  46:24 48:6,18
  50:4 51:23 52:2
  59:25 69:15
  73:10,12
seeking  7:6,14
  7:16 35:17,20
  36:3,6 65:7
  66:10,15 72:15
  72:22 73:14
seen  40:7 46:9
  49:18 64:2
select  75:11
sell  63:16
sent  16:20
sentence  28:22
  69:25
september
  20:24 21:5
  22:11

**served** 58:13

**service** 3:18
  64:1

**set** 3:5,11 14:21
  16:1 39:25 40:4
  47:12 49:14

**settled** 65:24
  68:21 72:12
  73:24

**settlement**
  18:10,17 19:14
  61:13,15 67:16
  73:18

**settlements**
  61:19

**seven** 20:19

**shake** 3:14
  26:25 51:3,8
  52:4

**shake's** 46:8

**shakes** 6:5 15:2
  20:16,18 22:14
  22:23 23:1,3,8
  23:16 24:24
  25:12 26:5,24
  27:12 28:4,7,16
  28:19 29:8 30:4
  31:2,13,19,22
  32:4,10,13 33:1
  33:5,7,19 34:1
  34:16 35:2,4,7,9
  36:4,12,23,25
  38:16 39:2
  40:13,22 41:4,7
  41:9,12,19

42:16,24 43:8
43:16,16,21,22
44:6,11 47:15
48:3,6,10 50:5
50:21,22,24
52:6,12,19 53:6
53:7,12,13,14
53:15,17,19,23
54:7 55:8,9,14
55:15,19,21
56:5,11,13,14
56:15 57:3,5,16
57:24 58:9 61:4
67:11,19,21
69:6,16,20 70:3
70:7,14,17,20
70:24 71:3,5,10
71:20,23

**sham** 59:18,19

**shampoo** 17:19

**she'll** 74:6

**sheehan** 59:16
  60:7,14

**sheet** 2:19 77:9
  77:10

**show** 50:7

**side** 27:6

**sign** 2:18 74:6
  77:10

**signature** 75:14
  76:19

**signed** 77:18

**significant** 29:4
  29:10

**significantly**
  62:4

**similar** 22:14
  26:5

**similarly** 1:5 3:7
  3:16 17:8 59:4

**simultaneous**
  20:13

**sitting** 4:16

**situated** 1:5 3:7
  3:16 17:8 59:4

**six** 11:23

**smd** 1:7

**snell** 14:7,18
  63:9,18 64:23
  65:1,4,12,14
  66:13,15

**sold** 65:1

**solutions** 77:20

**son** 6:7 28:24

**sons** 12:12

**sorry** 34:17
  35:23,25 38:22
  40:16 42:21,22
  44:10 51:14
  66:11 73:8,9

**sort** 27:7 68:17

**speak** 37:4,15

**speaking** 15:2

**specific** 27:7

**specifics** 61:24

**spencer** 59:15

**spend** 22:9

**spent** 11:24 12:6
  41:7 50:6

**spoke** 5:8 22:2

**spoken** 37:2

**starbucks** 21:12

**starnes** 2:7

**start** 16:15
  20:18

**started** 20:19,23
  21:18 22:22
  53:23 54:6

**starting** 27:5

**state** 1:23 5:2
  16:2,3 75:3,16
  76:2,21

**stated** 78:20

**statement** 50:6

**states** 1:1 7:13

**statute** 77:16

**stenographic**
  76:8

**stenographica...**
  76:5

**stevia** 24:16

**stipulations**
  38:23

**stock** 71:24

**stop** 21:24 53:17

**stopped** 22:1
  52:12 53:14,15

**store** 71:11,16
  71:22

**stores** 1:8

**strike** 34:17

**stuart** 11:14

**styled** 3:9 18:21

substance 13:2
13:3
sued 26:15
64:12,13,16,18
64:22,23 65:1
suffer 33:19
suffered 35:1
48:16
sugar 24:14
29:14,22 47:25
sugars 24:20
29:5,11,16,21
suggest 13:23
suggested 77:14
suing 26:19
65:10
suit 35:18
suites 1:19
sunday 22:12
supplement
28:8
supplies 21:7
supposed 8:22
8:23 9:9 25:4
29:1
sure 4:22 16:11
22:24 23:7,12
39:20 60:9 67:1
69:4 72:17
sweetened
31:14,19 32:1
70:25
sweetener 23:17
23:23 24:7,11
24:13,14,21

28:20 41:20
70:21
sweeteners 8:24
26:20 29:4,11
31:6 34:2 56:2,6
56:9
switch 69:10
sworn 4:2 75:7
synthetic 23:17
26:20 28:20
29:5,19,21,23
29:24 30:5,13
30:18,23 31:5,8
34:1 41:20 42:1
42:6,8,11 46:9
47:25 53:18
56:2,6,9

**t**

t 78:3,3
table 4:16
take 4:18,21,24
32:7 39:19
40:21 41:3,6
46:19 69:11
taken 1:14
39:21 67:3
talk 5:15 69:6
talked 5:18 6:2
6:9,12 27:11
67:22
talking 62:22
69:5
tammy 1:4,13
3:6,9,15 4:1 5:3
17:7 18:21 59:3

68:2 75:6 76:6
77:4,7 78:1,2,24
tampa 1:21
taylor 2:2 5:8
11:13 12:9 15:2
35:12 74:10
77:1,2
tell 16:11 40:6
44:14 51:7,19
62:6
terms 35:2
36:23
testified 4:3
47:5 54:23
72:12
testify 53:11
testimony 77:7
77:15
tests 25:5
text 50:10
thank 62:20
74:5
thanks 4:7
theirs 26:5 66:2
66:4
thing 45:22
60:17
things 13:1 32:1
think 6:4 10:2
12:23 13:22
15:8 16:2 18:1,4
21:10,17 22:17
22:18 24:14
25:17,23,24
26:17 29:19

31:12 40:24
41:1,2 44:24
50:20 51:15,16
54:14 61:10
63:8 66:24
68:25
thinking 41:2
third 3:3 10:16
25:14
thought 59:18
59:19 71:3
three 19:20
thursday 22:12
time 1:18 11:24
11:25 12:5,11
22:8,23 23:15
35:8,10,10,11
35:11,13,17
36:6 41:1 47:2
54:6 58:11
times 11:21 12:1
17:2 23:11 41:4
58:13
timing 12:25
titled 3:15 59:3
64:1
today 4:7 5:7
10:17 27:12
71:23
told 6:3,13
45:19 64:21
65:13
took 12:16
29:21

**top** 19:18,23
22:18
**total** 41:6 58:15
**trade** 9:17
**transaction**
37:12,22 38:9
57:10
**transactions**
33:21 57:13
**transcript** 74:8
74:11 76:6,7
77:6,18
**transcripts**
77:12
**tried** 41:2
**true** 28:11 34:3
36:24,25 38:17
48:23 69:13
76:7 78:20
**try** 4:17,19,20
29:25 31:25
41:12
**trying** 4:18
**twice** 9:11
**two** 20:1,2,20
21:18 58:23,24
62:7,14 63:20
68:5
**type** 75:12
**types** 24:17

**u**

**uh** 4:24
**ultimate** 18:2
19:7 65:18

**under** 61:25
77:16 78:19
**undersigned**
75:5
**understand** 4:9
29:9 44:12
64:15 67:10
69:5
**understood**
4:10
**undertaken**
49:2
**unhealthy** 29:15
29:16,17
**united** 1:1
**unjust** 36:22
**unnatural** 47:15
47:20 53:18
**usa** 3:7 17:8
72:9 73:4
**use** 30:18 34:7
39:18 60:17
**used** 24:23 57:6
60:18 63:12
77:18
**using** 35:3
**usual** 38:23

**v**

**valid** 68:25
**valuable** 34:16
**value** 29:8 32:13
33:11,14 34:19
34:20,21
**vanilla** 8:22
24:23,25 25:4

25:12,23,24
42:16 43:16,22
44:3,13,16
45:15,20,21,21
45:23 46:8 48:3
51:1 52:3 54:12
54:13,13 69:6
69:15,21 70:3,4
70:5,7,9,16,20
71:3,4,4
**vendor** 14:19
**verbalized** 4:25
**verify** 77:7
**veritext** 77:11
77:20
**veritext.com**
77:12
**versus** 3:9,18
18:21 64:1
**vitamins** 19:1
69:7 70:10
**vs** 1:7 77:3 78:1

**w**

**wal** 1:8
**walmart** 1:8
7:12 21:6 22:23
22:25 23:4,8
25:17 26:15
28:10 30:8,22
39:1,6,13 41:9
41:13,15 50:7
50:18,22 52:12
53:13 54:7 55:9
55:15,21 56:11
56:13,15 57:3,4

70:24 71:3,22
71:23 77:3 78:1
**walmart's** 33:17
36:22 57:21
**walmart.com**
50:16
**want** 39:18 43:3
63:24 67:23
69:4 74:8,9,11
74:12
**warranties**
33:18
**water** 4:14
**way** 12:25 26:12
32:10 33:9
**we've** 20:6,9
27:11
**website** 3:13
51:3 60:17,21
**weeks** 19:20
20:1,2
**went** 60:23 66:5
**whereof** 76:14
**willing** 8:15
57:23 58:5
59:21
**winn** 23:7
**witness** 7:2 8:9
9:6,14,20,25
10:4 11:3 12:16
14:18 16:22
19:15 21:9,12
21:14 24:9,13
25:20 26:10
27:2 28:14

| | |
|---|---|
| 30:11,16 31:10 | **york**  59:12 |
| 32:16 34:11 | |
| 37:7,18 38:12 | |
| 39:4,9,16 42:3 | |
| 42:14 43:24 | |
| 44:8 45:2,10,18 | |
| 46:5,13,17,22 | |
| 47:2,8,24 51:15 | |
| 52:15,25 54:4 | |
| 54:22,25 55:5 | |
| 55:12 56:17,21 | |
| 57:20 58:3,15 | |
| 59:24 60:12 | |
| 61:10 62:2,6 | |
| 65:20 66:18 | |
| 69:23 71:7,13 | |
| 71:18 72:1,4 | |
| 75:8 76:14 | |
| 77:17 | |
| **won**  18:4 19:9 | |
| 63:24,24 | |
| **wonder**  62:21 | |
| **word**  29:22 | |
| 30:18 57:7 | |
| **words**  24:16 | |
| 30:1 53:24 | |
| **wrong**  28:25 | |

| **x** |
|---|
| **x**  1:3,10 75:12 |

| **y** |
|---|
| **y'all**  6:12 22:9 |
| **year**  21:5 |
| **years**  20:21 |

Alabama Rules of Civil Procedure

Part V. Depositions and Discovery

Rule 30

(e) Submission to witness; changes; signing. When
the testimony is fully transcribed the deposition
shall be submitted to the witness for examination
and shall be read to or by the witness, unless such
examination and reading are waived by the witness
and by the parties. Any changes in form or
substance which the witness desires to make shall
be entered upon the deposition by the officer with
a statement of the reasons given by the witness for
making them. The deposition shall then be signed by
the witness, unless the parties by stipulation
waive the signing or the witness is ill or cannot
be found or refuses to sign. If the deposition is
not signed by the witness within thirty (30) days
of its submission to the witness, the officer shall
sign it and state on the record the fact of the
waiver or of the illness or absence of the witness
or the fact of the refusal to sign together with
the reason, if any, given therefor; the deposition
may then be used as fully as though signed unless
on a motion to suppress under Rule 32(d)(4) the

court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

(F) Certification and filing by officer; exhibits; copies; notice of filing.

(1) The officer shall certify on the deposition that the witness was duly sworn by the officer and that the deposition is a true record of the testimony given by the witness. Unless otherwise ordered by the court, the officer shall then securely seal the deposition in an envelope indorsed with the title of the action and marked "Deposition of [here insert name of witness]" and shall promptly file it with the court in which the action is pending or send it by registered or certified mail to the clerk thereof for filing.

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.